IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARCELLUS WILLIAMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 4:05CV01474RWS |
| | ) | CAPITAL CASE |
| DONALD ROPER, | ) | |
| | ) | |
| Respondent. | ) | |

## RESPONSE TO ORDER TO SHOW CAUSE WHY THE WRIT OF HABEAS CORPUS SHOULD NOT BE GRANTED

JEREMIAH W. (JAY) NIXON
Attorney General

MICHAEL J. SPILLANE
Assistant Attorney General
P. O. Box 899
Jefferson City, MO  65102

## **TABLE OF CONTENTS**

STATEMENT OF CUSTODY AND PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**GROUND 1**: Alleged *Brady* violations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**GROUND 2**: Alleged ineffective impeachment of Henry Cole . . . . . . . . . . . . . 18

**GROUND 3**: Alleged ineffective impeachment of Lauro Asaro . . . . . . . . . . . . . 19

**GROUND 4**: Alleged use of Perjured Testimony . . . . . . . . . . . . . . . . . . . . . . . 22

**GROUND 5**: Alleged *Batson* violations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**GROUND 6**: Alleged ineffectiveness on Presenting Mitigation Evidence . . . . . 30

**GROUND 7**: Alleged ineffectiveness on Appeal Concerning Denial of a

Continuance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

**GROUND 8**: Alleged Conflict on Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

**GROUND 9**: Limitation of Cross-Examination of Glen Roberts . . . . . . . . . . . . 35

**GROUND 10**: Alleged Ineffectiveness on Appeal Concerning Exclusion of Dr.

Cunningham's Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**GROUND 11**: Closing Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

**GROUND 12**: Alleged Ineffectiveness, Limiting Instruction on Escape

Attempt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

**GROUND 13**: Allegedly Duplicative Aggravating Circumstances. . . . . . . . . . . 41

DISCOVERY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

EVIDENTIARY HEARING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

## STATEMENT OF CUSTODY AND PARTIES

Marcellus Williams is confined in the Potosi Correctional Center in Mineral Point, Missouri.  Marcellus Williams was convicted following a jury trial in St. Louis County, Missouri of first degree murder, first degree burglary, first degree robbery and two counts of armed criminal action.  He was sentenced to death on the first degree murder count three, consecutive terms of thirty years imprisonment on the burglary and armed criminal action counts and a consecutive term of life imprisonment on the robbery count.  Donald Roper, the superintendent of the Potosi Correctional Center is a proper Respondent, as is Jeremiah W. (Jay) Nixon because Williams is challenging consecutive sentences that have not yet begun to run 28 U.S.C. §2254 Rules 2(a) and 2(b).

## STATEMENT OF FACTS

The Missouri Supreme Court found the following facts supported Marcellus Williams' conviction when affirming the conviction and sentence on direct appeal.

On August 11, 1998, Williams drove his grandfather's Buick LeSabre to a bus stop and caught a bus to University City. Once there, he began looking for a house to break into. Williams came across the home of Felicia Gayle. He knocked on the front door but no one answered. Williams then knocked out a window pane near the door, reached in, unlocked the door, and entered Gayle's home. He went to the second floor and heard water running in the shower. It was Gayle. Williams went back downstairs, rummaged through the kitchen, found a large butcher knife, and waited.

Gayle left the shower and called out, asking if anyone was there. She came down the stairs. Williams attacked, stabbing and cutting Gayle forty-three times, inflicting seven fatal wounds.

Afterwards, Williams went to an upstairs bathroom and washed off. He took a jacket and put it on to conceal the blood on his shirt. Before leaving, Williams placed Gayle's purse and her husband's laptop computer and black carrying case in his backpack. The purse contained, among other things, a St.

Louis Post-Dispatch ruler and a calculator.  Williams left out the front door and caught a bus back to the Buick.

After returning to the car, Williams picked up his girlfriend, Laura Asaro.  Asaro noticed that, despite the summer heat, Williams was wearing a jacket.  When he removed the jacket, Asaro noticed that Williams' shirt was bloody and that he had scratches on his neck.  Williams claimed he had been in a fight.  Later in the day, Williams put his bloody clothes in his backpack and threw them into a sewer drain, claiming he no longer wanted them.

Asaro also saw a laptop computer in the car.  A day or two after the murder, Williams sold the laptop to Glenn Roberts.

The next day, Asaro went to retrieve some clothes from the trunk of the car.  Williams did not want her to look in the trunk and tried to push her away. Before he could, Asaro snatched a purse from the trunk.  She looked inside and found Gayle's Missouri state identification card and a black coin purse.  Asaro demanded that Williams explain why he had Gayle's purse.  Williams then confessed that the purse belonged to a woman he had killed.  He explained in detail how he went into the kitchen, found a butcher knife, and waited for the woman to get out of the shower.  He further explained that when the woman came downstairs from the shower, he stabbed her in the arm and then put his hand over her mouth and stabbed her in the neck, twisting the knife as he went

6

in.  After relaying the details of the murder, Williams grabbed Asaro by the throat and threatened to kill her, her children and her mother if she told anyone.

On August 31, 1998, Williams was arrested on unrelated charges and incarcerated at the St. Louis City workhouse.  From April until June 1999, Williams shared a room with Henry Cole.  One evening in May, Cole and Williams were watching television and saw a news report about Gayle's murder.  Shortly after the news report, Williams told Cole that he had committed the crime.  Over the next few weeks, Cole and Williams had several conversations about the murder.  As he had done with Laura Asaro, Williams went into considerable detail about how he broke into the house and killed Gayle.  After Cole was released from jail in June 1999, he went to the University City police and told them about Williams' involvement in Gayle's murder.  He reported details of the crime that had never been publicly reported.

In November of 1999, University City police approached Asaro to speak with her about the murder.  Asaro told the police that Williams admitted to her that he had killed Gayle.  The next day, the police searched the Buick LeSabre and found the Post-Dispatch ruler and calculator belonging to Gayle.  The police also recovered the laptop computer from Glenn Roberts.  The laptop was identified as the one stolen from Gayle's residence.

Williams was tried for Gayle's murder and convicted.  On appeal, Williams alleges ten points of trial court error relating to evidentiary rulings, voir dire, instructional error, and closing argument.  He does not challenge the sufficiency of the evidence.

*State v. Williams*, 97 S.W.3d 462, 466-467 (Mo. banc) *cert denied*, *Williams v. Missouri*, 539 U.S. 944 (2003).

