UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARCELLUS WILLIAMS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:05CV1474 RWS |
| ) | |
| DONALD ROPER, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

Petitioner Marcellus Williams is a state prisoner who has been convicted of and sentenced to death for the first degree murder of Felicia Gayle. Petitioner has filed a petition for a writ of habeas corpus and a motion for an evidentiary hearing. Petitioner has also filed a motion for discovery to compel the state to conduct further DNA testing of unmatched trace evidence collected from the scene of the crime and for the production of records. The state has filed a response in opposition to the order to show cause. For the reasons discussed below, the Court denies the motions for further DNA testing, for discovery and for an evidentiary hearing.

**FACTUAL BACKGROUND**

The following statement of background facts is taken from the opinions of the Missouri Supreme Court on direct appeal and on appeal from the denial of post-conviction relief. Williams v. State, 168 S.W.3d 433, 438-39 (Mo. 2005) (banc) (post-conviction relief per Rule 29.15 motion); State v. Williams, 97 S.W.3d 462, 466-67 (Mo.) (banc) (direct appeal), cert. denied, 539 U.S. 944 (2003).

According to evidence presented by the prosecution, on August 11, 1998, petitioner drove

his grandfather's car to a bus stop and then caught a bus to University City, Missouri. Petitioner burglarized the home of Felicia Gayle and fatally stabbed her. Petitioner washed off and took a jacket to conceal his bloody shirt. He took Gayle's purse (containing among other things, a ruler with her employer's name on it, and a calculator) and her husband's laptop computer.

Petitioner returned to the bus stop, retrieved the car, and then picked up his girlfriend, Laura Asaro. Asaro testified at trial that petitioner was wearing a jacket despite the summer heat. When petitioner removed the jacket, she noticed that his shirt was bloody and that he had scratches on his neck. Petitioner claimed that he had been in a fight. She also noticed a laptop computer in the car. She saw petitioner place the clothes in his backpack and throw the backpack into a storm sewer. Asaro testified that, the next day, while retrieving some of her clothing from the trunk of the car, she found a purse, which contained Gayle's state identification card, a coin purse, and several grocery coupons. Asaro confronted petitioner about the items. According to Asaro, petitioner admitted the purse belonged to a woman he had killed. He told her that he had broken into the house, waited for the woman to come out of the shower, and stabbed her in the arm and the neck. Petitioner threatened to kill Asaro, her children and her mother if she told anyone. A few days later, Asaro discovered a calculator and a ruler in the car. These items were identified as belonging to Gayle.

On August 31, 1998, petitioner was arrested on unrelated charges and incarcerated in the city workhouse. At this point, no arrest had been made in the Gayle case, and petitioner was not a suspect. Henry Cole testified at trial that, from April until June 1999, he and petitioner were in the workhouse together and that in May 1999 petitioner confessed to the Gayle murder. Cole was released from jail in June 1999 and told the University City police that petitioner had

admitted killing Gayle, including details that had not been publicly reported. In November 1999, Asaro told University City police that petitioner had admitted to her that he had killed Gayle. The police searched the car that petitioner had driven on the day of the murder (with the consent of petitioner's grandfather, the owner of the car) and found Gayle's ruler and calculator in the trunk. The police also recovered a laptop computer from Glenn Roberts, an acquaintance of petitioner who had bought the laptop from petitioner after the murder. (The laptop computer was identified as the victim's husband's computer.)

Petitioner was tried and convicted of one count of first-degree murder, first-degree burglary, first-degree robbery, and two counts of armed criminal action. Petitioner was sentenced to death on the murder count. (He was also sentenced to thirty years' imprisonment each on the burglary and armed criminal action counts and life imprisonment on the robbery count, to be served consecutively.)

