# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **MARCELLUS WILLIAMS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:05-CV-01474-RWS** |
| | ) | |
| **DONALD ROPER,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## PETITIONER'S MOTION FOR RECONSIDERATION
## OF THE COURT'S MARCH 30, 2007, MEMORANDUM AND ORDER

Petitioner Williams respectfully requests this Court to reconsider its March 30, 2007, Memorandum and Order, Doc. 34, denying further DNA testing, discovery, and an evidentiary hearing, for the following reasons:

**I.     This Court denied Petitioner Williams' requests for further DNA testing, discovery, and an evidentiary hearing without permitting him to reply to Respondent's response.**

This Court's order, Doc. 34, denying further DNA testing, discovery, and an evidentiary hearing, was premature, because it failed to permit Petitioner Williams to reply to Respondent's (a) choice not to oppose his request for further DNA testing, and (b) cursory opposition to his requests for discovery and an evidentiary hearing.

1

Petitioner believed that these issues would not be addressed by this Court until after he filed his traverse (in which he would have included arguments on such issues); otherwise he would have filed a reply memoranda on the discovery and evidentiary hearing issues.

Petitioner Williams requested further DNA testing in his Motion for Discovery to Conduct Further DNA Testing, Doc. 10.  He also requested discovery and an evidentiary hearing on certain habeas claims in his

– Petition, Doc. 9 at 21, 25, 28 (related to Claim 1); 34 (related to Claim 2); 39 (related to Claim 3); 43, 45 (related to Claim 4);  83-84 (related to Claim 6); and

– Motion to Authorize Discovery, Doc. 11.

Respondent did not oppose further DNA testing.  He did oppose  – in a cursory manner – discovery and an evidentiary hearing, including such opposition in his response to the habeas petition.  Response to Order to Show Cause Why the Writ of Habeas Corpus Should Not Be Granted, Doc. 22 at 42-44.  Had this Court permitted Petitioner Williams to reply to Respondent on these matters, he would have:

*First*, shown that Respondent's *failure to oppose* to further DNA testing *must* result in the submission of the DNA samples taken, and the results found, in this case to the Missouri and FBI DNA databases.  *See* Motion for Discovery to Conduct Further DNA Testing, Doc. 10.

*Second,* Petitioner would have countered Respondent's claims that (a) Petitioner had access to the prosecutor's trial file, Doc. 22 at 42; (b) Petitioner's discovery requests "have nothing to do with anything" meeting the descriptions of "favorable evidence known to others who acted on the government's behalf" or "impeachment evidence counsel is actually accused in grounds two and three of... not presenting", and further "have no purpose relevant to the real issues in the case," *id.*; and (c) Laura Asaro and Henry Cole have privacy rights, Doc. 22 at 42-43.

Access to a prosecutor's trial file by a death penalty defendant is *not* equivalent to the prosecutor's actual and full compliance with his obligation to learn of and disclose  "'favorable evidence known to... others acting on the government's behalf...'" to the defendant. *Strickler v. Greene,* 527 U.S. 263, 289 (1999) (access to prosecutor's trial file by death penalty defendant not equivalent to prosecutor's compliance with obligation to learn of and disclose favorable evidence where file lacked certain favorable evidence), citing *Kyles v. Whitley,* 514 U.S. 419, 437 (1995). Indeed, as demonstrated here, Respondent said *only* that Petitioner Williams had access to the prosecutor's trial file – *he did not say that the prosecutor had actually and fully complied with his obligation to learn of and disclose favorable evidence to Petitioner. See* Doc. 22 at 44.

Additionally, Respondent's comments that Petitioner Williams' discovery

3

requests "have nothing to do with" favorable evidence or trial counsel's failure to

present impeachment evidence, and "have no purpose relevant to the real issues in the

case" are nonsensical.  Doc. 22 at 44.  Petitioner's discovery requests are, in fact,

detailed and specifically aimed at obtaining information reasonably calculated to lead

to the discovery of favorable and admissible evidence, including, but not limited to,

impeachment evidence.  *See* Motion to Authorize Discovery, Doc. 11 at 2-10; *Kyles*

*v. Whitley,* 514 U.S. 419, 445 (1995) ("the effective impeachment of one eyewitness

can call for a new trial") (citing *Agurs v. United States,* 427 U.S. 97, 112-113 n. 21,

