**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| MARCELLUS WILLIAMS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) **Case No. 4:05-CV-01474-RWS** |
| | ) |
| DONALD ROPER, | ) |
| | ) |
| Respondent. | ) |

**PETITIONER WILLIAMS' REPLY MEMORANDUM
IN SUPPORT OF HIS REQUESTS FOR
FURTHER DNA TESTING, DISCOVERY, AND
AN EVIDENTIARY HEARING**

Pursuant to this Court's order, Doc. 35, Petitioner Williams respectfully files this reply memorandum in support of his requests for further DNA testing, discovery, and an evidentiary hearing

**I. Petitioner Williams' Motion for Discovery to Conduct Further DNA Testing, Doc. 10, which is unopposed by Respondent, requests testing and comparison of unmatched genetic materials in this case.**

Petitioner Williams requested this Court to order the State of Missouri to direct the St. Louis County prosecutor's office and the St. Louis County Crime Laboratory to test the unmatched genetic materials in this case, which include materials from

1

underneath the victim's fingernails, on the victim's body, and on the rug on which her body was found, in order to attempt to compare them to Laura Asaro and to known individuals in the Missouri DNA Profiling System (established by the Missouri Department of Public Safety and administered by the Missouri State Highway Patrol Crime Laboratory, *see* sec. 650.050 et seq. R.S. Mo.), and the FBI DNA database (known as the Combined DNA Index System, or "CODIS."). This request is unopposed by Respondent. Order, Doc. 34 at 13,

The Missouri legislature mandated that the State's DNA Profiling System be compatible with the FBI's DNA database, ensure that DNA records are "fully exchangeable between DNA laboratories," and meet the FBI's quality assurance standards issued by the FBI. Sec. 650.050(4) R.S. Mo. It further mandated that the state highway patrol act as the system's central repository and collaborate with the FBI regarding Missouri's participation in CODIS. Sec. 650.052(2) R.S. Mo.

"CODIS is a national index of DNA samples taken from convicted offenders, crime scenes and victims of crime, and unidentified human remains that 'enables law enforcement officials to link DNA evidence found at a crime scene with a suspect whose DNA is already on file.'" *United States v. Miles*, 228 F.Supp.2d 1130, 1132 (E.D.Cal. 2002) (quoting 146 Cong. Rec. S11645-02, S11647 (Dec. 6, 2000)). Critically, "one of the fundamental characteristics of [CODIS] is that it can be used

2

to exonerate individuals...accused of crimes for which they are innocent." *U.S. v. Amerson*, 483 F.3d 73, 83 (2nd Cir. 2007). *See Johnson v Quander*, 440 F.3d 489, 502 (D.C. 2006) (one purpose of CODIS is to facilitate DNA-based exonerations); *U.S. v. Sczubelek*, 402 F.3d 175, 185 (3rd Cir. 2005) (database will help to exculpate individuals imprisoned for crimes they did not commit). Thus, CODIS advances the "overwhelming public interest in prosecuting crimes *accurately*." *United States v. Kincade*, 379 F.3d 813, 839 n. 38 (9th Cir. 2004) (quoting *Rise v. Oregon*, 59 F.3d 1556, 1561 (9th Cir. 1995) (emphasis in original)).

With great regularity, media outlets chronicle instances where the authorities solve "cold cases" through these DNA databases, often obtaining matches to convicts imprisoned for similar crimes. Fundamental fairness dictates that the same technology should be utilized to allow persons convicted of serious crimes on the basis of questionable evidence to prove their innocence. Marcellus Williams deserves an opportunity, in the interest of justice, to avail himself of this existing mechanism to prove his innocence.

