## IN THE UNITED STATES DISTRICT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **MARCELLUS WILLIAMS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:05-CV-1474-RWS** |
| | ) | |
| **DONALD ROPER,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### PETITIONER'S SUPPLEMENTAL TRAVERSE

COMES NOW petitioner, Marcellus Williams, by and through counsel, and hereby supplements his traverse, previously filed in this matter on August 31, 2007, in order to provide the Court with supplemental authority supporting Claims No. 5 and 6 (the *Batson* and *Wiggins* claims).

In petitioner's traverse, it was noted that there had been several recent cases where other circuits had granted habeas relief to capital habeas petitioners on *Wiggins* claims similar to the claim presented by petitioner in Claim No. 6 of his petition. (Trav. 73-74). Since the traverse was filed, there have been several other published decisions from the circuits granting death row prisoners habeas relief on *Wiggins* claims similar to the claim before the court in Mr. Williams's case. See *Johnson v. Bagley*, 544 F.3d 592 (6th Cir. 2008); *Williams v. Allen*, 542 F.3d 1326 (11th Cir. 2008); *Mason v. Mitchell*, 543 F.3d 766 (6th Cir. 2008); *Van Hook v. Anderson*, 535

F.3d 458 (6th Cir. 2008); *Bond v. Beard*, 539 F.3d 256 (3rd Cir. 2008); *Jells v. Mitchell*, 538 F.3d 478 (6th Cir. 2008).

Several of these recent decisions present striking factual similarities to Mr. Williams's case.  For instance, in *Jells*, the Sixth Circuit found that trial counsel was ineffective at the penalty phase of an Ohio death row prisoner's trial in failing to adequately investigate Jells' background and social history and provide this information to trial experts.  *Id*. at 493-494.  The Sixth Circuit also found that Jells' counsel was ineffective in failing to use a mitigation specialist.  *Id*. at 494-495. Although Jells' counsel, like trial counsel here, did conduct some limited investigation into the defendant's background, trial counsel failed to investigate and uncover evidence regarding Jells' cognitive and mental deficiencies, poor academic functioning and his turbulent upbringing, that revealed that he was repeatedly abused by his mother and her numerous live-in boyfriends.  *Id*. 495-500.  Despite trial counsel's reliance on a residual doubt strategy and the presentation of the testimony of a few family members at the penalty phase, the Sixth Circuit in *Jells* concluded that trial counsel's mitigation investigation was constitutionally deficient. *Id*. at 497, 500-507.

In *Bond*, the Third Circuit found trial counsel ineffective at the penalty phase because they "failed to give their consulting experts sufficient information to evaluate

Bond accurately." 539 F.3d at 288.  As here, trial counsel in *Bond* presented the brief testimony of a few family members, *Id*. 279.  The post-conviction investigation in *Bond*, as in this case, revealed that Bond endured an extremely troubled and deprived childhood in which he was neglected and abused.  *Id*. at 281.  Post-conviction evaluations by experts also revealed that Bond suffered from organic brain damage and post traumatic stress disorder.  *Id*. at 282-283.  In light of these facts that are remarkably similar to those presented here, the Third Circuit had little difficulty in granting petitioner habeas relief under the standard of review provisions of AEDPA. *Id*. 289-290.  In particular, the Third Circuit noted that the post conviction evidence would have supported two statutory mitigating circumstances under Pennsylvania law that are almost identical to the Missouri death penalty law involving whether the defendant acted under the influence of extreme mental or emotional disturbance and whether his capacity to appreciate the criminality of his conduct was substantially impaired.  *Id*. at 290.

In *Williams v. Allen*, the Eleventh Circuit granted penalty phase relief to an Alabama prisoner because his trial counsel failed to adequately investigate the defendant's background.  542 F.3d at 1326.  Like this case, trial counsel called only one relative to testify in the penalty phase to provide sketchy information that Herbert Williams had a deprived and turbulent childhood.  *Id*. at 1329.  The Eleventh Circuit

3

in *Williams* found that trial counsel's investigation and reliance upon the brief testimony of a single relative provided "an incomplete and misleading understanding of Williams' life history." *Id*. at 1340.  As in this case, the state post-conviction investigation in *Williams* uncovered significant mitigating evidence regarding emotional and physical abuse inflicted upon Herbert Williams by his father and a significant mental illness that was not uncovered by the limited mental evaluation conducted at the behest of trial counsel.  *Id*. at 1333-1334.

