IN THE UNITED STATES EASTERN DISTRICT
OF MISSOURI EASTERN DIVISION

| | | |
|---|---|---|
| MARCELLUS WILLIAMS, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 4:05CV1474 RWS |
| | ) | |
| DONALD ROPER, | ) | |
| Respondent. | ) | |

**MOTION TO ALTER OR AMEND JUDGMENT UNDER FEDERAL RULE OF
CIVIL  PROCEDURE 59(e) AND SUGGESTIONS IN SUPPORT**

Rule 59(e) provides a district court the opportunity to correct manifest errors of law or fact before the case proceeds to appeal. *See United States v. Metropolitan St. Louis Sewer District*, 440 F.3d 930 933 (8th Cir. 2006).  In this case such errors exist. Specifically, the District Court failed to recognize that the Missouri courts conducted merits review of the prejudice prong of the ineffective assistance of counsel claim on which the District Court granted relief, and failed to give the required deference to that state court review. Additionally, there are several errors in the District Court's analysis of the performance prong of the ineffective assistance of counsel claim on which it granted relief.

The District Court made the following errors which fall within the parameters of Rule 59(e), and Respondent prays that the Court alter or amend its judgment.

1.    **The District Court made an error of law by conducting *de novo* review of the prejudice prong of the ineffective assistance of counsel claim on which it granted relief. (Document 58 Memorandum and Order at 31).  The District Court concluded that "The Missouri Supreme Court affirmed on the basis**

1

**that the decision was trial strategy that was virtually unchallengeable in an ineffective assistance claim" (*Id.* at 28).**

But the Missouri Supreme Court also explicitly affirmed the conclusion of the post-conviction review court that no *Strickland* prejudice occurred because there was no reasonable probability counsel's allegedly incompetent conduct changed the outcome of the penalty phase. *Williams v. State*, 168 S.W.3d 433, 443 (Mo. banc 2005) (finding that "The motion court found that an abusive childhood defense would have been inconsistent with penalty phase strategy and would not have changed the sentence", and affirming that decision).

The prejudice prong decision by the Missouri courts is objectively reasonable, and disposes of the ineffectiveness of counsel claim regardless of the District Court's views on the reasonableness of the analysis on the performance prong. *See eg. Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) ("The statute compels federal courts to review for reasonableness the state court's ultimate decision not every jot of its reasoning … even where the state court made a mistake … we are determining the reasonableness of the state court's decision not grading their papers"). Although it is not necessary to reach this level of analysis, deference would be due to the post-conviction review court's prejudice analysis (Resp. Exh. 33 at 802-803), even if it had not been explicitly affirmed by the Missouri Supreme Court, which it was. *See Weaver v. Bowersox*, 241 F.3d 1024, 1031 (8th Cir. 2001) (examining both the trial court's decision and the Missouri Supreme Court's decision under AEDPA deference when the courts determined the same claim on different grounds). The District Court decision currently contains reversible error, in that the prejudice prong must be

2

analyzed to see if it passes through the deferential gateway to review of 28 U.S.C. §2254(d), before relief can be granted.

> 2      **The decision of the Missouri courts that there is no reasonable probability that the outcome of the penalty phase would have been changed absent counsel's alleged incompetence is consistent with a reasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), is entitled to deference under 28 U.S.C. § 2254(d), and must be left undisturbed. Therefore, the District Court's grant of the writ of habeas corpus is error. In rejecting Williams' claim the Missouri post-conviction review court held that "there is no reasonable probability that the omitted evidence would have changed the result of Movant's sentencing." (Resp. Exh. 33 at 802-803). The Missouri Supreme Court affirmed that conclusion. *Williams v. State*, 168 S.W.3d 433, 443 (Mo. banc 2005)[1].**

Defense counsel argued to the jury that Williams is more than a criminal, that he is also a father, a brother, and a counselor to whom his family can come and express their

---

[1] Prejudice analysis of an uncalled witnesses claim is done by adding the testimony of the uncalled witnesses to the body of evidence actually presented, then considering 1) the credibility of all witnesses including likely impeachment of the new defense witnesses, 2) the interplay of the uncalled witnesses with the actual defense witnesses called, and 3) the strength of the evidence actually presented by the prosecution. *Armstrong v. Kemna*, 590 F.3d 592, 596 (8th Cir. 2010).

