IN THE UNITED STATES DISTRICT COURT
EASTERN  DISTRICT OF MISSOURI

MARCELLUS WILLIAMS, )
         Petitioner, )
  )
v. )     4:05CV1474 RWS
  )     CAPITAL CASE
  )     Execution Date August 22, 2017
  )
DONALD ROPER, )
         Respondent. )

## SUGGESTIONS IN OPPOSITION RULE 60(b) MOTION AND SUGGESTIONS IN OPPOSITION TO MOTION FOR STAY OF EXECUTION

### Case Summary

This case involves a Rule 60(b)(6) motion filed by Marcellus Williams on July 31, 2017,  roughly three weeks before his scheduled August 22, 2017 execution date.  In his amended federal habeas petition, filed in 2006, Williams alleged as his fourth claim that he was actually innocent of the murder and that the witnesses to whom he confessed had committed perjury. Williams asked the district court for DNA testing and for an evidentiary hearing to support the claim. The district court declined. The district court ruled on the habeas petition in March 2010. The district court found that the witnesses were effectively cross-examined and that contradictions in their testimony did not prove perjury; let alone knowing reliance on perjured testimony. The district court found the free-standing actual innocence claim fails as a matter of law because precedent of the

United States Court of Appeals for the Eighth Circuit holds that such claims are not cognizable in federal habeas corpus review, and alternatively, even if such claims were cognizable, which they are not, none of Williams' points in support of the claim of innocence involved evidence that could not have been discovered earlier through due diligence.

Williams did not file a habeas corpus petition in the Missouri Supreme Court, alleging actual innocence, and seeking DNA testing, until January 9, 2015, nineteen days before his scheduled January 28, 2015 execution date. The Missouri Supreme Court stayed the execution and allowed Williams to conduct DNA testing, which he controlled, and which consumed the materials tested. The results were not exculpatory. And the Missouri Supreme Court denied the petition for habeas corpus alleging actual innocence in January 2017. Now, roughly three weeks before the scheduled August 22, 2017 execution date, Williams has filed a Rule 60(b)(6) motion alleging the district court erred in not granting DNA testing and an evidentiary hearing on Claim Four in his amended petition, which the court denied on the merits over seven years ago. The Rule 60(b)(6) motion necessarily fails for three independent and adequate reasons.

First, the motion is a successive petition for habeas corpus. The request for DNA testing and an evidentiary hearing were made in support of Williams' Claim Four, which the district court denied on the merits.  An attack on that ruling is a successive petition, which a federal court has no jurisdiction to grant.

2

It is sophistry to argue, as Williams does (Document 101 at 6, 12 n.3), that Williams is not attacking the merits decision on the claim by arguing that the district court erred in not granting DNA testing and an evidentiary hearing on the claim before denying it on the merits as a matter of law as non-cognizable.

Second, the Rule 60(b)(6) motion was not brought in a reasonable time. There was no reason to wait from the March 2010 district court decision until January 2015 to file a Missouri Supreme Court habeas petition alleging actual innocence and seeking DNA testing, except to delay the scheduled January 2015 execution. In fact, Williams could have raised his state habeas claim alleging actual innocence and seeking DNA testing before filing his initial federal habeas petition in 2005. And there is no good reason that he had to wait until roughly three weeks before his current scheduled execution date to file his Rule 60(b)(6) motion. The reason he waited is the same as the reason for delaying until January 2015 to file the Missouri petition, the hope of delaying the execution of Williams' sentence.

Third, there is no extraordinary circumstance justifying a Rule 60(b)(6) motion. The DNA evidence is not exculpatory. There is a conflict between Williams' first and his second expert on whether the DNA testing done nearly two decades after the 1998 murder excludes Williams as a person who contributed to whatever DNA was left on the knife handle at the time of testing. But even if one takes the second expert's report at face value, the knife was a

3

kitchen knife on which one would expect there to be DNA other than from the killer. Williams still confessed to two people at different times. The victim's property, taken during the robbery, was found by police in the car Williams drove. There is no dispute that Williams sold the victim's computer that was taken during the robbery. And the freestanding innocence claim that is the basis of the Rule 60(b)(6) motion fails as a matter of law under binding Eighth Circuit precedent just as it did in 2010 when the district court denied the claim.

Williams is not entitled to a stay of execution. He has no significant possibility of success on the merits of the Rule 60(b)(6) motion. And there is a strong equitable presumption against a stay in a case such as this where the person seeking the stay could have litigated the case in a manner that would have made a stay unnecessary. Here, the case has been litigated to use the motion as a tool for asking for a stay.