These facts are presumed to be correct under 28 U.S.C. §2254(e).  This presumption may only be overcome by clear and convincing evidence in the record.  See 28 U.S.C. §2254(e).

At the penalty phase the jury found the following ten aggravating factors:

1.    The murder involved depravity of mind;[1]

2.    The murder was committed during a burglary;

3.    The murder was committed during a robbery;

4.    The murder was committed in order to receive money or something of value from the victim;

5.    The murder was committed to prevent the lawful arrest of Williams;

6.    Williams had been convicted of second degree assault on April 13, 1998;

7.    Williams had been convicted of first degree robbery on January 28, 2000;

---

[1] The jury was instructed that a finding of depravity of mind could only be made upon a finding that Williams committed repeated and excessive acts of physical abuse on the victim. *State v. Williams*, 97 S.W.3d at 473.

8.      Williams had been convicted of armed criminal action on August 28, 2000;

9.      Williams had been convicted of first degree robbery on May 25, 2001;

10.     Williams had been convicted of armed criminal action on May 25, 2001.

*State v. Williams*, 97 S.W.3d at 473.

The trial court sentenced Williams to death.  In an independent review the Missouri Supreme Court determined that the sentence was not imposed based on passion, prejudice or any other arbitrary factors, the evidence supported the findings beyond a reasonable doubt that there were one or more aggravating circumstances qualifying Williams for the death penalty and that the sentence was neither excessive or disproportionate to sentences imposed in similar cases considering the crime, the strength of the evidence and the defendant. *Id.* at 475.

Following direct appeal Williams unsuccessfully sought state collateral relief from his convictions and sentences.  *Williams v. State*, 168 S.W.3d 433 (Mo. banc 2005).

9

**STATEMENT OF EXHIBITS**

1.      Volume 1 of the trial transcript;

2.      Volume 2 of the trial transcript;

3.      Volume 3 of the trial transcript;

4.      Volume 4 of the trial transcript;

5.      Volume 5 of the trial transcript;

6.      Volume 6 of the trial transcript;

7.      Volume 7 of the trial transcript;

8.      Volume 8 of the trial transcript;

9.      Volume 9 of the trial transcript;

10.     Volume 10 of the trial transcript;

11.     Volume 11 of the trial transcript;

12.     Volume 12 of the trial transcript;

13.     Volume 13 of the trial transcript;

14.     Volume 14 of the trial transcript;

15.     Volume 15 of the trial transcript;

16.     Volume 16 of the trial transcript;

17.     Volume 17 of the trial transcript;

18.     Volume 18 of the trial transcript;

19.     Volume 1 of the Legal file;

20.  Volume 2 of the legal file;

21.  Volume 3 of the legal file;

22.  Volume 4 of the legal file and the supplemental legal file;

23.  Williams' Direct Appeal brief;

24.  The State's Direct Appeal brief;

25.  Williams' Reply Brief;

26.  The opinion of the Missouri Supreme Court affirming the conviction and sentence;

27.  The post-conviction review hearing transcript;

28.  The motion to compel hearing transcript;

29.  Volume one of the post-conviction review legal file;

30.  Volume two of the post-conviction review legal file;

31.  Volume three of the post-conviction review legal file;

32.  Volume four of the post-conviction review legal file;

33.  Volume five of the post-conviction review legal file;

34.  Petitioner's state post-conviction review appellate brief;

35.  The appendix to Petitioner's state post-conviction review appellate brief;

36.  The state's post-conviction review appellate brief;

37.  Petitioner's reply brief;

38.    The opinion of the Missouri Supreme Court affirming the denial of post-conviction relief.

**GROUND 1**: Williams alleges the state failed to disclose material impeachment evidence about witnesses Henry Cole and Lauro Asaro.  Specifically, Williams alleges the state failed to disclose mental health records and related information, the whereabouts of Cole and Asaro, and the prosecutor's alleged attempt to "manufacture additional jailhouse evidence against petitioner".  The Missouri Supreme Court applying *Brady v. Maryland*, 373 U.S. 83 (1963) to the facts of Williams case found this claim to be without merit.  *Williams v. State*, 168 S.W.3d 433, 439-440 (Mo. banc 2005) (Resp. Exh. 38).

The Missouri Supreme Court made the following findings concerning the disclosure of Williams' mental health records and related information.

> Williams' argument that the motion court clearly erred by not finding that the state failed to disclose impeachment evidence regarding Cole and Asaro is without merit because the "prosecution has no obligation to disclose evidence of which the defense is already aware and which the defense can acquire." *State v. Brooks*, 960 S.W.2d 479, 494 (Mo. banc 1997).  During discovery in the Rule 29.15 case, Williams filed extensive requests for production on the state that included Cole's and Asaro's medical and psychiatric records from a variety of different federal, state and private institutions.  The state

13

responded by allowing defense counsel to inspect and copy everything in the state's file on the case. If Williams' counsel wanted to acquire Cole's and Asaro's medical and psychiatric records, the discovery requests should have been directed at the entities holding those records.

*Williams v. State*, 168 S.W.3d at 440.

The post-conviction review motion court rejected the claim pointing out that Williams did not allege any specific impeachment information, nor how such information would have been admissible at trial, nor how such information would have affected the credibility of Cole or Asaro (Resp. Exh. 32 at 781).

Williams' claim is essentially that the state was responsible for going on a fishing expedition into the mental health records of its witnesses, despite their rights to privacy and confidentially, and presumably if necessary, litigating against its own witnesses to discover potential information to turn over to the defense. Further, Williams appears to argue that he is entitled to relief although he never explained to the state courts specifically what the relevant information is or how it would have made it more probable than not what he would have been acquitted. *Strickler v. Greene*, 527 U.S. 263, 275 n. 12 (US 1999) cites *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) for the proposition that the prosecutor is responsible for disclosing "any favorable evidence known to others acted on the governments behalf in the case, including the police."

Cole and Asaro's psychiatrists were not working <u>on the governments behalf in this case</u>, and the prosecutor apparently had no knowledge of what was in their records. He had no duty under any clearly established United States Supreme Court precedent to discover this material. The decision of the Missouri Supreme Court is consistent with a reasonable application of clearly established law as a determined by the Supreme Court of the United States and should be left undisturbed under 28 U.S.C. §2254(d).