*Direct Appeal*

Petitioner appealed, raising issues challenging evidentiary rulings, voir dire, instructions, and closing argument. He did not challenge the sufficiency of the evidence. In a lengthy opinion, the state supreme court held that the trial court did not err in refusing to allow defense counsel to elicit Glenn Roberts's hearsay testimony that petitioner had told Roberts that he (petitioner) was selling the laptop computer on behalf of Laura Asaro. Through Roberts's testimony, the prosecution established the fact that petitioner was in possession of the laptop and that he sold it to Roberts shortly after Gayle's murder. Because the prosecutor did not ask Roberts about any statements that petitioner made to him, the state supreme court ruled that the rule of completeness did not apply. 97 S.W.3d at 468. The state supreme court noted that petitioner was not

precluded from showing that Laura Asaro had possessed the laptop (two witnesses testified that they saw Laura Asaro with a laptop computer during the summer of 1998). Id. at 469.

The state supreme court also held that the trial court did not abuse its discretion by denying the defense objection to the admission of evidence of petitioner's attempt to escape from the city workhouse. Id. (evidence showed that petitioner attempted to escape about three weeks after he had been indicted on multiple charges, including the first-degree murder of Gayle, and that, on the day of the escape attempt, petitioner had been sentenced to twenty years in prison on unrelated charges and that during the escape attempt petitioner had assaulted a guard).

The state supreme court also held that the trial court did not err in denying the motion to suppress evidence seized during a warrantless search of the car petitioner was driving on the day of the murder. Id. at 470 (noting police had a reasonable basis to believe that petitioner's grandfather actually owned the car because the grandfather stated that he was the owner of the car and the car was parked on a lot adjacent to the grandfather's residence).

The state supreme court also held that the trial court did not err in allowing the prosecutor to admit victim impact evidence and evidence of other crimes (robbery of a bakery and a fast food restaurant, burglary). Id.

With respect to voir dire, the state supreme court held that the trial court did not err in allowing the prosecutor to use an analogy to explain to the venire the assessment of punishment in a capital murder case, id. at 470-71 (reference to decision-making process as hallway having "three doors"—(1) guilt or innocence, (2) special or aggravating circumstance, (3) death penalty). The state supreme court next held that the trial court did not err in denying the defense's Batson challenges to the prosecution's peremptory strikes against three African-American venirepersons

(venirepersons No. 64, 65, and 72). Id. at 471-72. The state supreme court also held that the trial court did not err in failing to submit a written instruction about juror notetaking or an accomplice instruction, or in submitting an instruction listing ten statutory aggravating circumstances, or in failing to intervene sua sponte to prevent the prosecutor from making an improper closing argument. Id. at 472-75.

Finally, the state supreme court reviewed the death sentence and concluded that the death sentence was not the product of passion, prejudice, or any other arbitrary factor. Id. at 475. The state supreme court also found that the evidence supported, beyond a reasonable doubt, the existence of one or more statutory aggravating circumstances (the court submitted 10 aggravating circumstances, see 97 S.W.3d at 473), and that the death sentence in the case was neither excessive nor disproportionate to the death penalty imposed in similar cases, considering the crime, the strength of the evidence, and the defendant. Id. at 475. The United States Supreme Court denied certiorari.

*Post-Conviction Relief*

Petitioner then filed a timely, pro se motion for post-conviction relief in state court. Appointed counsel filed an amended motion. The motions court held an evidentiary hearing only on the claim that trial counsel was ineffective for failing to advise petitioner of his right to testify during the penalty phase.

The state supreme court affirmed the denial of post-conviction relief and denied the motion for rehearing on August 30, 2005. First, petitioner argued that Cole and Asaro had extensive criminal records and histories of mental illness that significantly undermined their reliability and credibility. Petitioner claimed that the state failed to disclose criminal and mental

health records that the defense could have used to effectively impeach Cole and Asaro. See Brady v. Maryland, 373 U.S. 83, 87 (1963). The motions court held that the claim was refuted by the record, that is, more than a year before trial, the prosecutor notified defense counsel that Cole and Asaro had made videotaped statements and that those statements were available for viewing. (According to the prosecution, Cole and Asaro feared reprisal by petitioner and had not been in regular contact with police or prosecutors.) In March 2001, more than three months before trial, the prosecutor provided defense counsel with the videotaped statements and the police reports about them. 168 S.W.3d at 440. The state supreme court noted that the motions court had found that the prosecution did not conceal the statements of Cole or Asaro or their locations. Id.