(1976).  They ask for, *inter alia,* information regarding Henry Cole and Laura Asaro,

the only witnesses to identify Petitioner as the perpetrator of the crimes at issue,  as

*no physical evidence linked him to those crimes.*  The information sought regarding

Cole and Asaro includes, but is not limited to, their:

- competency to testify at Petitioner's trial;

- criminal records;

- prior statements;

- benefits received from the government in exchange for assistance in this case and/or other cases;

- adverse judicial proceedings;

- roles as informants or witnesses in judicial proceedings;

–    instances of providing untruthful or misleading information and/or testimony in this case and/or other cases;

–    medical, psychological and behavioral records; and

–    probation and parole records.

Doc. 11 at 2-8.

Petitioner Williams' discovery requests also seek information regarding the strikingly similar – and as-yet-unsolved – knifing-killing of Debra McClain in Pagedale, Missouri, as well as other similar knifing-killings in the St. Louis metropolitan area. *Id.* at 8-10.

These requests have *everything to do* with evidence favorable to Petitioner Williams, including failures by trial counsel to present such evidence, and are *directly relevant* to the real issues in this habeas case. Those real issues are: the State's failure to disclose all favorable and material evidence regarding Cole and Asaro (including, but not limited to, their medical, psychological, and mental health records), *see* Habeas Claim 1;  trial counsel's failures to present this, and other impeaching, evidence to the jury, *see* Habeas Claims 2 and 3; perjury committed by Cole and Asaro at trial, which led to the conviction of Petitioner Williams, who is actually innocent of the killing of the victim, Ms. Gayle, *see* Habeas Claim 4.  *See* Petition For A Writ of Habeas Corpus,  Doc. 9 at 15-46.

Finally, Respondent's blanket assertion of "privacy rights," Doc. 22 at 44, on behalf of Cole and Asaro, is unfounded.  Such an assertion is only properly made by Cole and Asaro themselves.  More importantly, Respondent cannot take a position contrary to that of the State, which "had no objection to" Petitioner Williams obtaining Asaro's medical records in the Burger King robbery proceedings against Petitioner, in which Asaro testified against Petitioner.  *Williams v. Roper*, 2005 WL 2931933 at *20 (E.D. Mo. 11/4/2005).  Indeed, the trial court in that case  "granted Petitioner's motion for disclosure of Asaro's medical records."  *Id.*;  Order dated 4/2/2001 in *State v. Williams*, Case No. 00CR-2972, Circuit Court of St. Louis County, Missouri (attached hereto as *Exhibit 1*).[1]

## II.     This Court should reconsider its denial of further DNA testing.

As this Court properly noted, Respondent did not oppose Petitioner Williams' request for further DNA testing.  *See* Order, Doc. 34 at 13 ("The state does not respond to the request for additional DNA testing and for comparison to state and federal DNA databases.").  Contrary to its further finding that "[t]his is not a case in which the biological trace evidence has not been tested and, if tested, could exculpate

---

[1]The State then introduced the Burger King convictions as aggravators in the penalty phase of the death penalty case at hand. *State v. Williams,* 97 S.W.3d 462, 470, 473  (Mo. banc 2003).

petitioner," Doc. 34 at 14, this *is* a case in which such evidence *should have already* exculpated Petitioner Williams – and this *is* a case in which such evidence, *if matched to a person other than Petitioner by the Missouri or FBI DNA databases*, would definitively exculpate Petitioner.  Indeed, it is similar to other cases where pre-trial DNA test results excluding the criminal defendant as the perpetrator were presented to, and ignored by, trial juries, but where post-trial testing and comparison of such results to state, national, and/or FBI DNA databases produce  matches to persons *other than the defendant.*

For example, in the case of Jeffrey Deskovic, a New York man, pre-trial DNA test results excluding him as the source of semen found in the victim were presented to, and ignored by, the trial jury. "DNA Testing Frees Man Imprisoned For Half His Life," *The New York Times,* 9/21/2006 (attached hereto as *Exhibit 2*).  Deskovic was convicted of  raping and murdering the victim. *Id.*; *People v. Deskovic,* 201 A.D.2d 579 (N.Y.A.D. 1994).  But post-trial comparison of test results to a national DNA database resulted in a match to Steven Cunningham, who subsequently confessed and pled guilty to the crimes.  "Inmate Enters Guilty Plea in '89 Killing," *The New York Times,* 3/15/2007 (attached hereto as *Exhibit 3*).