**II.    Petitioner Williams requests that the victim's fingernail clippings and the hair evidence retrieved from the victim's body and the scene of the crime be tested for detectable DNA and submitted for comparison to DNA profiles contained in the Missouri and CODIS databases.**

No biological evidence linked Petitioner Williams to the scene of the crime. As

such, the State could not, and did not, present any biological evidence at trial, apart from testimony that it destroyed the only latent fingerprints lifted at the victim's house because they allegedly lacked identifiable quality.  Trial tr. 2222-2223; 2310; 2324-2325.  Indeed, Prosecutor Larner, in the State's closing argument, said to the jury: "I told you in voir dire I didn't have any forensic evidence.  I don't have to have forensic evidence."  Trial tr. 3061.

Curiously, however, Prosecutor Larner had custody of biological evidence that could have been tested for detectable DNA.  Defense DNA expert, Jami Harman, testified that, before trial, the State and the defense had "divided the bulk sample of fingernail clippings [from the victim], and [she] took approximately five or six sections of the clippings."  Trial tr. 2954.  The other "half of the samples for the...clippings were left behind for the State."  Id.  But the State *never* tested its half of the clippings.  Trial tr. 2973 (statement of Prosecutor Larson).[1]

In addition to this fingernail clipping evidence, the State had retrieved hair and fiber evidence from the victim's body and the rug upon which she was found. Trial

---

[1]Ms. Harman was able to detect only one DNA profile, that of the victim, in three of the defense's half of the samples, which consisted of apparent full fingernail clippings as well as fragments of such clippings.  Trial tr. 2964-5, 2970.  There could have been a very small amount of undetectable DNA on these three samples.  Trial tr. 2966.  She returned the other samples, which she did not test, to Prosecutor Larner.  Trial tr. 2971.

tr. 115 (rug); 2265-2266 (hairs found on victim's shirt); 2267-8 (hairs and fibers found on victim's body transmitted from medical examiner's office to lab). The State compared the evidence from the rug -- a blond head hair and two gray pubic hairs -- to the hair of the victim and her husband; they did not match. Forensic Laboratory Reports, First and Second Reports, dated 3/24/99 and 6/7/99, Missouri State Highway Patrol Crime Laboratory (attached hereto as *Exhibits 1* and *2*). But it *never* tested these hairs, or the hairs found on the victim, against Petitioner Williams' hair. Trial tr. 2867.

Rather, defense expert Victor Granat made these comparisons, finding that such hairs were not microscopically consistent with those of Petitioner. *Id*. He also found that hairs from the victim's body, which were light brown to brown (as opposed to those of Petitioner, an African-American man who has black hair), were not consistent with either the victim or her husband. Trial tr. 2870-2872. And hairs from the victim's hands were not associated with Petitioner. Trial tr. 2877-2879.

Thus Petitioner Williams requests, first, that the fingernail clippings and the hairs be tested for detectable DNA and, second, that any detectable DNA be submitted for comparison to DNA profiles contained in the Missouri DNA database and the FBI's CODIS database.

**III.   Petitioner Williams' case is similar to other cases where post-trial DNA**

**test results produce matches to persons other than the defendant convicted of the crime at issue.**

Two hundred former inmates have been formally cleared on the strength of DNA evidence from 1989 to date. "The DNA 200," *The New York Times*, Week in Review, May 20, 2007, p. 14 (attached hereto as *Exhibit 3*). Fourteen of these 200 people had been on death row. *Id.* Twenty-eight percent of these 200 people had been convicted of murder. *Id.* "Fifteen percent [of these cases] featured testimony from informants at odds with the later evidence." *Id.* Most astonishingly, "[t]here were confessions or admissions in about twenty five percent of these cases." *Id.*

In at least two of these cases, pre-trial DNA tests excluding the former inmate as the perpetrator of the crime were ignored by juries. For example, in the case of Jeffrey Deskovic, a New York man, pre-trial DNA test results excluding him as the source of semen found in the victim were presented to, and ignored by, the trial jury. "DNA Testing Frees Man Imprisoned For Half His Life," *The New York Times,* 9/21/2006 (attached hereto as *Exhibit 4*). Deskovic was convicted of raping and murdering the victim. *Id.*; *People v. Deskovic,* 201 A.D.2d 579 (N.Y.A.D. 1994). But post-trial comparison of test results to a national DNA database resulted in a match to Steven Cunningham, who subsequently confessed and pled guilty to the crimes. "Inmate Enters Guilty Plea in '89 Killing," *The New York Times,* 3/15/2007 (attached

6

hereto as *Exhibit 5*).