In *Mason*, the Sixth Circuit found trial counsel's investigation deficient where he only spoke very briefly with a few of the defendant's family members and did not contact or interview several other members of the defendant's immediate family. 543 F.3d at 775-779.  The deficiencies of the investigation in *Mason* are virtually identical to those here in light of the uncontradicted affidavit of Joseph Green that his investigation of petitioner's background was deficient because of his involvement in the contemporaneous *Kenneth Baumruk* death penalty trial and because he was denied a continuance in this case.  (*See* Exh. 10).

The *Mason* case is also similar to the facts presented here because trial counsel's mitigation case consisted of brief pleas for mercy from a few family members. 543 F.3d at 770.  Like this case, the post-conviction investigation revealed that Mason endured a violent and abusive childhood and suffered from "borderline

personalty disorder largely as a result of his dysfunctional home environment." *Id.* at 780. Finally, the *Mason* case is significant because the Sixth Circuit found that Mason was entitled to relief under the *Strickland* prejudice test despite the fact that he was convicted of an incredibly savage and brutal crime involving the rape and murder of a 19 year old woman. *Id.* at 768-769, 780-783.

Petitioner respectfully requests that this Court consider this supplemental authority and closely scrutinize the remarkably similar facts of these recent cases in addressing and deciding petitioner's *Wiggins* claim. After due consideration, petitioner is confident that, like Ronald Jells, Jesse Bond, Herbert Williams, and Maurice Mason, he is entitled to penalty phase relief under *Wiggins* and *Rompilla*.

Earlier this week, the Fifth Circuit issued an opinion granting habeas relief to a Texas death row prisoner on a *Batson* claim that involved facts that are comparable to petitioner's Claim No. 5. *Reed v. Quarterman*, __ F.3d ___, 2009 WL 58903 (5th Cir. 2009). The *Reed* decision is pertinent to this Court's consideration of petitioner's *Batson* claim in two respects. First, the court in *Reed* stressed the importance of conducting a thorough comparative juror analysis in determining whether the prosecution's justification for a strike is pretextual. *Id.* at *6-*16.

Second, and more importantly, the court in *Reed* rejected an occupation-based justification for striking a black juror involving a "general policy" of the prosecutor

5

to strike health care workers in cases involving medical evidence.  *Id*. at *13.  The court in *Reed* found that the strike of this juror based upon her occupation was pretextual because the prosecution failed to ask her any questions in voir dire regarding her job.  *Id.*  The same reasoning employed in *Reed* applies with equal force to the State's strike of juror Gooden in this case because the prosecutor failed to ask Mr. Gooden any questions regarding his job as a postal worker to establish the legitimacy of the proffered occupation-based reason for subsequently striking him.  (*See* Trav. at 51-60).

Like Jonathan Reed, petitioner's convictions were tainted by racial discrimination and must be reversed.  Petitioner respectfully requests that this Court consider this supplemental authority from the Fifth Circuit in assessing and adjudicating petitioner's nearly identical *Batson* claim involving juror Gooden and the other African-American jurors struck by the prosecution.

Respectfully submitted,

/s/  Kent E. Gipson
KENT E. GIPSON, Mo. Bar #34524
301 East 63rd Street
Kansas City, Missouri 64113
816-363-4400 / fax 816-363-4300
kent.gipson@kentgipsonlaw.com


/s/ Laurence E. Komp
LAURENCE E. KOMP, Mo. Bar #84430
E.D. Mo. No. 5212907
P.O. BOX 1785
Manchester, MO 63011
636-207-7330 / fax 636-207-7351
lekomp@swbell.net

ATTORNEYS FOR PETITIONER


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed and sent to the following counsel of record for Respondent, via the ECF system on this 14th day of January, 2009.

Andrew Hassell
Assistant Attorney General
P.O. Box 899
Jefferson City, Missouri 65102


/s/Kent E. Gipson


7