3

feelings, and a disciplinarian of his children (Resp. Exh. 18 at 3489-3490). In attacking the testimony of Henry Cole, defense counsel did tell the jury," believe me I'm not trying to make you to go back and revisit your verdict" then told the jury that the crime could not have happened the way Cole said, stated that Cole's testimony was inconsistent, with that of witness Asaro, and pointed out that Cole's drawings made to corroborate his version of events were lost (*Id*. at 3498). Counsel stated "That's not beyond a reasonable doubt. That is suspect." (*Id*. at 3498) (In essence counsel attempted to undermine the state's witness while not insulting the jury, against a backdrop of Williams' good family relationships).

Counsel argued that Williams was a positive influence on his son, and that he kept his criminal world separate from his son (*Id*. at 3502). Counsel argued that his son loves and needs his father, and that Williams is a disciplinarian who was good influence on keeping his son out of trouble (*Id*. at 3502). Counsel argued that Williams had instilled positive values in his daughter (*Id*. at 3503). Counsel argued that Williams keeps his family separate from his criminal world and that his children love him (*Id*. at 3504).

Patricia Larue, Williams' aunt, testified to Williams' close relationship with and positive impact on his brothers growing up, and to his positive impact on her children and on his own children (Resp. Exh. 17 at 3301 – 3330). Daniel Lee Williams, Marcellus Williams' brother, painted a similar favorable picture of the family, and Marcellus Williams' positive role in it (*Id*. at 3330-3356), as did Jimmy Williams, another brother (*Id*. at 3356-3371).

Sabrina Roundtree testified that Marcellus Williams had helped her care for her elderly and ill aunt, and that he had a positive relationship with his son (*Id*. 3371-3384). Counsel then made an offer of proof that Dr. Cunningham would testify to Williams'

4

positive effect on his children, and the negative consequences his execution would have on the children (*Id*. at 3385-3389).

Talissa Tanise Smitty testified about Williams' positive relationship with his children (Resp. Exh. 18 at 3400-3414).  Williams' son and daughter (not his biological daughter but the half-sister of his son) testified about their positive relationships with him (*Id*. at 3414-3433).  Ella Alexander, Williams' mother also testified positively about Williams (*Id*. at 3443-3446).

Williams' own testimony to the post-conviction court is also not supportive of the current claim of *Strickland* prejudice.  When asked on cross-examination if he had seen the mitigation specialist, Williams replied "Yeah", but when asked a specific question about whether he told the specialist a particular thing, he indicated he did not know as he had not seen the specialist's notes (Resp. Exh. 32, Williams' Deposition at 135).  Williams also testified that he had said his grandfather hit his grandmother, but that he had never seen his grandfather hit his grandmother (*Id*. at 136).  When asked if he had ever seen anybody sexually abused in his home he replied "other than myself no" (*Id*. at 136).  However, when asked about specifics of that alleged abuse, he said that he was asleep when it happened to him and he did not feel it happen (*Id*. at 137).  Later, when asked about his testimony in a different case he admitted lying under oath in the following exchange. "So you lied under oath? Yeah, based on erroneous advice from my public defender" (*Id*. at 134).

A theme running through the defense testimony is that Williams was an important member of a loving family who kept his criminal activities away from his family, and that it would be punishing the family to execute Williams.  But Williams' claim 8(p) in the post-

conviction relief motion alleges that his mother resented him, that he was the victim of "brutally violent abuse" by his mother, grandfather, and stepfather, that he was the victim of sexual abuse by both his aunt and uncle and that Williams' family "encouraged criminal behavior and substance abuse, even by children" (Resp. Exh. 29 at 90). The claim alleged that Williams "grew into an individual with no healthy emotional regulation strategies" and that his life was "damaged beyond his control" (*Id*. at 91). Williams laid out the proposed testimony that he alleged would support his current claim to the post-conviction review court over nearly forty pages of the post-conviction relief motion (*Id*. at 210-249).

That pleading attempts to paint Williams as a mentally and emotionally damaged monster raised by a family of monsters. This is entirely inconsistent with the strategy actually used by defense counsel at the penalty phase of portraying Williams as a vital part of a sympathetic and loving family, and as a practical matter would have either prevented the testimony actually used at the penalty phase or undermined it so far as to make it useless and incredible. It was objectively reasonable to conclude, as the Missouri courts did, that *Strickland* prejudice did not result from the lack of the testimony at the penalty phase that Williams' alleged counsel was ineffective for not presenting. *See Weekley v. Jones*, 76 F.3d 1459, 1453 (8th Cir. 1996) (en banc) (noting that there is much respectable opinion that, although lawyers do not presume that pleading in the alternative is double talk, jurors are put off by it and regard it with suspicion, and that there is considerable empirical evidence that insanity pleas are not received favorably by jurors). It was reasonable to conclude that there was no reasonable probability that, if Williams had presented the evidence he alleged should have been presented, the outcome of the penalty phase would have been different. The