## Standard of Analysis for a Rule 60(b) Motion

A district court uses its discretion to decide a motion under Rule 60(b)(6) of the Federal Rules of Civil Procedure. *City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 702 F.3d 1147, 1152 (8th Cir. 2013). "An error of law is necessarily an abuse of discretion." *Id*. In order to obtain relief from a final judgment under Rule 60(b)(6),  a petitioner is

required to "demonstrate both the motion's timeliness and . . . that 'extraordinary circumstances' justify the reopening of a final judgment." *Christeson v. Roper*, 135 S.Ct. 891, 895-96 (2015) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)); *see also Gonzalez*, 545 U.S. at 536-37 (holding that a new precedent interpreting the statute of limitations did not justify reopening a judgment incorrectly dismissing a habeas petition as untimely). In addition to "extraordinary circumstances," a motion to reopen a final judgment under Rule 60(b)(6), the motion must be filed within a "reasonable time." Fed. R. Civ. P. 60(c)(1). Here, there was an unreasonable delay, and there are no extraordinary circumstances arising from testing that *did not exculpate* Williams. But where, as here, the motion is really a successive habeas petition, as a matter of law, a court may not grant the motion.

In *Gonzalez v Crosby,* 545 U.S. 524 (2005), the Supreme Court of the United States discussed when it is appropriate to grant a Rule 60(b) motion in a habeas case. The Court held that a purported Rule 60(b) motion is really a successive petition beyond a district courts authority to grant if the petition challenges a merits decision on a claim presented in the original petition or raises a new claim that was not raised in the

original petition. *Id.* at 530-32. Here, Williams received a merits denial of his free-standing actual innocence claim in his original petition, because it is not cognizable as a matter of law. That claim is the real basis of the Rule 60(b) motion. That makes the Rule 60(b) motion a successive habeas petition. And that ends the analysis.

**Standard of Analysis for a Motion to Stay Execution Motion**

In *Hill v. McDonough*, 547 U.S. 573 (2006), the United States Supreme Court held that a pending lawsuit does not entitle a condemned inmate to a stay of execution as a matter of course, and that the State and crime victims have an important interest in the timely execution of a death sentence. *Id.* at 583-84. The Court held that a litigant seeking a stay of execution must meet *all* the elements of a stay, including showing a significant possibility of success on the merits. *Id.* at 584. The Court cited *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam), for the proposition that a "preliminary injunction [is] not granted unless the movant, by a clear showing, carries the burden of persuasion." *Hill*, 547 U.S. at 584.

The United States Supreme Court has held that "a stay of execution is an equitable remedy, and an inmate is not entitled to a stay of execution

6

as a matter of course." *Hill*, 547 U.S. at 583–84. This is so because "both the State and crime victims have an important interest in the timely enforcement of a sentence." *Id.* at 584. There is a strong equitable presumption against granting a stay of execution where a litigant could have raised the claim to have it adjudicated without a stay of execution. *Id.* Williams does not meet his burden of showing entitlement to a stay here.

### Statement of Exhibits

1. Respondent's Exhibit 1 the docket sheet from Williams' September 2005 federal habeas corpus petition.

2. Respondent's Exhibit 2 is Williams' amended federal habeas corpus petition, which he filed in August 2006.

3. Respondent's Exhibit 3 is the motion for DNA testing that Williams filed in his federal habeas case in August 2006.

4. Respondent's Exhibit 4 is the motion for an evidentiary hearing that Williams filed in his federal habeas case in October 2006.

5. Respondent's Exhibit 5 is the district court order of March 30, 2007 denying the motions for DNA testing and evidentiary hearing.

6. Respondent's Exhibit 6 is the district court Memorandum and Order of March 2010, denying on the merits as a matter of law the freestanding actual innocence claim in support of which Williams sought and seeks DNA testing and an evidentiary hearing.

7. Respondent's Exhibit 7 is Williams January 12, 2015, Section 1983 complaint seeking DNA testing roughly sixteen days before his scheduled January 28, 2015 execution.

8. Respondent's Exhibit 8 is the January 14, 2015 order of the United States District Court dismissing the suit as frivolous and denying a stay of execution.

9. Respondent's Exhibit 9 is the January 9, 2015 petition for habeas corpus that Williams filed in the Missouri Supreme Court claiming actual innocence and seeking DNA testing.