The Missouri Supreme Court addressed Williams' attempt to manufacture evidence claim as follows:

> Finally, Williams alleges that the state manufactured evidence against him because the prosecutor offered to assist two other men with their ongoing criminal prosecutions if they would testify against Williams. Although neither man testified at trial, Williams' Rule 29.15 motion alleges that he was prejudiced because the fact that "agents for the state were willing to manufacture evidence taints the veracity of the testimony from the State's paid snitches." It is speculative and conclusory to allege that the prosecutor's offer of assistance to two men who did not testify at trial is tantamount to the "manufacture" of evidence that negatively impacts the credibility of witnesses who testified and were subject to cross-examination. The motion court did not err in denying this claim without an evidentiary hearing.

*Williams v. State*, 168 S.W.3d 440.

This decision is not contrary to nor an unreasonable application of any clearly established United States Supreme Court precedent. There is no allegation that any deal with the two witnesses to who Williams confessed was undisclosed. There is no reasonable probability that testimony about witnesses who did not testify would have created a reasonable probability the outcome of trial would have been different.

The Missouri Supreme Court made the following findings concerning disclosure of the whereabouts of Cole and Asaro.

The trial began on June 4, 2001. In March 2000, the state applied to preserve the testimony of Cole and Asaro by deposition because both witnesses allegedly feared reprisal by Williams and had not been in regular contact with police or prosecutors. In May 2000, the prosecutor notified Williams' counsel that Cole and Asaro had made videotaped statements and that those statements were available for viewing. Williams' counsel was, therefore, aware that Cole and Asaro were potential witnesses for more than a year prior to the trial and had access to their statements. Furthermore, on March 13, 2001, nearly three months prior to trial, the state provided Williams' counsel with Cole's New York address and Asaro's St. Louis address. The state also provided defense counsel with the videotaped statements and with police reports concerning both of them. As the motion court found, the state

did not conceal the whereabouts or statements of Cole and Asaro such that

Williams' counsel was prevented from adequately investigating their

statements and credibility.

*Id*. at 440.

These findings are presumed to be correct. 28 U.S.C. §2254(e). Williams' citations

to the post-conviction review legal file allegedly supporting his claims are citations to

allegations in his own post-conviction review motion, not to any findings by the post-

conviction review motion court. (Habeas petition at 22-23, citing PCR LF (Resp. Exh. 19

at 99-104)). The post-conviction review motion court found that counsel deposed both Cole

and Asaro thoroughly and extensively several months before trial, that Cole's deposition in

New York City lasted two days and that Cole was cross-examined extensively in St. Louis

at a deposition two days prior to trial (Resp. Exh. 32 at 781). The Court found that Asaro

was deposed several months prior to trial and that both Cole and Asaro were available to trial

counsel prior to trial.

Williams has failed to set out a claim under *Brady v. Maryland*, or *United States v.*

*Bagley*, 473 U.S. 667 (1985) or any other United States Supreme Court precedent. Williams

does not deny he deposed both witnesses, or allege that more detailed knowledge of their

whereabouts prior to trial would have created a reasonable probability that the outcome of

trial would have been different.[2]  The decision of the Missouri Supreme Court should be left undisturbed under 28 U.S.C. §2254(d).

**GROUND 2**: Williams alleges that trial counsel was ineffective for not adequately investigating and preserving impeachment evidence on Henry Cole.  Specifically, Williams alleges that counsel should have called Cole's family members to testify that he was untruthful and to provide details concerning Cole's history of mental illness.

The Missouri Supreme Court rejected the claim finding that the evidence counsel was allegedly ineffective for failing to investigate, discover and present was under Missouri law inadmissible impeachment evidence based on prior alleged misconduct.  *Williams v. State*, 168 S.W.3d at 440-441.  The Missouri Supreme Court is the highest authority on Missouri evidentiary law.  A federal court may not re-examine its conclusion that the evidence would have been inadmissible under Missouri law.  *See Schleeper v. Groose*, 36 F.3d 735, 737 (8th Cir. 1995).  Therefore the conclusion of the Missouri Supreme Court cannot have been ineffective for not investigating and introducing inadmissible evidence is necessarily a reasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984) which must be left undisturbed under 28 U.S.C. §2254(d).[3]

---

[2] The Missouri Supreme Court decision indicates that both witnesses allegedly feared reprisals from Williams. Testimony at trial indicated Williams threatened to kill Asaro her children and her mother *State v. Williams*, 97 S.W.3d at 466-467.  Presumably the alleged prejudice is not that the witness were not intimidated into not testifying.

[3] The post-conviction review motion court found that the alleged testimony focused on prior incidents of alleged misconduct as opposed to Cole's reputation in the community for truthfulness and that it provided no basis for the conclusion that Cole had a mental

**GROUND 3**: Williams alleges that trial counsel was ineffective for not investigating and presenting evidence to impeach Laura Asaro's credibility.  The Missouri Supreme Court addressed the claim as follows:

> B. *Failure to Investigate and Impeach Laura Asaro*
>
> Williams argues that counsel was ineffective for not interviewing and calling two potential witnesses who would have testified that Asaro was a drug addict and prostitute who was framing Williams in order to receive a $10,000 reward that had been offered in the case.  As the motion court correctly found, this testimony would have been cumulative to the evidence at trial because the record contained evidence of Asaro's drug addiction, prostitution, and that she might receive reward money for testifying at trial.  Counsel will not be found ineffective for deciding not to introduce cumulative evidence.  *Skillicorn v. State*, 22 S.W.3d 678, 683 (Mo. banc 2000).  The motion court did not clearly err in denying an evidentiary hearing on this claim.
>
> Williams also alleges that counsel was ineffective for failing to investigate and offer testimony from Asaro's mother.  Williams alleges that Asaro's mother would have testified that Williams' car was inoperable in August, 1998. The allegation that she knew that Williams' car was inoperable during the time the murder was committed is conclusory because it is based

---

disease or defect that made him incompetent to testify (Resp. Exh. 32 at 784-786).

only upon the allegation that on several occasions in August, 1998 she saw Asaro and Williams use public transit. This allegation does not establish that Williams' car was inoperable on the date of the murder and that Asaro was, therefore, lying when she testified that Williams gave her a ride on the day of the murder. The testimony also would have been cumulative because Williams' brother testified at trial that the car was inoperable. Te motion court did not clearly err in denying an evidentiary hearing on this claim.

Williams also alleges that trial counsel was ineffective for failing to investigate and call Asaro's mother to testify Asaro had given her coupons and that these coupons may have been obtained from the victim's purse. The motion court did no clearly err in denying this claim without a hearing. The allegation that Asaro gave her mother some coupons does not establish that they were, in fact, the same coupons that had been in the victim's purse. Absent a factual allegation that the coupons were obtained from Gayle, this allegation is conclusory and does not warrant an evidentiary hearing.