The state supreme court also agreed with the motions court that the prosecutor had not failed to disclose impeachment evidence about Cole and Asaro. Id. Motions counsel filed numerous requests for production of records from various federal, state and private institutions. The state permitted motions counsel to inspect and copy the state's file. The state supreme court suggested that motions counsel should have filed discovery requests with the entities holding those records. Id.

Petitioner next alleged that the state manufactured evidence against him by offering to assist two other men with their on-going criminal prosecutions if they would testify against petitioner. Neither man testified against petitioner at trial. Petitioner argued that the fact that "agents for the state were willing to manufacture evidence taints the veracity of the testimony from [Cole and Asaro]." Id. The motions court denied this claim without an evidentiary hearing. The state supreme court held that it was "speculative and conclusory to allege that the prosecutor's offer of assistance to two men who did not testify at trial is tantamount to the

'manufacture' of evidence that negatively impacts the credibility of witnesses who testified and were subject to cross-examination." Id.

Petitioner next claimed ineffective assistance of counsel because trial counsel failed to investigate several members of Cole's family (who would have testified that Cole was dishonest, involved in prior misconduct (domestic violence, drug and alcohol abuse) and motivated by the reward money) and failed to obtain expert testimony that Cole was mentally ill and dishonest. The state supreme court agreed with the motions court that prior, unrelated misconduct was not admissible to impeach Cole and that trial counsel was not ineffective for failing to investigate and introduce inadmissible evidence. Id. at 441.

Petitioner also claimed that trial counsel was ineffective for failing to interview two potential witnesses about Asaro's criminal and medical history. The motions court found that "this testimony would have been cumulative to the evidence at trial because the record contained evidence about Asaro's drug addiction, prostitution, and that she might receive reward money for testifying at trial." Id. Petitioner also claimed that trial counsel was ineffective for failing to investigate Asaro's mother and several of his family members. Petitioner alleged that Asaro's mother would have testified that the car was inoperable in August 1998. Asaro's mother would have testified that she saw Asaro and petitioner use public transit on several occasions in August 1998. The motions court concluded that testimony would not have established that the car was inoperable on the date of the murder and would have been cumulative because petitioner's brother testified at trial that the car was inoperable. Id.

He also claimed that trial counsel was ineffective for failing to test Asaro's "blood, hair and fibers" in order to connect Asaro to the crime scene, failing to request a limiting instruction

for evidence about an attempted escape and an assault and for evidence of other crimes, and failing to introduce mitigation evidence during the penalty phase, failing to file a motion to quash the indictment, and not allowing him to testify during the penalty phase. The motions court found that the allegations about trace evidence were conclusory, contained no specific facts and did not warrant an evidentiary hearing. Id. at 442. The motions court found that the decision not to request a limiting instruction was a matter of trial strategy because a limiting instruction may have only served to highlight the other crimes evidence. Id. at 443. The motions court found that the decision not to introduce evidence of petitioner's abusive childhood was part of the defense strategy to convince the jury to impose life imprisonment based upon residual doubt of guilt. Id. The motions court noted that there was no basis to quash the indictment for failing to plead the statutory aggravating circumstances. Id. (statutory aggravating circumstances need not be pleaded in indictment or information).

The motions court did hold an evidentiary hearing on the claim that defense counsel failed to advise petitioner that he could testify during the penalty phase. Both defense trial attorneys testified, and petitioner testified by deposition. The motions court credited the attorneys (noting that the attorneys were experienced in capital cases and that their standard practice was to advise capital clients of their right to testify). The motions court denied the claim. Id.

Petitioner next claimed that appellate counsel was ineffective for failing to raise on direct appeal that the trial court erred in denying a continuance to the defense for additional time to prepare (the defense wanted to investigate a potential inmate witness and was waiting for additional forensic test results to determine if petitioner was present at the crime scene). The motions court concluded that the record did not support the claim that appellate counsel could

have established that the trial court abused its discretion in denying the motion for continuance. Id. The motions court noted that the prosecution did not introduce at trial any evidence regarding the inmate's statement and defense counsel did not explain how forensics testing could establish that petitioner was not present at the crime scene. Id. The motions court noted that trial counsel presented testimony from two forensics experts that none of petitioner's hairs were found at the crime scene and none of his DNA was found under the victim's fingernails. Id. at 445.