And in the case of Entre Nax Karage, a Texas man, pre-trial DNA results excluding him as the source of semen found in the victim, as well as three hair samples

found on the victim's body, were presented to, and ignored by, the trial jury. *Karage v. State,* 1999 WL 454638 at *5, *7 (Tex. App. 7/7/1999).  Karage was convicted of murdering the victim. *Id.*  But post-trial comparison of test results to a DNA database resulted in a match to another man.  *Ex parte Entre Nax Karage,* 2005 WL 2374440 (Tex. Crim. App. 9/28/2005).  Karage was then pardoned by Governor Rick Perry. *Gov. Rick Perry Grants Two Pardons For Innocence,* Press Release 12/22/2005 (attached hereto as *Exhibit 4*).

Because Respondent did not oppose further DNA testing and comparison of test results to DNA databases, and because such comparison may well produce a match to a person other than Petitioner Williams, this Court should reconsider its order, and grant Petitioner's motion, Doc. 10.

**III.    This Court should reconsider its denial of discovery.**

This Court's findings that "defense counsel had pre-trial access to... statements" of Cole and Asaro, that counsel "extensively cross-examined" them, and that "[a]dditional criminal  and mental health treatment records" relating to them "would  be  cumulative[,]" Doc. 34 at 14, are *absolutely irrelevant* to the real, substantial, and legal issues of (a) the prosecutors' failure to actually and fully comply with their obligation to learn of and disclose  *all* "'favorable evidence known to... others acting on the government's behalf[,]'" *Kyles v. Whitley,* 514 U.S. 419, 437

8

(1995), (b) trial counsels' failure to present this (and other impeaching) evidence to the jury, and (c) Petitioner Williams' innocence. *See* Habeas Petition, Doc. 9 at 15-46 (Habeas Claims 1-4). And this Court's failure to account for the fact that Respondent here *has not asserted that the prosecutors complied with their obligation to learn of and disclose favorable evidence*, is inexplicable. *See* Doc. 22 at 44.

Also, this Court's finding that Petitioner Williams did not "articulate[] any specific basis for connecting [the Pagedale killing] to the present crime[,]" Doc. 34 at 14, is incorrect. Petitioner Williams, in his habeas petition and discovery motion, showed that the Pagedale killing:

 – was thought by St. Louis County Medical Examiner Dr. Mary Case to be connected to the killing at issue in this case;

 – occurred in the month before, and within geographical proximity to, the killing a issue in this case;

 – occurred during a home invasion, like the killing at issue in this case; and

 – involved stabbing the victim more than twenty times with a knife obtained from the kitchen, and leaving the knife in the victim's body.

*See* Habeas Petition, Doc. 9 at 44-45; Motion to Authorize Discovery, Doc. 11 at 8-10.

These are specific bases for connecting the two killings.

For these reasons, this Court should reconsider its order and grant Petitioner's

9

Motion to Authorize Discovery, Doc. 11.

**IV.     This Court should reconsider its denial of an evidentiary hearing.**

Petitioner Williams agrees with this Court that he "was diligent in raising []

issues and seeking to develop the facts in the state courts."  Doc. 34 at 16.  But he

disagrees with this Court's findings that there are no "material facts in dispute (with

respect to the habeas claims)[,]" and that material facts were "adequately developed

in a state court hearing." *Id.*

A comparison of Petitioner's habeas petition and Respondent's Response

shows that the parties dispute the material facts contained in the habeas claims.  For

example, Respondent does not accept as true the facts set forth in Petitioner's Habeas

Claim 1, which include the fact that the State failed to disclose drug treatment records,

mental health records, and prison and jail records for Cole and Asaro to Petitioner

Williams.  Doc. 9 at 16-18.  Respondent's response, in part, is the unsupported

assertion that "the  prosecutor apparently had no knowledge of what was in [the]

records" of Cole and Asaro's psychiatrists, which Petitioner disputes. Doc. 22 at 15.