And in the case of Entre Nax Karage, a Texas man, pre-trial DNA results excluding him as the source of semen found in the victim, as well as three hair samples found on the victim's body, were presented to, and also ignored by, the trial jury. *Karage v. State,* 1999 WL 454638 at *5, *7 (Tex. App. 7/7/1999).  Karage was convicted of murdering the victim.  *Id.*  But post-trial comparison of test results to a DNA database resulted in a match to another man. *Ex parte Entre Nax Karage,* 2005 WL 2374440 (Tex. Crim. App. 9/28/2005).  Karage was then pardoned by Governor Rick Perry.  *Gov. Rick Perry Grants Two Pardons For Innocence,* Press Release 12/22/2005 (attached hereto as *Exhibit 6*).

Petitioner Williams' case is quite similar to these cases.  In his case,  the State's case in chief was built on the testimonies of two informants, Laura Asaro and Henry Cole.     *See*   "Informants/Snitches,"    Innocence    Project, http://www.innocenceproject.org/understand/Snitches-Informants.php    ("DNA exonerations have shown that snitches lie on the stand.") (attached hereto as *Exhibit 7*). Apart from the inconsistencies between these testimonies, what the informants told the jury -- that Petitioner confessed committing the killing -- is at odds with the fact that the State did not have any forensic evidence linking him with the killing.  *See id.* ("In some cases without biological evidence, the snitch testimony is the only evidence of

guilt."). The jury, as we know, ignored this fact.

**IV.    This Court should grant Petitioner Williams' unopposed Motion for Discovery to Conduct Further DNA Testing, Doc. 10, in the interest of avoiding the execution of an innocent person.**

Petitioner Williams' unopposed motion should be granted, as there is a significant likelihood that, if this Court orders further DNA testing as well as comparison to known profiles in the Missouri and CODIS databases, a positive match could be obtained. Obtaining such a positive match at this time would provide support for Petitioner's Claims 3 (trial counsel's ineffectiveness regarding crime scene evidence) and 4 (perjured testimony of Laura Asaro and Henry Cole; actual innocence), and, most importantly, avoid the execution of an innocent person, "a constitutionally intolerable event." *Herrera v. Collins*, 506 U.S. 390, 419 (1993) (O'Connor, J., joined by Kennedy, J., concurring).

**V.    Respondent fails to address the fact that Petitioner Williams' Motion to Authorize Discovery, Doc. 11, meets the good cause standard of Habeas Rule 6.**

Petitioner Williams requested discovery on certain habeas claims in his Petition, Doc. 9 at 21, 25, 28 (related to Claim 1); 34 (related to Claim 2); 39 (related to Claim 3); 43, 45 (related to Claim 4); 83-84 (related to Claim 6); and his Motion to Authorize Discovery, Doc. 11 at 2-10. In the latter, he requested specific information regarding Laura Asaro and Henry Cole, the only people naming him as the perpetrator of the

8

crimes at issue, as well the factually-similar knifing killing of Debra McClain, in Pagedale, Missouri.

Respondent's cursory and illogical counters to these requests are:

He first claims that Petitioner Williams had access to the prosecutor's trial file, Doc. 22 at 42. But access to a prosecutor's trial file is simply *not* equivalent to a prosecutor's actual and full compliance with his obligation to learn of and disclose to the defense "'favorable evidence known to... others acting on the government's behalf.'" *Strickler v. Greene,* 527 U.S. 263, 289 (1999) (access to prosecutor's trial file not equivalent to prosecutor's compliance with obligation to learn of and disclose favorable evidence where file did not contain all such evidence), citing *Kyles v. Whitley,* 514 U.S. 419, 437 (1995). Indeed, Respondent here *did not say that the prosecutor had, in fact, complied with his obligation to learn of and disclose all favorable evidence to the defense. See* Doc. 22 at 44.