6

objectively reasonable conclusion of the Missouri courts on this point must be left undisturbed even if the District Court disagrees with it. *See Colvin v. Taylor*, 324 F.3d 583, 591 (8th Cir. 2003) (a state court decision cannot be the subject of a writ of habeas corpus unless it is both wrong and unreasonable, and a habeas court's reaching a different legal conclusion than the state court cannot support the writ unless the state decision is unreasonable).[2]

3       **The District Court in analyzing the competence prong made a factual error in finding that "The state courts also determined that if Williams offered an abusive childhood defense it would have been inconsistent with his residual doubt strategy" (Document 58 at 31 citing *Williams*, 168 S.W.3d at 444).  The District Court then concluded this is an unreasonable determination of the facts in light of the evidence presented in state court proceedings. (Document 58 at 32).**

_____

[2] The reasonable decision of the Missouri courts is based on assuming *arguendo* that Williams could and would actually present the testimony alleged in the post-conviction relief motion. A habeas court cannot make that that assumption in granting a writ. The grant of a writ would require a hearing for Williams to establish *Strickland* prejudice using the analysis set out in *Armstrong v. Kemna*, 590 F.3d at 592, 596.  The analysis required to grant a writ would require evaluation of cross-examination of witnesses presenting new evidence, and therefore a hearing. *See Id*.

There is no analysis of the claim on which the District Court granted relief on page 444 of the Missouri Supreme Court opinion.  At page 443, the Missouri Supreme Court stated "The motion court found an abusive childhood defense would have been inconsistent with penalty phase strategy and would not have changed the jury's sentence.  The motion court did not clearly error in denying this claim without an evidentiary hearing." *Williams* 168 S.W.3d at 443.

The post-conviction review court did find that residual doubt was part of the penalty phase defense strategy. (Resp. Exh. 33 at 802).  However, the post-conviction review court also found that "Trial counsel used witnesses to portray Movant as a loving father, loving brother, loving son, and a non-drug user." (Resp. Exh. 33 at 801-802).  The post-conviction court also found that "Trial counsel tried to portray Movant as possessing redeeming qualities, having come from a decent family; and that Movant was not as bad a person as the state of Missouri alleged." (Resp. Exh. 22 at 802).

Defense trial counsel McGraugh testified at the post-conviction review evidentiary that there were three were penalty phase theories; 1)residual doubt, 2)introducing family evidence to show how Williams grew up and that he had a family network of a mother, aunts and brothers and sisters that were still involved with him, and 3) that Williams is the father of two children had been involved in their lives and had been an important role model for them (Resp. 27, Post-conviction Review Hearing Transcript at 46).  Counsel characterized the third prong as being equally as strong as the first (*Id*.).

Defense trial counsel Green testified that he had presented two theories at the penalty phase, one was residual doubt, and the other was the positive impact that Williams had on

the children in his family such as encouraging them to stay in schools and stay out of gangs. (*Id.* at 93-94).

It is a factual error to characterize the penalty phase defense as being solely based on residual doubt and the Missouri courts as unreasonably concluding that social history would conflict with the residual doubt defense. The Missouri courts recognized that the strategy was to place Williams' family relationships in a positive light to support, or create, residual doubt, and to support the theory that Williams' value to his family argued against imposing the death penalty. It was reasonable to conclude that presenting the type of evidence, that Williams now alleges should have been presented, conflicted with that strategy.

**4      The District Court erroneously found that the state courts made an unreasonable determination of the facts in light of the evidence presented in state court, because a hearing was not held on the claim, and if a hearing had been held "the record would show that the residual doubt theory became a defense strategy by default because counsel failed to properly prepare mitigating evidence, which would have allowed him to make a competent penalty phase strategy decision" (Document 58 at 32). This finding is a holding that the state courts made an unreasonable determination of the facts, because the District Court believes that if an evidentiary hearing had been held on the competence prong the evidence would have shown that counsel failed to properly investigate.**

As support for this proposition the District Court cites to allegations in the post-conviction review motion that counsel hired Dr. Cunningham to investigate Williams' social

history but did so too late for him to establish a rapport with Williams causing failure to offer the testimony of a qualified psychologist[3], and allegations in the motion that counsel failed to interview family members about mitigating evidence, and that the mitigation expert failed to conduct a thorough investigation because he was not asked to do so (Document 58 at 28-29). The District Court also cites to an affidavit by trial counsel that was struck from the record as improper by the post-conviction court.  The affidavit was offered to the post-conviction court, after it had issued its decision, and after counsel had testified at the post-conviction review hearing without objection, when asked what he had done to prepare for the penalty phase[4].