10. Respondent's Exhibit 10 is the warden's prehearing brief in the Missouri Supreme Court habeas case including the deposition of Williams' initial DNA expert, who admitted on cross-examination that the DNA on the knife handled from the April 2016 testing matched Williams' number of tandem repeats at four locations, that one could not exclude Williams as a contributor to the DNA on the knife handle, that after consultation with Williams' counsel the decision was made not do testing that could be run

through the CODIS data base, and the DNA had been consumed in testing.

11. Respondent's Exhibit 11 is the notification from the special master that a hearing was held and that Williams' was given twenty-one days to file a responsive brief and the warden seven days to file a reply.

12. Respondent's Exhibit 12 is Williams' responsive brief, which contains an attached report from a new expert opining that the DNA test results really exclude Williams as a person who contributed to the DNA on the knife handle.

13. Respondent's Exhibit 13 is the warden's reply brief which argues that even if one takes the new DNA expert's opinion at face value, the absence of Williams' DNA on the kitchen knife that he used in the murder does not explain away his confessions to two different witnesses, or the victim's property, taken in the robbery, being found in his car, or the fact that there is no dispute that he sold the victim's computer that was taken in the robbery.

14. Respondent's Exhibit 14 is the order of the Missouri Supreme Court denying habeas relief on the actual innocence claim on January 31, 2017.

15. Respondent's Exhibit 15 is the petition for certiorari challenging the Missouri Supreme Court's denial of the actual innocence claim.

16. Respondent's Exhibit 16 is the brief in opposition to the certiorari petition.

17.  Respondent's Exhibit 17 is the order list showing the certiorari denial.

## I.  The 60(b) motion is a successive petition for habeas corpus.

Williams filed an amended habeas petition in the United States District Court for the Eastern District of Missouri challenging his judgment of conviction and death sentence on August 29, 2006. Exhibit 2. The fourth claim in the petition alleged a freestanding claim of actual innocence and asserted that the witnesses who testified that Williams confessed the murder to them perjured themselves. *Id.* at 39–45. Williams requested DNA testing and an evidentiary hearing on this claim. *Id.* Williams filed a separate motion for DNA testing on August 29, 2006, alleging that DNA testing would support his claim of actual innocence, and that trial counsel should have tried to match DNA at the crime scene to Williams' girlfriend, who had testified at trial that Williams confessed the murder to her. Exhibit 3. On October 12, 2006, Williams filed a motion for an evidentiary hearing on the merits of several of his claims including the claim of actual innocence. Exhibit 4. The district court, on March 30, 2007, found that there was no good cause permitting discovery, including DNA additional testing, under Federal Rule of Habeas Procedure 6, and that no evidentiary hearing was appropriate because the habeas claims can be resolved by review of the record without an evidentiary hearing. Exhibit 5.

The district court decided the merits of the habeas petition in a Memorandum and Order issued on March 26, 2010. Exhibit 6. The district court addressed Claim Four at pages 17–19 of its order. The district court found that Williams' trial counsel effectively cross-examined the witnesses who testified that he confessed, and that contradictions in their testimony did not prove perjury, let alone knowing reliance on perjured testimony. *Id*. at 18. The district court found that under *Burton v. Dormire,* 295 F.3d 839, 842 (8th Cir. 2002) freestanding claims of innocence are not cognizable and that counsel for Williams admitted this but argued the case would provide the Eighth Circuit and the United States Supreme Court an opportunity to reconsider the issue. *Id*. at 19. The district court rejected the claim because none of Williams unresolved issues "constitute newly discovered evidence in the actual innocence context that could not have been discovered earlier through due diligence" and because "Williams freestanding claim of actual innocence is not [a] cognizable ground for habeas relief in the absence of an independent constitutional violation occurring in the underlying criminal proceeding." *Id*. at 19.

Williams has filed a Rule 60(b)(6) motion challenging the district court's denial of the of additional DNA testing and the denial of an evidentiary hearing on Claim Four because "the denial of factual development precluded a proper consideration of the merits of Petitioner's Fourth claim." Document 101 at 6. But the Memorandum and Order denied Claim Four on the merits, because it was

not cognizable. Whether Williams views the merits ruling as based on "proper consideration" or not, it is a merits ruling. And it is a merits ruling that is based on binding precedent, which holds the actual innocence claim is not cognizable in a federal habeas corpus action. It is not based on the content of the evidence alleged to support the actual innocence claim. There is no way to plausibly characterize this Rule 60(b) motion as anything other as an attack on the district court's merits denial of the freestanding actual innocence claim in Claim Four as not cognizable. Thus, the current motion is a successive petition. "A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." 28 U.S.C. §2254. A federal habeas court does not have jurisdiction to grant Williams' motion.