Williams also alleged that Asaro's mother would have testified that she had not read any letters Williams sent to Asaro from jail. Williams argues that his testimony would have impeached Asaro's trial testimony that Williams had written a letter asking her not to tell about the "u. City incident" but that she did not have the letter because her mother had thrown it away. This claim does

not warrant an evidentiary hearing because it would not have impeached Asaro. Asaro testified, consistent with her mother's alleged potential testimony, that she was the only person who had read Williams' letter. This testimony would not have provided Williams with a viable defense. The motion court did not clearly err in denying this claim without a hearing.

Williams also alleges that counsel was ineffective for failing to investigate several of his family members who would have testified that Asaro had keys to his car and had access to the car trunk. Williams maintains that this testimony would have shown that Asaro was involved in the murder and was setting him up. However, there was trial testimony that Asaro had access to the car trunk after Williams was incarcerated. Asaro admitted at trial that she had accessed the car trunk to retrieve her clothing after Williams had been incarcerated. Williams' brother and cousin both testified that they saw Asaro use keys to access the car trunk after Williams was incarcerated. The motion court did not err in denying an evidentiary hearing on Williams' claims that counsel was ineffective for eliciting this cumulative testimony.

Finally, Williams argues that trial counsel was ineffective for failing to test Asaro's "blood, hair and fibers" in order to connect her to the crime scene. The allegations contain no specific facts, but instead rely upon speculative conclusions that if such testing was performed, it would show that Asaro was

21

present at the crime scene. The motion court did not clearly err in finding that these allegations plead conclusions, not facts, and did not warrant an evidentiary hearing.

*Williams v. State*, 168 S.W.3d at 441-442.

The decision of the Missouri Supreme Court is a reasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984) and should be left undisturbed under 28 U.S.C. §2254(d). The post-conviction review motion court provides more detailed analysis of why the individual allegations made by Williams concerning Asaro fail the *Strickland* test (Resp. Exh. 32 at 786-793). The factual findings are presumed correct under 28 U.S.C. §2254(e) and the reasonable legal analysis should be left undisturbed under 28 U.S.C. §2254(d).

The impeachment evidence was essentially cumulative of the effective cross-examination and impeachment at trial and there was no evidence or allegation that Asaro was at the crime scene. There was no reasonable probability the outcome of trial would have changed with additional impeachment.

**GROUND 4**: Williams alleges that he was convicted based on the perjured testimony of Asaro and Cole and he is actually innocent and therefore his conviction violates the Eighth Amendment.

Williams alleges that there are discrepancies within and between the testimony of witnesses Cole and Asaro. Williams alleges that the lack of forensic evidence supports the theory that Cole and Asaro were lying as does the fact that a reward was offered in the case,

22

as does the offer of deals for the testimony of two witnesses who did not testify.  Williams also asserts that another home invasion stabbing murder in the same geographic area the previous month supports the theory that the crime in this case was really committed by an unknown serial killer.

In so far as Williams is making a free standing claim of actual innocence this Court has repeatedly rejected the assertion that such a thing exists.  *Burton v. Dormire*, 295 F.3d 839, 842 (98th Cir. 2002) (we have squarely rejected the notion that a prisoner may receive a writ simply because he claims he is innocent.  Claims of actual innocence based on newly discovered evidence have never been held to state a ground for relief habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.")

Williams does not assert any new evidence that was not known or knowable through due diligence in time to present his claim at trial.  Therefore, he cannot make out a "gateway: innocence claim.  *Meadow v. Delo*, 99 F.3d 280, 282 (8th Cir. 1996) (The test for newly discovered evidence is whether the evidence could have been discovered earlier in the exercise of due diligence").  Williams offers nothing new but rather places a pro-defense spin on information available and largely presented at trial.  Further, it cannot be said that it is more likely than not that no reasonable juror would convict in light of the evidence presented at trial even if Williams' current spin on events is considered new evidence in evaluating a "gateway" innocence claim.  *Burton v. Dormire*, 295 F.3d at 846.

Williams had the burden to present new evidence supporting his actual innocence claim with his petition.  Williams may not have a hearing seek to discover and present evidence that he only alleges exists. *Weeks v. Bowersox*, 119 F.3d 1342, 1352-1353 (8th Cir. 1997) (en banc).

Further, Williams' perjured testimony claim is defaulted as he, prudently, did not present it to the state courts, despite having essentially the same information to build the claim he now has. The claim is also without any merit.  *See Murray v. Delo*, 34 F.3d 1367, 1375-1376 (8th Cir. 1994) (alleged contradictions in testimony are material for cross-examination and may cause the jury to disbelieve the testimony but do not prove perjury). Williams' cross-examined and impeached the witnesses.  The jury believed them.  Williams apparently does not like the result but that does not prove perjury or knowing reliance on perjury by the prosecutor.[4]

**GROUND 5**: Williams alleges a violation of *Batson v. Kentucky*, 476 U.S. 79 (1989) by the peremptory challenges to venirepersons  Gooden, Singleton and Fortson.  The Missouri Supreme Court addressed the claim as follows:

---

[4] Williams did not in state court and does not now allege direct appeal counsel was ineffective for not presenting the perjured testimony claim on direct appeal.  The claim is defaulted. *See Reese v. Delo*, 94 F.3d 1177, 1185 (8th Cir. 1994).  Williams' failure to litigate an independent Sixth Amendment claim in state post-conviction review challenging the effectiveness of direct appeal counsel on this point prevents a showing of cause.  *See Edwards v. Carpenter*, 529 U.S. 446 (2000).  Presumably for this reason, the weak actual innocence claim is being made to attempt to salvage a claim on which a cause and prejudice argument cannot be made.

Williams argues that trial court erred in overruling his *Batson* challenge to the state's peremptory strike of three African-American venirepersons. This Court will reverse the trial court's decision on a *Batson* challenge only upon a showing of clear error. *State v. Parker*, 836 S.W.2d 930, 939 (Mo. banc 1992).