He also claimed that appellate counsel was ineffective for failing to raise a claim on direct appeal that the trial court erred in not allowing the defense to present expert testimony during the penalty phase about the psychological effect on his children of his execution. The state supreme court found that the motions court did not err in denying this claim without an evidentiary hearing, noting that, to date, every court except one has concluded that testimony regarding the impact the execution would have on family or friends is inadmissible. Id.

The state supreme court also held that the motions court did not abuse its discretion in denying motions to compel production of Asaro's and Cole's corrections and mental health records and police reports about another murder investigation in Pagedale, Missouri. The state supreme court noted that the state had opened its files to defense counsel and allowed defense counsel to inspect and copy the files. Id. The state supreme court also noted that many of the records requested are records of private drug treatment facilities and health care institutions not in the possession of the prosecution and that probation and parole records are confidential under state law. Id. (suggesting defense counsel should seek discovery from those entities). The state supreme court also noted that there was no showing that the Pagedale murder was connected to the Gayle murder. Id. (citing State v. Ferguson, 20 S.W.3d 485, 507 (Mo. 2000) (banc) (holding

evidence that someone else committed the crime is not admissible unless there is evidence directly connecting some identifiable person with the crime).

The motions court also denied the claim that the state's lethal injection protocol for executions is unconstitutional, the claim that trial counsel had a conflict of interest, and the motions to reject post-conviction counsel. Id. at 446.

**FEDERAL HABEAS PETITION**

On August 29, 2006, petitioner filed a timely habeas petition in federal court (habeas counsel was appointed in September 2005; the motion for rehearing was denied by the state supreme court on Aug. 30, 2005). Habeas petition, doc. 9–1; see Lawrence v. Florida, 2007 WL 505972 (U.S. Feb. 20, 2007) (No. 05–8820) (AEDPA 1-year period for filing federal habeas petition not tolled while cert. petition pending from denial of state collateral relief).

Petitioner claimed that the prosecution violated his constitutional rights in failing to disclose material evidence that could have been used to impeach the credibility of Cole and Asaro (claim 1) and by making improper closing arguments during the penalty phase (claim 11); that trial counsel failed to investigate adequately and impeach Cole (claim 2) and Asaro (claim 3), failed to present information about his abusive childhood during the penalty phase (claim 6), failed to request a limiting instruction (claim 12) and had a conflict of interest (claim 8); that his conviction violated due process because it was based on perjury and because he is actually innocent (claim 4); that he was denied equal protection when the prosecution used peremptory strikes against African-American venirepersons (claim 5); that appellate counsel failed to raise meritorious claims on appeal (denial of a continuance for trial preparation, including forensic testing of trace evidence (claim 7), and exclusion of expert testimony about the adverse impact on his children of

-10-

his execution (claim 10)); that he was denied due process and the right to present a defense when the trial court restricted cross-examination of Glen Roberts about the laptop computer (claim 9); and that three of the statutory aggravating circumstances were unconstitutionally duplicative (claim 13).

In support of the habeas petition, petitioner filed a motion for discovery to compel the state to "direct the St. Louis County prosecutor's office and the St. Louis County Crime Laboratory to discharge its duties pursuant to Mo. Rev. Stat. § 650.050 et seq. (2000) and test the unmatched genetic materials, including hairs and fingernail scrapings, to attempt to match the samples recovered from the crime scene to Laura Asaro and to known individuals in the Missouri felony offender database and the FBI profiling system." Petitioner's motion for discovery, Doc. 10, at 1. (The FBI maintains a national DNA database known as the Combined DNA Indexing System (CODIS). CODIS allows federal, state, and local crime laboratories to collect, exchange and compare DNA profiles electronically. CODIS connects the 175 crime labs and the DNA databases in all 50 states, the U.S. Army, and the FBI. As of April 2006, there were nearly 3.3 million DNA profiles in CODIS. Brief of Amicus Curiae Electronic Privacy Information Center in Support of Petitioner, at 3-10, filed in Johnson v. Quander, 127 S. Ct. 103 (Oct. 6, 2006) (No. 05-11230), denying cert. in 440 F.3d 489 (D.C. Cir. 2006).)