Nor does Respondent accept as true the facts set forth in Habeas Claim 2,  which

include the fact that trial counsel failed to interview members of Cole's family and learn

from them information regarding Cole's specific instances of mental illness as well as

his current and previous lies in judicial proceedings.  Doc. 9 at 30-32.  *Cf.* Doc. 22

(asserting the reasonableness of the state court decisions in this case).  The same is true of Habeas Claim 3.  *See* Doc. 9 at 35-39 (Petitioner's facts regarding trial counsel's failure to present impeachment evidence as to Asaro); *cf.* Doc. 22 at 22 (Respondent's assertion that "[t]he impeachment evidence was essentially cumulative of the effective cross examination and impeachment at trial and there was no evidence or allegation that Asaro was at the crime scene." ).

Most importantly, Respondent opposes Petitioner's Habeas Claim 4, which sets forth facts regarding, *inter alia,* perjury by Cole and Asaro (of which the prosecutor knew or should have known), the State's offering inducements to two prisoners to testify against Petitioner, the denial of access to impeachment evidence as to Cole and Asaro, and Petitioner William's innocence.  Doc. 9 at 39-46. *Cf.* Doc.  22 at 22-24 (Respondent's rejection of Habeas Claim 4).

Additionally, how could material facts have been adequately developed at the state post-conviction hearing, when that hearing addressed *only* a claim not even presented in Petitioner Williams' federal petition?  Petitioner Williams never received *any* evidentiary hearing on his claims of prosecutorial misconduct, trial counsel's ineffectiveness,  and innocence (all of which *are* raised in his habeas petition).  By definition, these issues cannot be fully and fairly addressed without an evidentiary hearing.

For instance, it is impossible for this Court to fully and fairly decide Petitioner Williams' trial counsel's ineffectiveness failing to investigate and present evidence where the prevailing legal standard requires  counsel's testimony on pertinent issues such as the scope and reasonableness of their investigation, as well as any purported tactical reason for failing to investigate and/or  present that evidence.  *See, e.g., Williams v. Taylor,* 529 U.S. 362, 373 (2000) (trial counsel's testimony showed that his failure to seek records was due to erroneous belief that state law prohibited him, and his failure to contact witness was due to a lack of a return phone call, and not a strategic choice); *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In addition, to have any chance of establishing prejudice resulting from counsel's failures, a petitioner must present the evidence he claims counsel should have presented on his behalf at trial.  *Strickland,* 466 U.S. at 694.

Likewise, Petitioner Williams can not possibly meet the standard for actual innocence without having the opportunity to present evidence (outside of the state court record) at a federal evidentiary hearing.  *See, e.g., Schlup v. Delo*, 513 U.S. 298 (1995).  It is well settled in this circuit that an evidentiary hearing is both  appropriate and warranted in order for a petitioner to effectively litigate his claim of actual innocence.  *Schlup v. Delo*, 912 F.Supp. 448 (E.D. Mo. 1995); *Amrine v. Bowersox*, 128 F.3d 1222 (8th Cir. 1997) (en banc); *Reasonover v. Washington*, 60 F.Supp.2d

937 (E.D. Mo. 1999).

In sum, this Court's denial of discovery and an evidentiary hearing operate to effectively deny Petitioner Williams the opportunity to support and prevail on his claims of prosecutorial misconduct, trial counsel's ineffectiveness, and actual innocence.

## V.      Conclusion.

For all the foregoing reasons, this Court should set aside its prior order, grant further DNA testing and appropriate discovery, and hold an evidentiary hearing prior to the disposition of this case.

Respectfully submitted,

/s/ Kent E. Gipson
KENT E. GIPSON          #34524
Public Interest Litigation Clinic
305 East 63rd Street
Kansas City, MO  64113
816-363-2795 • Fax 816-363-2799

/s/ Lori Leon
LORI LEON          Ohio #0065584
Public Interest Litigation Clinic
305 East 63rd Street
Kansas City, MO  64113
816-363-2795 • Fax 816-363-2799

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of April, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Michael J. Spillane, Assistant Attorney General, P.O. Box 899, Jefferson City, Missouri 65102.

/s/ Kent E. Gipson
KENT E. GIPSON  -  #34524
Public Interest Litigation Clinic
305 E. 63rd Street
Kansas City, MO  64113
Telephone (816) 363-2795
Facsimile (816) 363-2799

14