Respondent next comments that Petitioner Williams' discovery requests "have nothing to do with" favorable evidence or trial counsel's failure to present impeachment evidence, and "have no purpose relevant to the real issues in the case," Doc. 22 at 44: he thus entirely fails to recognize that these requests are specifically aimed at obtaining information as to the credibility of Laura Asaro and Henry Cole, upon whom the State relied for its entire case, as well as the factually-similar – and still

unsolved – knifing killing of Debra McClain in Pagedale, Missouri.  *Id.* at 8-10.

As to Asaro and Cole, Petitioner Williams seeks information regarding their credibility, for example:

-- the benefits received by them from the government in exchange for assistance in this case and/or other cases;

-- adverse judicial proceedings;

-- their roles as informants or witnesses in judicial proceedings; and

-- their instances of providing untruthful or misleading information and/or testimony in this case and/or other cases;

All of these matters *directly relate* to their credibility.  *See* Motion to Authorize Discovery, Doc. 11 at 2-10; *Kyles v. Whitley,* 514 U.S. 419, 445 (1995) ("the effective impeachment of one eyewitness can call for a new trial") (citing *Agurs v. United States,* 427 U.S. 97, 112-113 n. 21, (1976).

As to the factually-similar knifing killing of McClain, Petitioner Williams seeks information regarding the State's investigation of this crime because the perpetrator of that crime may have also perpetrated the crimes at issue in his case.  The McClain killing:

– was thought to be connected to the killing at issue here by St. Louis County Medical Examiner Dr. Mary Case, who was "struck by the similarity of both cases" as to the age, build, injuries, and defensive wounds of the victims, as well as the similarities and proximity of the crimes; in particular,

10

Dr. Case told the police of "the unusual factor of the victim being found with the knife in her body." *See* Supplementary Investigative and/or Dispostition Report, 8/26/98 at 1 (attached hereto as *Exhibit 8*);

– occurred in the month before, and within geographical proximity to, the killing at issue in this case;

– occurred during a home invasion, like the killing at issue in this case; and

-- involved stabbing the victim more than twenty times with a knife obtained from the kitchen, and leaving the knife in the victim's body.

*See* Habeas Petition, Doc. 9 at 44-45; Motion to Authorize Discovery, Doc. 11 at 8-10.

Petitioner Williams' discovery requests have *everything to do* with evidence favorable to him as well as the real issues in this case, which include: the State's failure to disclose evidence regarding Cole and Asaro, *see* Habeas Claim 1; trial counsel's failures to present this, and other impeaching, evidence to the jury, *see* Habeas Claims 2 and 3; perjury committed by Cole and Asaro at trial, which led to the conviction of Petitioner Williams, who is actually innocent of the killing of the victim, *see* Habeas Claim 4. *See, generally,* Petition For A Writ of Habeas Corpus, Doc. 9 at 15-46.

Respondent's final claim, that is, his blanket assertion of "privacy rights," Doc. 22 at 44, on behalf of Cole and Asaro, is improper. Such an assertion may be made only by these individuals themselves. More importantly, *Respondent cannot take a*

*position contrary to that of the State, which "had no objection to" Petitioner Williams obtaining Asaro's medical records in the Burger King robbery proceedings, another case in which Asaro testified against Petitioner.  Williams v. Roper*, 2005 WL 2931933 at \*20 (E.D. Mo. 11/4/2005).  Indeed, the trial court in that case  "granted Petitioner's motion for disclosure of Asaro's medical records."  *Id.*; Order dated 4/2/2001 in *State v. Williams*, Case No. 00CR-2972, Circuit Court of St. Louis County, Missouri (attached hereto as *Exhibit 9*).[2]