A decision by counsel is strongly presumed to be reasonable trial strategy.  *Strickland v. Washington*, 466 U.S. 668, 690 (1984) ("counsel is strongly presumed to have rendered adequate assistance and made all decisions in the exercise of reasonable professional judgment").  Similarly, a factual determination by a state court is presumed to be correct and a habeas petitioner has the burden of overcoming that presumption by clear and convincing

---

[3] The thrust of Dr. Cunningham's planned testimony actually had to do with Williams' positive impact on his children and the problems that would result for his children from his execution (Resp. Exh. 18 3446-3453, offer of proof).

[4] Although no hearing was granted on claims 8(o) and 8(p), in state court, both trial defense lawyers, and Mr. Williams gave testimony relevant to the claims 8(o) and 8(p) anyway when they took the stand purportedly to testify about claim 8(q).

evidence. *See Bell v. Norris*, 586 F.3d 624, 630 (8th Cir. 2009). Williams did not meet either of these burdens.

The allegations in the post-conviction relief motion are not evidence. They are allegations and nothing more. Counsel Green's affidavit is dated May 28, 2004, two weeks after the post-conviction review motion court decided the case (Resp. Exh. 33 at 816-833). The affidavit was struck from the record by the post-conviction review motion court as an improper attempt to supplement the record (Resp. Exh. 33 at 941). The affidavit states that Dr. Cross who was retained for the post-conviction litigation had diagnosed Williams with post-traumatic stress disorder and that "had I obtained a diagnosis that Dr. Cross came up with during the post-conviction case I would have put this evidence on at trial." (Resp. Exh. 33 at 832). The affidavit also says that Green would have called family members to lay a foundation for Dr. Cross (*Id*. at 832). The affidavit also complains that "we ran out of time" because of problems getting discovery and counsel's obligations in another case (*Id*. at 832-833), and in another place complains that because of a denied continuance and responsibilities in the other case "I did not have time to thoroughly prepare for trial." (*Id*. at 31).

The affidavit, although it speaks at length about counsel's belief in the need for a complete social history, does not state that counsel did not have access to a complete or thorough social history of Williams, or state that the lack of such a history played a role in

11

the choice of defense strategy, a telling omission in light of the current claim and in light of Green's actual testimony given to the post-conviction court[5].

At the post-conviction review hearing Green was asked the open ended question "What did you do to prepare the penalty phase?" (Resp Exh. 33 Hearing Transcript at 91-92). Green answered that he had hired a specialist who helps collect records and does family background and child development information, and that he had also hired an expert, Dr. Cunningham (*Id*. at 92). Green went on to testify that you gather as much information as possible about background and character and you try to get an insight into the defendant's psychological profile to rule in or rule out using a mental disease or defect in mitigation (*Id*. at 92). He testified that you try to collect information on the underlying case itself for use in mitigation and that "we did that as best we could in Marcellus' case." (*Id*. at 92).

Post-conviction defense counsel next asked Green the open ended question "You said you hired Jeff Eno; did you use any of the information you learned from Jeff Eno in the penalty phase?" Green went on to tell how Eno assisted him in obtaining child development and family history (*Id*. at 93).

Nowhere in Green's testimony is there any indication that he felt he did not do a thorough family background check on Williams despite open ended questions that allowed him to opine without objection on the matter. Green was asked if he would want the jury to

---

[5] The affidavit also refers the defense penalty theory only as residual doubt (Resp. Exh. 33 at 831). Green's post-conviction review hearing testimony referred to that as one of two theories being presented (Resp. Exh. 27 at 94).

hear that abuse had something to do with Williams' later behavior if he had an expert to testify to that (*Id*. at 134).  He replied yes if he could show a nexus (Id. at 134).  Green testified that this could be used in mitigation to show that society or the government could have intervened earlier or to show that the problem caused by the abuse could be alleviated by treatment (*Id*. at 138).  Counsel testified that he had attempted to explore those avenues but he did not think he had finished his attempt (*Id*. at 139).  On cross-examination Green testified that if one worded the argument as but for the abuse of the child we would not be here, that would be conceding the murder, but that it would have been possible to use the abuse evidence to explain Williams' criminal history without necessarily conceding the murder (Id. at 139-140).