## II.     Williams unreasonably delayed bringing this action for years.

Williams filed his initial federal habeas corpus petition in 2005. Exhibit 1. He filed his amended petition in August 2006. Exhibit 2. At the time Williams filed both those petitions, the Missouri Supreme Court recognized freestanding claims of actual innocence in capital cases as cognizable under Missouri law in Missouri habeas corpus actions filed in the Missouri Supreme Court. *State ex rel. Amrine v. Roper*, 102 S.W.3d 541 (Mo.2003).

The district court denied Williams freestanding actual innocence claim on March 26, 2010. Exhibit 4 at 18–19. But Williams did not file his petition for habeas corpus in the Missouri Supreme Court alleging actual innocence and seeking DNA testing until nearly five years later on January 9, 2015, shortly before his scheduled January 28, 2015 execution. Exhibit 9. The Missouri Supreme Court denied the petition following DNA testing, a deposition of Williams' initial expert, and briefing as to the significance of the testing in light of the record, on January 31, 2010. Exhibits 10–14.

Williams filed his current motion on July 31, 2017, roughly three weeks before his scheduled, August 22, 2017, execution, and seven years after the district court denied his federal habeas claim raised in his Claim Four. Document 101. Williams alleges that he has been diligent in filing this motion because the United States Supreme Court denied certiorari on his challenge to the Missouri Supreme Court habeas denial on June 26, 2017, which he alleges exhausted state remedies. Document 101 at 14. Williams does not explain why it was reasonable to wait years from the 2010 federal memorandum and order, until 2015, shortly before his scheduled execution to file his Missouri Supreme Court habeas petition asking for DNA testing. Nor does he explain why his concern for exhausting state remedies did not motivate him to raise his claim in the Missouri Supreme Court before he filed his original federal habeas petition in 2005 or his amended petition in 2006.

The common thread here is that a DNA claim attached to a motion for stay of execution appears shortly before a scheduled execution date. That may be a potentially effective tactic in delaying a scheduled execution, at least when done the first time. But Rule 60(c)(1) requires that a Rule 60(b) motion be filed within a reasonable time. Williams did not do that. He waited for years after the 2010 ruling, before filing the state habeas petition that resulted in the DNA testing that is the alleged basis of his current motion. That provides an independent and adequate reason for denying relief.

## III.    The non-exculpatory DNA test results are not extraordinary.

Marcellus Williams drove to a bus stop on August 11, 1998; then took a bus to University City in St. Louis County, Missouri. *State v. Williams*, 97 S.W. 3d 462, 466 (Mo. 2003). Williams began looking for a house to break in to when he came upon the home of Felicia Gayle. *Id*. Williams broke out a window pane near the door, reached in, unlocked the door, and let himself in to Gayle's home. *Id*.

Williams went to the second floor of the home where he heard water running in the shower. *Id*. Williams then went back downstairs to the kitchen, found a large butcher knife, and waited. *Id*. Ms. Gayle left the shower and called out, asking if anyone was there, then walked downstairs. *Id*.

Williams attacked Gayle with the butcher knife, inflicting forty-three wounds, seven of them fatal. *Id*. at 466–67. Williams took the victim's purse,

14

containing a St. Louis Post-Dispatch ruler and calculator, and the victim's husband's laptop computer and carry case *Id*. After washing up in the upstairs bathroom, he took a jacket and put it on to conceal the blood on his shirt. *Id*. at 467. Williams then took a bus back to his car. *Id*.

Williams picked up his girlfriend who noticed he was a wearing a jacket despite the heat, and noticed that Williams' shirt was bloody, and that he had scratches on his neck. *Id*. Williams claimed he had been in a fight. *Id*. Later, he put his bloody clothes in a backpack and threw it in to a storm drain. *Id*. Williams' girlfriend saw the victim's husband's laptop in the car, and Williams sold it a day or two later to Glenn Roberts. *Id*.

The next day, the girlfriend saw the victim's purse and her identification in the trunk of Williams' car. *Id*. When the girlfriend demanded an explanation, Williams confessed to the murder, and told her that if she told anyone, he would kill her, her children, and her mother. *Id*.

From April until June 1999, Williams, incarcerated on unrelated charges, shared a cell with Henry Cole in St. Louis City workhouse. *Id*. In May, Williams confessed the murder to Cole. *Id*. Over the next few weeks he discussed the murder in detail with Cole. *Id*.