To establish a claim under *Batson*, the defendant must object to the prosecutor's use of peremptory challenges as violating Batson and identify the cognizable racial group to which the stricken veniremember belongs. *State v. Parker*, 836 S.W.2d at 939; *State v. Marlowe*, 89 S.W.3d 464, 468 (Mo. banc 2002). The state then must provide a race-neutral explanation for the peremptory challenge. *Id.* The state's reasons for strike need only be facially race-neutral unless discriminatory intent is inherent within the explanation. *State v. Brooks* 960 S.w.2d 479, 488 (Mo. banc 1997). The explanation will be deemed race-neutral, even if it is not persuasive. *Id.* If the prosecutor articulates a reason, the defendant must prove that the state's proffered reason was merely pretextual and that the strike was in fact racially motivated. *Id.*

### *Venireperson 64*

The state articulated three race-neutral reasons to justify striking venreperson 64 from the venire panel. The prosecutor first explained that the venireperson's earrings and clothing indicated that he was "trying to be

25

different" and was "liberal."  Striking a prospective juror based upon clothing and attire does not reflect an inherent racial bias motivating the strike.

Second, the prosecutors stated that the venireperson's demeanor and appearance were similar to Williams.  Williams cites *Johnson v. Love*, 40 F.3d 658, 660 (C.A.3 1994) to argue that striking the venireperson based upon physical appearance was inherently race-based because both he and Williams are African-American.  *Johnson* does not support Williams' argument.  In *Johnson*, the court found that the prosecutor's explanation for a strike was not race-neutral because the prosecutor said that the white defendant would not be a sympathetic figure for a "young black girl" *Id.*  At 662.  Unlike *Johnson*, this case does not involve an overt, racially motivated reason for the strike.  Instead, the prosecutor stated that the venireperson resembled Williams, had the same glasses, and had a similar demeanor.  These reasons are not inherently race based.

Finally the prosecutor stated that he struck the venireperson because he was a postal employee.  Employment is a valid race-neutral basis for striking a prospective juror.  *State v. Smulls*, 935 S.W.2d 9, 15-16 (Mo. banc 1997).

### *Venireperson 65*

The prosecutor struck venireperson 65 because he was not "definite enough" on whether he could consider the death penalty and because he was

court-martialed while in the military for stealing money. Both of these reasons are race-neutral and are supported by the record. The venireperson stated that he "can't see any differences" between life in prison and the death penalty or how you "weigh or judge those." Even though the venireperson stated that he could consider the death penalty, the rationale given by the prosecutor was race-neutral and supports a peremptory strike. The venireperson's criminal history is also a race-neutral basis for a peremptory strike.

*Venireperson 72*

The prosecutor struck venireperson 72 because he was fired from his job for physically attacking a fellow employee and because he appeared upset after other jurors laughed at him as he answered the prosecutor's questions concerning that incident. These are racially neutral explanations for the strike.

*State v. Williams*, 97 S.W.3d at 471-472.

Once the opponent of a peremptory challenge makes out a prima facie case of racial discrimination the proponent of the strike has the burden to provide a race neutral explanation for the challenge. *Purkett v. Elem*, 514 U.S. 765, 767 (1995). The explanation must be race neutral but should not be rejected at this stage because it is viewed as silly or superstitious. *Id*. at 768. At the third stage the trial court decides if the reason was pretextual *Id*. at 767-768. This determination is a pure determination of fact that is usually made based on the demeanor and credibility of the prosecutor and lies peculiarly with in the trial judges

27

province. *Hernandez v. New York*, 500 U.S. 352, 365 (1991) (plurality). Such fact findings are presumed to be correct under 28 U.S.C. §2254(e) and may only be rebutted by clear and convincing evidence.

The prosecutor thought that juror 64 was liberal or at least not conservative based on his two earrings, his shirt with an orange dragon and Arabic or Chinese lettering, on it and an ostentatious looking gold cross worn outside the shirt (Tr. 1586). The prosecutor also noted juror 64's style of glasses his shiny pants and his employment as a mail processing supervisor with the Post-Office, which the prosecutor indicated tended to show he would be liberal as well (Tr. 1586). *See Williams v. Groose*, 77 F.3d 259, 261 (8th Cir. 1996) (upholding peremptory challenges to postal workers). The prosecutor noted that he felt venireperson 64's response on whether he could consider the death penalty was weak (Tr. 1586). The prosecutor also mentioned venireperson 64's goatee (Tr. 1587).

Defense counsel did not contest that venireperson 64 was strangely dressed or that he was employed in a mail handling supervisory position with the post-office. Rather, he argued that he had been sandbagged because he had not made a record of other venireperson's dress and noted that if he knew why juror 64 was to be struck he would have noted other jurors with "wild clothes" *Id.* at 1589. Defense counsel also questioned the inference that postal workers are liberal (*Id.* at 1588).

The trial court explicitly found the reason for the strike was race-neutral and not pretextual (Tr. 1591). This is not rebutted by clear and convincing evidence.

The prosecutor indicated he struck juror 65 because he was not definite on his ability to consider the death penalty, and he had been convicted by court martial of misappropriating funds and jailed while in the Army, and he was not sure that this was not a felony that would legally disqualify venireperson 65 from service (Tr. 1592-1593).  The prosecutor he felt concerned that venireperson 65 would identify with the defendant having himself been convicted of a crime he did not admit committing (Tr. 1592-1593).  The court after hearing argument from both sides found the reasons for the strike were race-neutral (Tr. 1597).

The prosecutor indicated he struck venireperson 72 because he had been fired for hitting a fellow worker in the face three times when he felt he had been provoked verbally (Tr. 1603-1604).   The prosecutor also indicated venireperson 72 indicated by folding his arms during questioning that he was keeping his distance from the prosecutor and the prosecutor felt that venireperson 72 was insulted when the other venirepersons laughed at him during questioning about his being fired (Tr. 1604-1605).  The trial court found the reasons given were race-neutral and not pretextual (T. Tr. 1606).

The prosecutor in the case of these strikes was faced with what he viewed as an outlandishly dressed person, working in a job he viewed as generally  indicating liberality who gave ambiguous answers on the death penalty, a person convicted for dishonesty whom the prosecutor was not certain was qualified to sit as a juror under Missouri law, and a man who had become physically violent when he viewed himself as verbally provoked, and who the prosecutor perceived as insulted by other venirepersons laughing at him.  The choice of

29

exercising peremptory challenges on these jurors would seem to have been prudent and the finding that the prosecutor did not have a racial animus in exercising these strikes is supported by the record.

**GROUND 6**: Williams argues that trial counsel was ineffective in investigating and presenting mitigating evidence at the penalty phase. The Missouri Supreme Court rejected the claim based on the following analysis.