As noted above, biological trace evidence recovered from the crime scene was not matched to petitioner, the victim or the victim's husband. Petitioner argues that there is a significant likelihood that further testing could match this trace evidence to an individual in state DNA or federal DNA databases and thus establish that petitioner is actually innocent of the crime. Petitioner claimed in the state post-conviction proceeding that trial counsel was ineffective for

failing to test the trace evidence (to match it to Asaro).

Petitioner also filed a motion for discovery to "obtain relevant impeachment material pertaining to Henry Cole and Laura Asaro, exonerating evidence regarding the 1998 murder of Debra McClain (and any similar stabbing homicide occurring in the St. Louis metropolitan area from 1996 to the present) (this refers to the Pagedale murder), and evidence of governmental misconduct pertaining to the search of petitioner's car (parked at the home of petitioner's grandfather)." Petitioner's motion to authorize discovery, Doc. 11, at 1,9, 10. Petitioner argues that this evidence has never been disclosed to trial or post-conviction counsel. Petitioner argues that the credibility of Cole and Asaro was crucial to the state's case and that this evidence about their mental conditions and histories was necessary to effective cross-examination. Habeas counsel suggests that the court could enter appropriate protective orders, such as orders keeping these documents confidential, restricting disclosure of documents to counsel, and filing them under seal.

Petitioner also filed a motion for an evidentiary hearing on claims 1-4, 6-8, 10, and 12. Motion for evidentiary hearing, Doc. 16, at 1 & n.1 (petitioner notes that claims 5, 9, 11 and 13 involve trial errors that were raised on direct appeal in state court). Petitioner argues that the factual record was not fully and fairly developed in the state courts because the motion for post-conviction relief was denied by the state courts without a hearing (except on the claim that trial counsel was ineffective for failing to advise petitioner that he could testify during the penalty phase), despite the exercise of due diligence. Petitioner identifies the following unresolved issues, which he argues, if fully developed through discovery and an evidentiary hearing, will establish he is actually innocent of the crime: (1) Cole and Asaro committed perjury, (2) the police tried to

solicit other jail inmates to inculpate petitioner, (3) DNA evidence from the crime scene did not match the victim, the victim's husband or petitioner but could identify "the actual killer," (4) the unsolved, similar murder of Debra McClain (the Pagedale murder), and (5) police misconduct in connection with the search of the car. Habeas petition, doc. 9-1, at 43-45. The state argues in response that there is no good cause for discovery of the criminal and medical records of Cole and Asaro. The state argues that trial counsel had access to the prosecutor's file, which did not include these records, the records are not relevant to impeachment, and the records are private and confidential under state law. Response, doc. 22-1, at 42. The state also argues that there is no good cause for the discovery of the records about the murder of Debra McClain (the Pagedale murder). The state argues that petitioner presents no information that the crimes are related and is merely speculating that "a phantom serial killer" committed both crimes. Id. at 43. The state does not respond to the request for additional DNA testing and for comparison to state and federal DNA databases. The state also argues that the motion for an evidentiary hearing should be denied because it can be determined from the record that the claims are without merit or procedurally barred, and because petitioner failed to fully develop the record in state court, 28 U.S.C. § 2254e).

**DISCUSSION**

*Discovery*

Rule 6(a) of the Rules Governing Section 2254 Cases provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure, and may limit the extent of discovery." "Whether a petitioner has established 'good cause' for discovery requires a habeas court to determine the essential elements of the petitioner's

substantive claim and evaluate whether 'specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" Williams v. Schriro, 423 F. Supp. 2d 994, 1003 (D. Ariz. 2006), citing Bracy v. Gramley, 520 U.S. 899, 908-09 (1997).

First, with respect to the motion for additional DNA testing of the biological trace evidence from the crime scene, the Court decides that there is no good cause for discovery. The biological trace evidence has been tested. This is not a case in which the biological trace evidence has not been tested and, if tested, could exculpate petitioner. The record showed that the biological trace evidence did not match the DNA of petitioner, the victim or the victim's husband. This fact was presented to the jury at petitioner's trial.