**VI.  This Court should grant a full evidentiary hearing to Petitioner Williams, who was denied such a hearing in state court on the claims contained in his Petition.**

This Court should grant Petitioner Williams' request for a full evidentiary hearing because he "was diligent in raising [] issues and seeking to develop the facts in the state courts,"  Order, Doc. 34 at 16, and because he "(1) 'alleges facts which, if proved, would entitle him to relief,' and (2) the state court has not 'after a full hearing reliably found the relevant facts.'" *Williams v. Schriro,* 423 F. Supp. 2d 994, 1006 (D.Az. 2006) (citations omitted) (granting evidentiary hearing where habeas petitioner presented colorable constitutional claim that he never  had opportunity to

---

[2]The State then introduced the Burger King convictions as aggravators in the penalty phase of the death penalty case at hand.  *State v. Williams,* 97 S.W.3d 462, 470, 473  (Mo. banc 2003).

fully develop).  Petitioner Williams has presented thirteen colorable constitutional claims -- that is, thirteen claims "that may reasonably be asserted, given the facts presented and the current law (or a reasonable and logical extension or modification of the current law)." *Black's Law Dictionary* (2004) (definition under "claim").  The state court did not hold a full hearing – indeed, the post-conviction court denied a hearing on the claims in the Petition.

Respondent's thought that the habeas claims "can be determined from the record,"  Doc. 22 at 44, conflicts with, for example, the prevailing legal standard requiring trial counsel's testimony on habeas claims of ineffectiveness -- specifically, the scope and reasonableness of counsel's investigation, as well as any purported tactical reason for failing to investigate and/or  present evidence.  *See, e.g., Williams v. Taylor,* 529 U.S. 362, 373 (2000) (trial counsel's testimony showed that his failure to seek records was due to erroneous belief that state law prohibited him, and his failure to contact witness was due to a lack of a return phone call, rather than strategic choices); *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In addition, to have any chance of establishing prejudice resulting from counsel's failures, a petitioner must present the evidence he claims trial counsel should have presented.  *Strickland,* 466 U.S. at 694.

Likewise, Petitioner Williams cannot possibly meet the standard for actual

13

innocence without having the opportunity to present evidence (outside of the state court record) at a federal evidentiary hearing. *See, e.g., Schlup v. Delo*, 513 U.S. 298 (1995). It is well settled in this circuit that an evidentiary hearing is both appropriate and warranted in order for a petitioner to effectively litigate his claim of actual innocence. *Schlup v. Delo*, 912 F.Supp. 448 (E.D. Mo. 1995); *Amrine v. Bowersox*, 128 F.3d 1222 (8th Cir. 1997) (*en banc*); *Reasonover v. Washington*, 60 F.Supp.2d 937 (E.D. Mo. 1999).

## VII.  Conclusion.

For all of the above reasons, this Court should grant Petitioner's requests for DNA testing and comparison, discovery, and an evidentiary hearing.

Respectfully submitted,

/s/ Kent E. Gipson
KENT E. GIPSON        #34524
Public Interest Litigation Clinic
305 East 63rd Street
Kansas City, MO  64113
816-363-2795 • Fax 816-363-2799

/s/ Lori Leon
LORI LEON        Ohio #0065584
Public Interest Litigation Clinic
305 East 63rd Street
Kansas City, MO  64113
816-363-2795 • Fax 816-363-2799

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of May, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Michael J. Spillane, Assistant Attorney General, P.O. Box 899, Jefferson City, Missouri 65102.

/s/ Kent E. Gipson

KENT E. GIPSON  -  #34524
Public Interest Litigation Clinic
305 E. 63rd Street
Kansas City, MO  64113
Telephone (816) 363-2795
Facsimile (816) 363-2799