In short, the testimonial evidence presented in the state courts tends to support, as opposed to undermine, the presumption that counsel acted reasonably.  Allegations to the contrary in the post-conviction relief motion, and in a stricken affidavit, which is conspicuous for its avoidance of saying what counsel actually knew about family background when he made his trial strategic choices, do not overcome this presumption.

Respondent believes the record is adequate to deny to Williams' claim without an evidentiary hearing.  However, allegations in a post-conviction relief motion, and in a stricken affidavit by counsel, that fails to address what counsel actually knew about William's background when he developed penalty phase strategy, would not overcome the *Strickland* presumption of reasonableness, or the 2254(e) presumption of correctness, even if there were no evidence supporting the reasonableness of the investigation.  As practical matter this Court would need to hold a hearing for the development of the record concerning

what investigation was conducted, if this Court were to hold that counsel acted unreasonably in his investigation.  The current record simply does not support the District Court's holding.

**5      The District Court erred when it stated that "I find that state court's reliance on trial counsel's residual doubt strategy is contrary to Wiggins." "Contrary to" is a term of art that means either a state court has arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or a state court confronted facts that are materially indistinguishable from a relevant Supreme Court precedent and arrived at a result opposite to that arrived at by the United States Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (O'Connor J. concurring).**

In *Wiggins* trial defense counsel testified at the post-conviction review hearing that he did not remember retaining a social worker to prepare a social history, even though funds were available, because he decided in advance to focus on "retrying the factual case." *Wiggins v. Smith*, 539 U.S. 510, 517 (2003).  In this case, penalty phase counsel Green testified at the state post-conviction review hearing that he hired a mitigation specialist "who helps us collect records and family background information", that "you try to gather as much information as possible about the Defendant's background and character" and that "we were able to get some child development and family history and use that in consideration of the evidence that was presented at trial" (Resp. Exh. 27 at 91-93).

Counsel Green also testified that abuse testimony was something he would want the jury to hear if he could show a nexus linking the abuse to later behaviors (*Id.* at 138).  He stated that such testimony could either be used to show that if society or the government

14

would have intervened "We may not be here today" or to show that treatment could alleviate the problem (*Id*. at 138).  Counsel testified that he had definitely wanted to explore those possible ways of using abuse evidence in mitigation, and that he had attempted to do so, but that he did not think he had finished his attempt (*Id.* at 138).

On cross-examination, Green admitted that using abuse to argue that but for the abuse "we wouldn't be here today" meant admitting the murder, but argued that the abuse could have been used to explain Williams' other criminal conduct while still denying the murder (*Id*. at 139-140).

This case is not "contrary to" *Wiggins*, as the term is defined in *Williams v. Taylor*. Counsel Green in this case, unlike the attorney in *Wiggins*, hired a mitigation expert, recognized the importance of finding out as much background information as possible and considered using abuse evidence in mitigation, according to his own testimony.  We do not know exactly what background and social history counsel Green knew before his choice of penalty phase strategy.  However, it was Williams' burden to overcome the presumption that the investigation and resulting strategic analysis were reasonable.  He did not, and Green's post-conviction hearing testimony and his post-decision affidavit are both conspicuous for their lack of elaboration on the actual extent of Green's investigation or knowledge at the time he made strategic choices about theories to present at the penalty phase. This lack of elaboration occurred despite the open ended questions asked at the post-conviction hearing and the open ended format of the affidavit. The state court decisions are not contrary to *Wiggins*.

Respondent prays that the motion to alter or amend be granted.

15

Respectfully submitted,

**CHRIS KOSTER**
Attorney General


/s/Michael J. Spillane


**MICHAEL J. SPILLANE**
Assistant Attorney General
Missouri Bar No. 40704
P.O. Box 899
Jefferson City, MO 65102
Telephone: (573) 751-7406
Facsimile: (573) 751-2096

## Certificate of Service

I hereby certify this document was filed with this Court's electronic filing system on April 20, 2010 and should be electronically served by this Court's electronic filing system on

Kent E. Gipson
#34524
301 East 63rd Street
Kansas City, MO 64113

Laurence E. Komp
PO Box 1785
Manchester, MO 63011
/s/Michael J. Spillane
_____
Michael J. Spillane

16