In June 1999, after his release from the St. Louis City workhouse, Cole went to the University City Police and told them of Williams' confession to the murder. *Id*. Cole knew details about the crime that had not been publicly

15

reported. *Id.* University City Police then approached Williams' girlfriend who told them Williams had confessed to the murder to her as well. *Id.* Police then recovered the laptop computer that Williams had sold to Glen Roberts from Mr. Roberts. *Id.* Police found the Post-Dispatch ruler and calculator that Williams had stolen from the victim in the trunk of the car that Williams drove. *Id.*

Williams' January 15, 2015 habeas petition to the Missouri Supreme Court emphasized the need to run DNA results through a data base. Exhibit 9 at 6. The federal habeas petition suggested that the DNA results should be run through a data base to find the "actual killer." Exhibit 2 at 44. But that never happened.

During the state habeas action, Y-STR testing was done on the handle of the kitchen knife used in the murder. The handle contained male and female DNA. But Y-STR testing reveals only male DNA, and cannot be run through the CODIS database. The DNA tester made the decision to do Y-STR testing based on consultation with the "client"; presumably counsel for Williams. Exhibit 10 (Fienup Deposition at 65–67). The tester then repeated the test a second time, consuming the remainder of the DNA on the knife handle. *Id.* at 67. The expert had no explanation for why mitochondrial DNA from hair samples was compared to the victim and her husband but not to Williams, as she did not do that testing. *Id.* at 64

16

The testing expert testified in her deposition concerning the Y-STR testing done on the knife handle that despite a match to Williams at four loci, she could not draw any conclusions that would either include or exclude Williams as a contributor to the DNA on the knife handle, because multiple persons' male DNA was on the kitchen knife handle. *Id.* at 63-64, 68. No effort appears to have been made to compare the DNA on the knife to the DNA of the victim's husband or any other person whose DNA could reasonably be expected to be on the knife, but whose DNA would not provide a plausible explanation of why Williams had the victim's property that was taken at the time of the murder.

Unsatisfied with the results from the cross-examination of the testing expert, Williams retained a new expert after the hearing, and attached the new expert's report to his post-hearing brief. Exhibit 12 (Dr. Rudin Report). The new report appears to agree with the Williams' first expert, that there is more than one male person's DNA on the knife handle, and that four locations in the profile on the knife handle have the same repeat number as Williams' profile. *Id.* Nevertheless, the new report, in the opening summary, concludes that Williams could not have contributed to the DNA on the knife handle. *Id.* The conclusion of the new report states "the simplest and most reasonable explanation for the profile detected on the knife is that Williams is not a contributor." Taking the second report at face value, it does not come close to showing Williams is

17

actually innocent. It would be unsurprising that unknown DNA on a kitchen knife would not match Williams, assuming it does not.

Williams had the manner of DNA testing he sought, and consumed the available DNA from his crime scene in the process. The results did not come close to making out a free standing actual innocence under *State ex rel. Amrine v. Roper*, 102 S.W.3d 541 (Mo. 2003). And the Missouri Supreme Court denied the habeas petition. Exhibit14. That is not an extraordinary circumstance justifying a Rule 60(b) motion in a federal habeas action in which freestanding innocence claims are not cognizable.

## IV.    **This Court should not grant a stay.**

Under *Hill*, Williams has the burden of proving he meets all four requirements for a stay including a significant possibility of success on the merits; and the reason a stay is necessary is not because of his delay. *Hill*, 547 U.S. 583–584. Williams cannot do that.

Williams' Rule 60(b) motion fails for the three independent and adequate reasons discussed in this response. And he has no significant possibility of success on the merits.

The reason this claim is pending shortly before Williams scheduled execution is because Williams chose not to pursue the underlying state habeas corpus action for years, until shortly before his last scheduled execution date, and chose not to present this motion until shortly before his currently scheduled

execution date. That in itself is an independent and adequate reason to deny a stay of execution.

## Conclusion

This Court should deny the Rule 60(b) motion, and the motion for stay of execution.

Respectfully submitted,

JOSHUA HAWLEY
Attorney General

/s/ Michael Spillane
MICHAEL SPILLANE
Assistant Attorney General
Missouri Bar # 40704
P.O. Box 899
Jefferson City, MO 65102
(573) 751-1307
(573) 751-2096 Fax
mike.spillane@ago.mo.gov
Attorneys for Respondent

## Certificate of Service

I hereby certify this document was filed with this Court's electronic filing system on August 2, 2017 and should be electronically served by this Court's electronic filing system on counsel for Marcellus Williams

/s/ Michael Spillane
MICHAEL SPILLANE