Williams alleges that trial counsel was ineffective for failing to introduce sufficient evidence of his social history during the penalty phase in order to rebut the state's evidence of aggravating factors. At the evidentiary hearing regarding Williams' claim, Williams' counsel testified that the strategy during the penalty phase was to advance the theory of "residual doubt" regarding Williams' actual guilt. By presenting evidence "to show how [Williams] grew up, that he had a family network of a mother and aunts and brothers and sister," counsel attempted to convince the jury to impose life imprisonment based upon residual doubt that Williams had committed the m murders. Even though the jury had found beyond a reasonable doubt that Williams was legaly guilty, counsel was attempting to persuade the jury to impose a life sentence based upon lingering doubt as to his actual guilt. The selection of witnesses and evidence are matters of trial strategy, virtually unchallengeable in an ineffective assistance claim. *Leisure v. State*, 828

S.W.2d 872, 875 (Mo. banc 1992).  The motion court found that an abusive childhood defense would have been inconsistent with the penalty phase strategy and would not have changed the jury's sentence.  The motion court did not clearly err in denying this claim without an evidentiary hearing.

168 S.W.3d at 433.

Trial counsel Green testified at the post-conviction review hearing that he retained a mitigation specialist a Mr. Eno and an expert Dr. Cunningham (PCR Tr. 92-94).  He testified that his principal penalty phase theory was residual doubt, and the positive impact Williams had on his children (PCR Tr. 93-94).[5]

The post-conviction review motion court found that putting on a complete social history including information about an abusive childhood, drug and alcohol abuse oppositional-defiant disorder and post-traumatic stress disorder would have cast Williams as a violent aggressive and angry person (Resp. Exh. 33, PCR LF 801).  The court noted that trial-counsel used witnesses to portray Williams as a loving father, loving brother, loving son and non drug user who came from a decent family (*Id*. at 801-802).  The court also pointed out that part of the defense strategy was residual doubt, but that presenting the evidence Williams now wishes to present would have been tantamount to conceding guilt.  *(Id*. at 801.)

The evidentiary hearing in Williams' post-conviction case, at which counsel testified, was held on March 12, 2004 (Resp. Exh. 27).  After the hearing was over trial counsel signed

---

[5] Trial counsel Chris McGraugh also testified that principal theories were residual doubt and Williams' role as father (PCR Tr. 46).

an affidavit portraying the decision not to present social history evidence as based on lack of time to prepare (Resp. Exh. 6 at 826-833). The post-conviction review motion court acted reasonably in rejecting the context in which counsel wished to place his actions, when what counsel actually did was clearly objectively reasonable.

Williams is in reality arguing that there is one and only one way to try a capital penalty phase. One must always present a social history portraying a murderer as the product of social factors beyond his control, even if this would undermine a viable defense that there is doubt whether he committed the crime and that he is not a terrible person.[6] That is not law and the Missouri Supreme Court reasonably applied *Strickland v. Washington* in rejecting the claim. It's decision should be left undisturbed under 28 U.S.C. §2254(d).

**GROUND 7**: Williams alleges direct appeal counsel was ineffective for not raising a claim challenging the denial of a continuance by the trial court. Appellate counsel filed a 147 page direct appeal brief raising ten claims for relief (Resp. Exh. 23).[7] It is well established that the winnowing out of weaker claims is the hallmark of effective appellate advocacy and that counsel is not required to raise all colorable claims for relief. *See Smith*

---

[6] In claim four of this petition Williams asserts he is innocent and was wrongly convicted. But in claim 6 he claims counsel was ineffective for not presenting a defense that would undercut the claim of innocence he presented to the jury. It cannot be said that counsel's action was objectively unreasonable or that presenting obviously inconsistent positions would have created a reasonable probability the verdict would have been different.

[7] This is in addition to a 155 page brief filed by post-conviction appellate counsel raising twelve more claims (Resp. Exh. 34).

*v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983); *Horne v. Trickey*, 895 F.2d 497, 500 (8th Cir. 1990); Williams nevertheless concludes that in capital cases "counsel should not winnow out claims that have arguable merit" (Habeas Petition at 89).  That is not the law.  *Smith* and *Jones* are still good law and counsel is under no duty to prepare shotgun briefs that dilute the claims counsel feels are best, in order to avoid being labeled ineffective.

The Missouri Supreme Court, which is the same court that would have heard the denial of a continuance claim on direct appeal, rejected the ineffective assistance of direct appeal counsel claim finding that the trial court did not abuse its discretion in denying the continuance.  *Smith v. State*, 168 S.w.3d at 444-445.

It appears direct appeal counsel knew her audience and declined to present a claim that would have lost if presented.  The decision of the Missouri Supreme Court rejecting the ineffectiveness claim is consistent with a reasonable application of clearly established United States Supreme Court precedent and should be left undisturbed under 28 U.S.C. §2254(d), as counsel acted reasonably and there is no reasonable probability the appeal would have come out differently had counsel briefed the claim.

**GROUND 8**: Williams appears to allege that because he allegedly asked for a hearing before the trial court on counsel's allegedly deficient investigation of witness Cole and such a hearing was denied that he has a right to automatic reversal under *Holloway v. Arkansas*, 435 U.S. 475 (1978).  But Holloway does not apply outside the context in which defense

counsel is forced to represent co-defendants over his timely objection. *Mickers v. Taylor*, 535 U.S. 162, 138 (2002). In fact the United States Supreme Court pointed out in *Mickers* that it has not held that deviation from *Strickland v. Washington* analysis is appropriate outside the simultaneous multiple representation context. *Mickens v. Taylor*, 535 U.S. at 174-176.

What Williams is alleging does not appear to be a true conflict of interest claim at all, but rather is an assertion of the claim of failure to investigate and present impeachment evidence concerning witness Cole that is similar to the one raised in ground two. The post-conviction review motion court rejected the claim that counsel failed to interview Cole's family members who would have testified that Cole was a liar and motivated to testify by the $10,000 reward (Resp. Exh. 32 at 797). The motion court found that the alleged testimony would not have been admissible and that Williams did not allege the family members would have provided admissible testimony about Cole's reputation in the community for truthfulness. *(Id.* at 797). The motion court also found that trial counsel "attacked the credibility of Henry Cole in practically every way possible" using his drug usage, felony convictions, interest in the $10,000 reward, inconsistencies in testimony and his viewing of television and newspaper articles about the murder. *Id.* at 798. The Missouri Supreme Court affirmed the decision Williams. *Williams v. State*, 168 S.W.3d at 446. The decision of the Missouri Courts are not contrary to nor an unreasonable application of clearly established

34

United States Supreme Court precedent and should be left undisturbed.  28 U.S.C. §2254(d).