Next, with respect to the motion for discovery of additional criminal and mental health treatment records for Cole and Asaro, the Court notes that defense counsel had pre-trial access to their statements and that they were extensively cross-examined by trial counsel about their personal backgrounds, criminal pasts, medical histories, knowledge of the reward, and possible motives for testifying at the trial. Ample reasons to question their credibility were before the jury. Additional criminal and mental health treatment records for these witnesses would be cumulative for purposes of impeachment.

With respect to the motion for discovery about the Pagedale murder, petitioner has not articulated any specific basis for connecting that crime to the present crime. Any connection between the two crimes is merely speculative.

The allegations before the Court do not show reason to believe that petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief. As a result, the

motions for discovery and additional DNA testing will be denied.

*Evidentiary Hearing*

The decision whether to grant an evidentiary hearing when there are material facts in dispute is generally at the discretion of the district court judge. However, a judge's discretion is significantly circumscribed by § 2254(e)(2) of the AEDPA [Anti-terrorism and Effective Death Penalty Act]. . . . As interpreted by the Supreme Court, subsection (e)(2) precludes an evidentiary hearing in federal court only if the failure to develop a claim's factual basis is due to a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel. The purpose of the fault component of 'failed' is to ensure that the prisoner undertakes his own diligent search for evidence. The Court found that this rule served AEDPA's goal of furthering comity in that federal courts sitting in habeas corpus are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings. In correlation, subsection § (e)(2) allows factual development when a petitioner diligently attempts to develop the factual basis of a claim in state court and is thwarted, for example, by the conduct of another or by happenstance was denied the opportunity to do so.

In compliance with § 2254(e)(2), when the factual basis for a particular claim has not been fully developed in state court, the first question for a district court in evaluating whether to grant an evidentiary hearing on the claim is whether the petitioner was diligent in attempting to develop its factual basis. The Supreme Court set an objective standard for determining "diligence"—whether s petitioner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court.

Absent unusual circumstances, diligence requires that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law. If an evidentiary hearing is requested, a petitioner's inability to persuade a state court to conduct such a hearing does not in itself demonstrate lack of diligence.

In sum, if this Court determines that a petitioner has not been diligent in establishing the factual basis for his claims in state court, then the Court may not conduct a hearing unless the petitioner satisfies one of § 2254(e)(2)'s narrow exceptions. If, however, the petitioner has not failed to develop the factual basis of his claim in state court, the Court will then proceed to consider whether a hearing is appropriate or required under the criteria set forth by the Supreme Court in <u>Townsend</u>, 372 U.S. 293. A federal district court <u>must</u> hold an evidentiary hearing in a § 2254 case when the facts are in dispute if (1) the petitioner alleges

facts which, if proved, would entitle him to relief, and (2) the state court has not after a full hearing reliably found the relevant facts. In any other case in which the facts are not in dispute and due diligence has been established, the district court judge has the power, constrained only by his sound discretion, to receive evidence bearing upon the applicant's constitutional claim.

Williams v. Schriro, 423 F. Supp. 2d at 1005-06 (citing Williams v. Taylor, 529 U.S. 420 (2000)(quotations and citations omitted).

Petitioner was diligent in raising the issues and seeking to develop the facts in the state courts. However, I do not find that there are any material facts in dispute (with respect to the habeas claims) or that material facts were not adequately developed in a state court hearing. I note that there was an evidentiary hearing in state court, and the facts were developed on the issue of trial counsel's advice to petitioner about testifying during the penalty phase. I believe petitioner's habeas claims can be resolved by careful review of the record without an evidentiary hearing. As a result, the motion for an evidentiary hearing will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Marcellus Williams' motions to conduct further DNA testing [10], to authorize discovery [11], and to hold an evidentiary hearing [16] are **DENIED**.

                                           _____
                                           RODNEY W. SIPPEL
                                           UNITED STATES DISTRICT JUDGE

Dated this 29th day of March, 2007.