**GROUND 9**: Williams argues that the trial court erred by not allowing Glen Roberts to testify that when Williams sold the victim's husband's computer to him, Williams said the computer belonged to Laura Asaro.

The Missouri Supreme Court rejected the argument finding that Roberts testified to the sale of the computer and the state did not introduce any confessions or statements Williams made to Roberts during the sale.  The Missouri Supreme Court found that Roberts testimony as to what Williams told him during the sale would be inadmissible hearsay and the trial court acted properly in excluding it.  *State v. Williams*, 97 S.W.3d at468-469. Williams cites no United States Supreme Court case that stands for the proposition that a trial is made fundamentally unfair if a defendant is not allowed to introduce self-serving hearsay, through a third party, in order to avoid testifying himself while still placing his version of the facts into evidence.  Williams argues that the hearsay should come in based on the rule of completeness which allows an entire statement by a defendant to come in if parts of it are introduced.  But no evidence of a statement by Williams to Roberts was admitted. Undeterred, Williams argues that the rule of completeness is being applied mechanistically in an unconstitutional manner because the Missouri Supreme Court is not using the rule of completeness to admit hearsay although no statement is in evidence to complete.

35

Williams' argument is unreasonable.  What Williams is really doing is making a *Chambers v. Mississippi*, 410 U.S. 284 (1973) argument for an exception to the rule against hearsay for exculpatory evidence with particularized indicia of reliability.  Of course the hearsay Williams wishes were admitted lacks the indicia of reliability present in *Chambers*.  Rather then being a declaration against penal interest made under circumstances indicating reliability the hearsay in this case was self-serving and made under circumstances indicating the opposite of reliability.

The Missouri Supreme Court's decision is not contrary to nor an unreasonable of clearly established United States Supreme Court precedent and should be left undisturbed under 28 U.S.C. §2254(d).

**GROUND 10**: Williams alleges direct appeal counsel was ineffective for not raising a claim that the trial court erred in not permitting a defense expert to testify about that psychological impact that Williams' execution would have on his children.  The Missouri Supreme Court found this claim to be without legal merit.  *Williams v. State*, 168 S.W.3d at 445.  The Missouri Supreme Court pointed that it had previously found such evidence to be inadmissible as had every court that had considered the issue expect one.  *Id*. at 445.

This claim was properly winnowed from the ten issues ultimately raised on direct appeal (See Resp. Exh. 23).  Counsel acted reasonably in not briefing in 2002 a claim that had been found to be meritless in *State v. Smith*, 32 S.W.3d 532, 555 (Mo. banc 2000) in 2000.  Further, there is no reasonable probability the outcome of the case would have been

different had the claim been briefed.  The decision of the Missouri Supreme Court rejecting the ineffective assistance of appellate counsel claim is consistent with a reasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984) and should be left undisturbed.

**GROUND 11**: In his state appellate brief, Williams made the arguments that the <u>trial court erred</u> in not *sua sponte* intervening in response to a reference to Williams choking state's witness Asaro and that the <u>trial court improperly denied objections</u> to comparing the trial with William's murder of the victim (Resp. Exh. 23 at 141).

Williams does not seem to be making the same argument he raised in state court.  He now argues the <u>prosecutor</u> ignored the state court's admonition not to comment on Williams' right to trial or to compare the worth of the life of Williams with that of the victim (Habeas Petition 105).  Williams must present the same factual and legal theory he presented in state court.  *Flieger v. Delo*, 16 F.3d 878, 885 (8th Cir. 1994).  He is not doing so.  He has shifted from the claims of trial court error rejected by the Missouri Supreme Court to claims of prosecutorial misconduct concerning the alleged comment on the right to trial, and has substituted a complaint about the comparing the worth of the victim's life with that of Williams, for the complaint raised in state court about argument concerning the choking of witness Asaro.

The claims actually presented in state court are without merit for the reasons set out by the Missouri Supreme Court in *State v. Williams*, 97 S.W.3d 474-475.  These claims have

now apparently been abandoned by Williams.  Williams' current claims are barred from review as those claims were not presented to the Missouri Supreme Court.

The current claims are also without legal merit.  The argument Williams complains about concerning Williams being the judge jury and executioner was a proper response to Williams' plea for mercy not a criticism of Williams for exercising his right to trial (See Tr. 3510-3516 contrasting the plea for mercy in Williams argument with his conduct in committing the murder).  The argument concerning protecting society was a proper argument for general deterrence (Tr. 3514).  *See Coleman v. Brown*, 802 F.2d 1227, 1239 (10th Cir. 1986) (comments concerning the penological justifications for the death penalty are permissible i.e. retribution incapacitation and general deterrence). *See Gregg v. Georgia*, 428 U.S. 153, 185 (1976( (finding that while we may safely assume that there are some murderers for whom the threat of death has no deterrent effect for many others the death penalty is undoubtedly a significant deterrent).

The standard of review for a due process argument claim is very high, in the sense that it is very difficult to establish such a claim. *See Darden v. Wainright*, 477 U.S. 168, 180-184 (1986) (It did not violate due process in the guilt phase of a capital case for the prosecutor to indicate Department of Corrections officials should be tried for letting the defendant out of prison previously, that people sent to prison cannot be expected to stay there and may be out in public with guns drinking, that the defendant was an animal who should not be let out of his cell unless wearing a leash held by a prison guard, and that the prosecutor wished the

38

defendants face had been blown off with a shotgun and that the prosecutor wished he could see him sitting there with no face); *Sloan v. Delo*, 54 F.3d 1371, 1388-1389 (8th Cir. 1995), *cert. denied*, 116 S.Ct. 728 (1996) (It did not violate due process in a capital case for the prosecutor to compare the value of the defendant's blood to that of veterans who died defending their country, for the prosecutor to say that the defendant reminded him of some "crazy Arab" who said he was going to kill Americans in the streets of America and that other prisoners would believe the defendant was a hero if he were not executed). *See also O'Rourke v. Endell*, 153 F.3d 560 (8th Cir. 1998) (capital defendant not prejudiced when his own counsel called him a monster and compared him to Jack the Ripper and Lizzie Borden during closing argument).

The Supreme Court teaching in *Darden* followed in *Sloan*, appears to be that to violate the Due Process Clause, argument must not merely be error or prejudicial error but must be extremely egregious prejudicial error that tipped the balance in a close case for a conviction or the death penalty thus making an entire trial fundamentally unfair. *See Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995) (stating that to show a due process violation a petitioner must show that "the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair" and that to meet his burden a petitioner must show "that absent the alleged impropriety the verdict probably would have been different"). The argument Williams complains about is not even

39

error and does not come close to being the kind of egregious impropriety necessary for a Due Process Clause violation.

**GROUND 12**: Williams alleges trial counsel was constitutionally ineffective for not asking for an instruction to limit the purposes for which the jury could consider Williams' escape from custody. The Missouri Supreme Court rejected this claim in *Williams v. State*, 168 S.W.3d at 443, as did the post-conviction review motion court (Resp. Exh. 32-33) (PCR L.F. 799-800). The post-conviction review court found that giving the instruction would have highlighted the escape attempt and that there is no reason to conclude that the jury used their knowledge of the escape as propensity or character evidence as opposed to evidence of consciousness of guilt, the reason for which the evidence was properly admitted (*Id.* at 799-800). The Court conclude that no prejudice resulted from the lack of the instruction *Id.*[8]

There is no question that under Missouri law the escape was admissible to show consciousness of guilt *State v. Williams* 97 S.W.3d at 462. The conclusion of the Missouri Courts that no *Strickland* prejudice resulted from not giving an instruction that the escape

---

[8] The motion court also stated "whether to request MAI-CR 3d 310.2 is a matter of trial strategy". That proposition is true. Williams argues that in his case trial counsel admitted it was not trial strategy to give the instruction by filing a new trial motion alleging the trial court erred in not giving the instruction *sua sponte* (Habeas Petition at 108). One can draw a different inference. While not highlighting the escape through an instruction defense counsel in practice preserved the option of alleging the trial court was wrong no matter what it did. If the trial court gives the instruction *sua sponte* it can be accused of highlighting the escape and prejudicing defense strategy, but if it does not, it can be accused of allowing the jury to draw an improper conclusion and prejudicing the defense. This course of action has the added benefit of setting up the current ineffectiveness claim by creating apparent incongruity between the acts of not requesting an instruction, and arguing it was error not to give it.

could be used to show consciousness of guilt, but not propensity, is reasonable and should be left undisturbed under 28 U.S.C. §2254(d) as the benefit of such an instruction would be marginal at best.

**GROUND 13**: Williams alleges that three of the ten aggravating circumstances found by the jury are duplicative. Specifically, he alleges that aggravating circumstance four, that Williams murdered the victim for money or something of monetary value, is duplicative of circumstance two that the crime was committed in the course of a burglary and circumstance three that it was committed in the course of a robbery (Habeas Petition at 111).

The Missouri Supreme Court rejected this claim. *State v. Williams*, 97 S.W.3d at 462. Williams admits that the precedent of this Court rejects the same claim. (Habeas petition at 112 citing 428 F.3d 738, 762 (8th Cir. 2005)). The Missouri Supreme Court cannot have unreasonably applied United States Supreme Court precedent as this Court has pointed out that the United States "has never before held that aggravating factors could be so duplicative as to render them constitutionally invalid" *Id.* at 762. Therefore, the decision should be left undisturbed under 28 U.S.C. §2254(d).

## **DISCOVERY**

Williams requests what appears to be virtually every legal and medical record on Henry Cole and Lauro Asaro possessed by almost anyone.  There is no dispute that Williams had access to the prosecutor's file at trial.  For purposes of a *Brady* claim the state is responsible for turning over any favorable evidence known to others who acted on the government's behalf in the case including the police. *Strickler v. Greene*, 527 U.S. 263, 275 n. 12 (U.S. 1999).  The vast majority of what Williams requests appears to have nothing to do with anything that could conceivably fit into that definition.  It is not relevant to the *Brady* claims.  If something was not in the possession of the state officials working on the case it was not *Brady* material. Further, this material appears to have little or nothing to with the impeachment evidence counsel is actually accused in grounds two and three of being ineffective for not presenting. (See analysis of grounds two and three above). This request seems to have no purpose relevant to the real issues in the case.

Cole and Asaro presumably have a right to privacy and not to have all aspects of their lives rummaged through as punishment for having testified in a capital case.  There is no reason to believe the federal agencies, agencies of various states and various private institutions named will turn over the materials Williams wants without months or years of litigation.  Williams appears to be attempting bog the case down in litigation about matters that have no relevance to the disposition of the case.  There is no good cause of the discovery he requests concerning Asaro and Cole and the request should be denied.

Similarly, the requested information concerning the murder of Debra McClain has nothing to do with any real issue in the case.  Williams, who was found guilty beyond a reasonable doubt, and, who has never provided a plausible explanation of why he had the murder victim's computer or why her purse, identification, ruler and calculator were in the trunk of the car he drives, offers nothing but speculation that a phantom serial killer may have murdered Debra McClain and therefore may have murdered the victim in this case. This is not good cause for discovery.

## EVIDENTIARY HEARING

Williams is barred from a hearing by 28 U.S.C. §2254(e). Williams' state court hearing was limited by his failure to plead disputed facts not refuted by the record, as opposed speculation and conclusions, which if true would entitle him to relief.(See the Findings of Fact and Conclusions of Law of the post-conviction review court). He had a hearing on the claim on which his pleading demonstrated a hearing was appropriate. Further, one must have some issue in federal court on which a hearing is appropriate in order to have a hearing , even without 28 U.S.C. §2254(e). All Williams' claims are without legal merit, and this can be determined from the record, or are procedurally barred. No hearing would be appropriate even if 28 U.S.C. §2254(e) did not control. *Wilson v. Kemna* 12 F.3d 145, 146 (8th Cir. 1994) (no hearing is required when the record makes clear claims are barred from review or without merit).

## CONCLUSION

WHEREFORE, Respondent prays that the petition for habeas corpus and the motions for discovery and an evidentiary hearing be denied with prejudice without further judicial proceedings.

Respectfully submitted,

JEREMIAH W. (JAY) NIXON
Attorney General


/s/ Michael J. Spillane
MICHAEL J. SPILLANE

Assistant Attorney General
Missouri Bar No. 40704
P. O. Box 899
Jefferson City, MO  65102
(573) 751-3321
(573) 751-5391 FAX
michael.spillane@ago.mo.gov
Attorneys for Respondent

CERTIFICATE OF SERVICE

I hereby certify that a true and
correct copy of this pleading should be sent by this Court's electronic filing system
this 7th day of December, 2006, to:

Kent E. Gipson
William C. Odle
305 E. 63rd Street
Kansas City, Missouri 64113


/s/ Michael J. Spillane
Assistant Attorney General