Case 4:05-cv-01474-RWS   Doc. #: 1   104-7   Filed: 08/02/17   Page: 1 of 24   PageID
Case: 4:15-cv-00070   Doc. #: 1   Filed: 01/12/15   Page: 1 of 24 PageID #: 1
#: 1307

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| **MARCELLUS WILLIAMS,** | : | **Case No. 15-70** |
| **#163729** | : | |
| Potosi Correctional Center | : | |
| Missouri Department of Corrections | : | |
| 11593 State Highway O | : | |
| Mineral Point, MO 63660 | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ROBERT P. MCCULLOCH**, Prosecutor, | : | **Complaint for Injunctive and** |
| St. Louis County | : | **Declaratory Relief, Attorney** |
| 100 South Central Avenue, 2nd Floor | : | **Fees and Costs of Suit** |
| St. Louis, MO 63105 | : | **Pursuant to 42 U.S.C. § 1983** |
| | : | |
| **IN HIS OFFICIAL CAPACITY** | : | |
| *Defendant.* | : | **Execution Is Scheduled For** |
| | : | **January 28, 2015 at 12:01 am** |

## COMPLAINT

## I.  NATURE OF THE ACTION

1.     This case arises from the Defendant's refusal to release biological evidence for the purposes of Short Tandem Repeat ("STR") testing as well as Y-chromosome Short Tandem Repeat ("Y-STR") testing for deoxyribonucleic acid ("DNA").  This refusal, in the context of Missouri procedures, completely forecloses Mr. Williams from seeking and obtaining testing. Such testing could provide exculpatory evidence that Plaintiff Marcellus Williams was wrongly

1

Case 4:05-cv-01474-RWS Doc. #: 104-7 Filed: 08/02/17 Page 2 of 24 PageID #: 2

convicted and sentenced to death for the 1998 home invasion and murder of Felicia Gayle.

2. Plaintiff brings this action under 42 U.S.C. § 1983 because Missouri's procedure and the Defendant's actions have completely foreclosed any testing, in violation of Mr. Williams' Fourteenth Amendment right to procedural due process, that protect him from arbitrary deprivation of life and liberty by the state. Further, by denying Mr. Williams' access to this evidence, the Defendant is effectively blocking his right of meaningful access to the courts, as well as, Mr. Williams' Sixth Amendment right to confrontation and compulsory process, his Eighth Amendment right prohibiting cruel and unusual punishment, and his due process right to meaningful review for executive clemency. Mr. Williams seeks equitable, injunctive, and declaratory relief.

## II.    JURISDICTION AND VENUE

3. This action arises under 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments of the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights violations and equitable relief under an act of Congress), 28 U.S.C. § 2201 (declaratory relief), and 28 U.S.C. § 2202 (preliminary and permanent injunctive relief).

4.    This Court has personal jurisdiction over Defendant as he is a resident of the State of Missouri, is presently located in the State of Missouri, and is an elected or appointed official of the State of Missouri.

5.    This Court has supplemental jurisdiction over any state statutory claim asserted by Mr. Williams under 28 U.S.C. § 1367, in that the state and federal claims are derived from a common nucleus of operative facts.

6.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, the Defendant's Official Functions are performed in this District and the events and omissions giving rise to Plaintiff's claims occurred within this District.

## III. PARTIES

### A.    Plaintiff

7.    Marcellus Williams is a United States citizen and a resident of the State of Missouri.  He is presently incarcerated on death row at the Potosi Correctional Center, Missouri Department of Corrections, 11593 State Highway O, Mineral Point, MO 63660.  The State of Missouri intends to execute Mr. Williams on January 28, 2015.  Upon information and belief, the Defendant and the operation of Missouri's DNA statute, Mo. Rev. Stat. § 547.035, and procedures, completely foreclose Mr. Williams' access to available scientific evidence for forensic testing in his capital murder case before he is executed.

3

**B.    Defendant**

8.    Defendant Robert P. McCulloch is the elected prosecutor for St. Louis County, Missouri.

9.    Defendant, at all times relevant hereto, was and is acting in his respective official capacities with respect to all acts described herein, and is, in each instance, acting under the color and authority of state law. Upon information and belief, unless ordered by a court, the Defendant has and intends to continue to act in his official capacity and under the authority of state law to deny Mr. Williams all access to scientific evidence in his case for purposes of forensic testing before he is executed.

**IV.    STAY OF EXECUTION/PRELIMINARY INJUNCTION**

10.    Simultaneously filed with this Complaint is a Motion for a Stay of Execution.

11.    A stay of execution is appropriate to protect Mr. Williams' Constitutional rights. If Mr. Williams is executed on January 28, 2015, the results of the forensic testing of the scientific evidence will be meaningless. The Supreme Court granted a stay of execution to decide whether § 1983 is the proper avenue to seek access to forensic evidence, *Skinner v. Switzer*, 559 U.S. 1033 (2010) (granting a stay of execution to pending disposition of petition for writ of

4

certiorari), so there must be a right to a stay of execution to pursue the § 1983 suit directly.

12.     Despite the proximity of this filing to Williams' scheduled execution date, this suit is not a dilatory or speculative suit disfavored by the Supreme Court in *Hill v. McDonough*, 547 U.S. 573 (2006). The Missouri Supreme Court, breaking from informal but standard practice, surprisingly set Mr. Williams' execution date.

13.     As outlined below, Mr. Williams has attempted since state post-conviction proceedings to obtain access to and testing of the evidence at issue in this litigation.  The complete foreclosure of access to the evidence is in fact the substance of Mr. Williams' claim. *Skinner v. Switzer*, 562 U.S. 521, 131 S.Ct. 1289 (2011).

14.     Therefore, a stay of execution must issue to permit a meaningful and full review of Mr. Williams' claims.

## V.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

15.     Mr. Williams has pursued all available state court and administrative remedies in pursuit of access to DNA and other scientific evidence and has done everything required for exhaustion to be deemed complete and/or non-futile.

16.     Alternatively, Mr. Williams is not required to exhaust state court legal remedies before bringing this Complaint because there are no state avenues for addressing this issue and therefore exhaustion is futile.[1] *See District Attorney's Office for the 3rd Judicial District v. Osborne*, 557 U.S. 52, 71 (2009) ("This is not to say that Osborne must exhaust state law remedies.") *citing to Patsy v. Board of Regents of Fla.*, 457 U.S. 496, 500-501 (1982).

17.     Mr. Williams meets the requirements of the Prison Litigation Reform Act of 1995 (PLRA) 110 Stat. 1321-66. See *Skinner*, 562 U.S. at ___, 131 S.Ct. at 1299-1300. One of the most influential aspects of the PLRA is the exhaustion requirement of 42 U.S.C. § 1997(e). § 1997(e)(a) states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." There are no administrative remedies available.

18.     On May 30, 2003 and September 8, 2003, Mr. Williams filed a *pro se* (29.15 LF pp. 6-32) and, then with the assistance of counsel, an amended petition

---

[1] On January 9, 2015, Mr. Williams also filed a proceeding with the Missouri Supreme Court in an effort to obtain access to the physical evidence for DNA testing. Exhibit 1 (Petition); Exhibit 2 (Attachments to Petition). While Mr. Williams firmly believes in the efficacy and correctness of his request, there is no guarantee that the Missouri Supreme Court will allow testing in the context of Missouri's DNA statute or under Missouri's innocence exception in the highly discretionary state habeas corpus proceeding.

6

for post-conviction relief in the St. Louis County Circuit Court pursuant to Missouri Supreme Court Rule 29.15. 29.15 LF pp. 69-353. With the exception of a hearing on an insular ineffectiveness claim (failure to have Mr. Williams testify at the penalty phase (29.15 LF p. 483)), Mr. Williams received very limited discovery and a minimal evidentiary hearing, and the trial court dismissed the petitions.

19.    Mr. Williams then exhausted his state remedy. *State v. Williams*, 168 S.W.3d 433 (Mo. Banc 2005). Mo. Sup. Ct. R. 29.15(l) expressly prohibits successors, providing: "*Successive Motions.* --The circuit court shall not entertain successive motions."

20.    In 2006, Mr. Williams filed his first federal habeas corpus petition. During the litigation, Mr. Williams tried to gain access to the DNA testing he now seeks. *Williams v. Roper*, Case No. 4:05-cv-1474 ECF R. 10, 11, 16, 37. The State of Missouri opposed those requests (*id.* at ECF R. 39 p. 1 ("Respondent <u>does</u> oppose DNA testing…no good cause for DNA testing… .") (emphasis in original)) and the federal district court denied Mr. Williams access to the evidence for DNA testing. *Id.* at ECF R 34, 42.

21.    Mr. Williams sought a certificate of appealability on that denial. On December 15, 2010, the United States Court of Appeals denied Mr. Williams' request. Mr. Williams' habeas proceedings became final when cert was denied by

the United States Supreme Court on October 7, 2013. *Williams v. Steele*, 134 S.Ct. 85 (2013).

22.     On December 19, 2014, Mr. Williams sent a letter to Defendant Robert J. McCulloch requesting crime scene evidence be tested for DNA and any results submitted to CODIS. Exhibit. 2 p. 61.

23.     As of the filing of this suit, Defendant Robert J. McCulloch has denied all access to evidence in Mr. Williams' case through his silence.

24.     On January 9, 2015, Mr. Williams filed a Missouri Supreme Court Rule 91 application seeking scientific testing of the evidence in his case to supprt a claim of actual innocence.[2]    Exhibit 1 (Petition); Exhibit 2 (Attachments to Petition).

25.     As shown, the only available avenue for relief is under § 1983. Mr. Williams has exhausted all administrative remedies, there are none – further, all state courts (and a federal court previously in the context of a habeas action) have denied him access to the evidence. The only, non-futile way Mr. Williams can gain access to the evidence for DNA testing is through the federal court system under § 1983.

---

[2]  It is uncertain that this highly discretionary state habeas corpus action is a means to vindicate Mr. Williams' rights to ensure that DNA testing is conducted. Facially, Missouri's DNA statute does not appear to apply in Mr. Williams' circumstances. *See* Mo. Rev. Stat. § 547.035.2 (3)(a)-(c). As will be explained *infra*, this is the heart of Mr. Williams' procedural due process claim.

8

## VI. BACKGROUND AND CONTEXTUAL INFORMATION

## NO PHYSICAL, FORENSIC, EYEWITNESS OR CONFESSION INCULPATES MR. WILLIAMS

26. Genetic trace evidence was recovered from the crime scene that could not be matched to Mr. Williams, Ms. Gayle, or her husband. This evidence included hairs discovered on the victim's shirt and rug, pubic hairs and fingernail clippings taken from Ms. Gayle containing blood and skin tissue. No biological evidence linked Mr. Williams to the crime.

27. The State compared the evidence from the rug upon which Ms. Gayle was found -- a blond head hair and two gray pubic hairs -- to the hair of the victim and her husband; they did not match. To Mr. Williams' knowledge, the State *never* tested these hairs, or the hairs found on the victim, against Mr. Williams' hair.

28. After a microscopic comparison, Mr. Williams' trial expert excluded Mr. Williams as the source of the hair. This expert also found that hairs from the victim's body, which were light brown to brown (as opposed to those of Mr. Williams' black hair), were not consistent with either the victim or her husband. And hairs from the victim's hands also did not match Mr. Williams' hair.

29. The prosecutor conceded in closing argument: "I told you in voir dire I didn't have any forensic evidence . . . ." (Tr. 3061).

9

30. The State also did not have fingerprint evidence (lifts were made at the scene), shoe print evidence (lifts were made at the scene), an eyewitness, or a confession. Thus, none of the most reliable sources of evidence inculpate Mr. Williams.

## MISSOURI'S CASE IS WHOLLY DEPENDANT UPON SNITCHES

31. Because Ms. Gayle had worked for the St. Louis *Post-Dispatch* years earlier and her husband was a prominent St. Louis area physician, the crime received an extraordinary amount of pretrial publicity. A year and a few months went by without any charges being filed. On November 29, 1999, Henry Cole and Laura Asaro came forward and claimed that Mr. Williams had confessed to committing the murder in order to lay claim to a $10,000.00 reward that was offered for information about the homicide.

32. Henry Cole is a career criminal with convictions dating back thirty years. Cole also has a long history mental illness, evidence that the jury did not hear. Cole's own family provided substantial evidence of Cole's mental health, drug abuse and lack of veracity issues in Mr. Williams' state post-conviction proceedings. Cole even lied about having HIV when in negotiations to obtain a half-portion of the monetary award.

10

33. The state's other critical witness, Asaro, also has a checkered background with repeated contact with the criminal justice system. She is an admitted crack addict and prostitute, who was supposedly Mr. Williams's girlfriend for a two-month period around the time of the Gayle murder.

34. While both of these witnesses testified at trial that Mr. Williams admitted to them that he had murdered Ms. Gayle, Mr. Williams' alleged jailhouse confession to Cole gave a much different account of the crime than his alleged "pillow talk" confession to his prostitute girlfriend. In short, Cole and Asaro provided differing and inconsistent versions of the crime Mr. Williams' allegedly committed.

## VII. CLAIMS FOR RELIEF

### INTRODUCTORY STATEMENT REGARDING § 1983

35. According to § 1983, "any citizen of the United States or other person within the jurisdiction thereof" can obtain relief for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person who has caused the deprivation "under color of any statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983 (2011). Mr. Williams is a citizen and he claims that his due process rights under the Fourteenth Amendment were violated when the State refused him access to evidence for DNA testing.

11

Case: 4:15-cv-00070   Doc. #: 1   Filed: 01/12/15   Page: 12 of 24   PageID #: 12

36.     In *Skinner*, the Supreme Court held that a convicted state prisoner may challenge a State's DNA statute and process that completely forecloses forensic testing of crime-scene evidence in a § 1983 action. In *Skinner*, the Supreme Court decided that a claim alleging an unconstitutional denial of access to evidence for forensic testing could properly be brought under §1983. Mr. Skinner was sentenced to death for murdering his girlfriend and her two sons. Mr. Skinner never denied that he was present in the home when his girlfriend and her sons were murdered, but he denied being the killer, claiming he was "incapacitated by large quantities of alcohol and codeine." 562 U.S. at ___, 131 S.Ct. at 1294. Although the State tested some of the evidence found at the crime scene, it did not test the knives found at the scene, an axe handle stained with blood and hair, vaginal swabs, fingernail clippings and some hair samples. *Id*.[3] Mr. Skinner tried to obtain access to the evidence under Texas Article 64, a statute allowing prisoners access to evidence for DNA testing in certain circumstances, but was denied twice. Then, Mr. Skinner filed a § 1983 action in federal court.

37.     The Supreme Court determined that Mr. Skinner properly filed his claim under § 1983 and that he was not required to bring it as a federal habeas action. The Court reasoned, "Success in his suit for DNA testing would not

---

[3] Strikingly similar to *Skinner*, Mr. Williams seeks to test a knife, fingernail clippings and hair.

12

Case: 4:15-cv-00070 Doc. #: 1 Filed: 01/12/15 Page: 13 of 24 PageID #: 13

'necessarily imply' the invalidity of his conviction. While test results might prove exculpatory, that outcome is hardly inevitable; as earlier observed . . . results might prove inconclusive or they might further incriminate Skinner." 562 U.S. at ___, 131 S.Ct. at 1290 (internal citations omitted).

38.     Because this type of testing could have been done at the time of his trial and in post-conviction, the operation of the Mo. Rev. Stat. § 547.035.2 (3)(a)-(c),[4] as well as 29.15(l) that absolutely prohibits successors, no state remedy exists and thereby the provisions, as they are likely to be construed, deny him procedural due process because the statute completely forecloses any prisoner who could have sought DNA testing his trial or in subsequent state post-conviction proceedings, but did not.

39.     Mr. Williams' request for access to DNA evidence properly falls under §1983. Like Mr. Skinner, Mr. Williams seeks access to untested biological evidence (fingernail clippings) and other physical evidence, namely the knife and unidentified hairs found on and around the victim's body. Although Mr. Williams

---

[4] Mo. Rev. Stat. § 547.035.2 (3)(a)-(c), prohibits testing when:

  (3)The evidence was not previously tested by the movant because:

  (a) The technology for the testing was not reasonably available to the movant at the time of the trial;

  (b) Neither the movant nor his or her trial counsel was aware of the existence of the evidence at the time of trial; or

  (c) The evidence was otherwise unavailable to both the movant and movant's trial counsel at the time of trial;

13

maintains his innocence, the relief he seeks is limited to the release of evidence for DNA testing. If such release and testing is ordered, this action will end and the consequences of the results – whether inculpatory, exculpatory or inconclusive – will be determined in separate proceedings. The State's right to argue the meaning of the results is preserved and not impacted by the instant action.

40. Mr. Williams has consistently maintained his innocence. He has never confessed. Forensic evidence to this point has excluded Mr. Williams from the crime scene. Mr. Williams denies being the killer. Mr. Williams believes that the results of a DNA test of the remaining fingernail clippings, the murder weapon, and unidentified hairs will identify the assailant. Once he obtains the evidence and that the evidence is indeed exculpatory, Mr. Williams will be able to prove his innocence in a separate proceeding.

41. While Mr. Williams believes the results of the DNA testing of this evidence will cast doubt on his conviction, the current action is not seeking release from custody or a reduction in the level of custody. Mr. Williams is not asking the Court to act on the results of the DNA testing. Instead, Mr. Williams, having been completely foreclosed from access and testing of evidence, simply wants to obtain access to the evidence for DNA testing. Since access to the evidence will not "necessarily imply the invalidity of his conviction," *Heck v. Humphrey*, 512 U.S.

14

477, 487 (1994), and the DNA results "may prove exculpatory, inculpatory, or inconclusive," Mr. Williams properly brings his claim under § 1983. *Skinner,* 562 U.S. at ___, 131 S.Ct. at 1298.

## ITEMS TO BE TESTED

42.     The evidence that Mr. Williams seeks to subject to DNA testing was originally collected during the investigation of the crime for which he was convicted and remains in the possession and the control of the Defendant and/or the State of Missouri.

43.     The following physical evidence can and should be tested in the manner as described in order to exonerate Mr. Williams of this terrible crime:

i.  STR and Y-STR testing of the fingernail clippings of the victim.
ii.  STR and Y-STR testing of State's Exhibit 90, a knife and the murder weapon.
iii.  An examination of the hairs removed from the victim's body for biological material, and submission of any available biological material for STR testing.
iv.  An examination of the hairs and pubic hairs recovered from rug upon which the victim was laying for biological material, and submission of any available biological material for STR testing.

44.     If STR DNA testing of this evidence reveals any profiles that exclude Mr. Williams, these results should be manually keyed or permanently uploaded into the national DNA databank system, Combined DNA Index System ("CODIS"), and potentially identify the assailant.

45. What is of absolute relevance to this case is the identity of the donor of the hairs and the presence of biological materials in the fingernail clippings and on the knife. The presence of biological material belonging to someone other than Mr. Williams is likely to demonstrate the presence of another person in the victim's apartment and support Williams' defense that he did not kill Ms. Gayle. It would be relevant to demonstrate that he is innocent of the murder.

46. Further, according to St. Louis Coroner Dr. Mary Case, there were extraordinary similarities between Ms. Gayle's homicide and the murder of Debra McClain in the adjoining suburb of Pagedale. Exhibit 2 p. 4. (Noted that "Dr. Case was struck by the similarity of both cases" based on the age and build of victims, the type of fatal and defensive injuries, the similarity of the crime scenes, and the proximity of the scenes). "Dr. Case was especially concerned with the unusual factor of the victim being found with the knife still in her body. She noted this aspect of a stabbing death is extremely rare." *Id.* In addition to highlighting the need to have the knife tested, any profiles should be compared to any profiles developed from the evidence in Ms. McClain's murder.

47. Defendant McCulloch has refused to provide Mr. Williams access to the evidence for testing. As of this filing, the courts have refused to order the release of the evidence for testing.

16

48. Mr. Williams has a reasonable basis to believe that testing this evidence will lead to exculpatory evidence that he can use to demonstrate his innocence in a separate proceeding.

49. Mr. Williams has always denied that he killed the victim, including during all police interrogations, and in his defense at trial.

50. The University City Police Department believed that the fingernail clippings were likely to have significant evidentiary value. While some samples were tested by Mr. Williams at the time of trial, which excluded him, the remaining samples possessed by the Defendant have never been tested.

51. Further, the collection and processing of hair evidence by the police and coroner was ostensibly intended to attempt to explain the circumstances surrounding the death of the victim and to identify her killer. Clearly, identifying the hair on the body of the victim and in the area surrounding the victim can provide powerful evidence for the state to identify the actual killer.

52. Likewise the murder weapon – found in the victim's body, and thus, preserved as left by the murderer – is likely to contain powerful evidence demonstrating the identity of the killer.

53. After going to great lengths to collect this evidence, the failure to test this evidence to see if it pointed to Mr. Williams or someone else is incongruous.

17

54.     It is unreasonable and a denial of due process for the authorities to deny testing of critical evidence because they may fear that it may result in exculpatory evidence to their prime suspect, i.e., that fingernail clippings, the hairs and the murder weapon contain biological evidence that can be identified as belonging to someone else. Mr. Williams must be afforded the opportunity to have this evidence examined and tested before he is executed. He has thus far been completely foreclosed of this opportunity.

55.     As previously noted, during his original habeas proceedings Mr. Williams requested the testing of this evidence.  At the insistence of the State of Missouri, the district court denied Mr. Williams' request for any testing.

56.     Mr. Williams should not be executed until testing of the fingernail clippings, hair evidence and the murder weapon is accomplished, and the results of such testing are disclosed to Mr. Williams. Such testing can be done without significant delay and at minimal cost to the state.

## FIRST CLAIM FOR RELIEF: VIOLATION OF PROCEDURAL DUE PROCESS

57.     Mr. Williams has been completely foreclosed from accessing this evidence and thereby violate his rights to procedural due process. *See Skinner*. There are no administrative remedies.  There are no legal remedies. He cannot pursue a successor state post-conviction action.  Mo. Sup. Ct. R. 29.15(l).  On its

Case: 4:15-cv-00070 Doc. #: 1 Filed: 01/12/15 Page: 19 of 24 PageID #: 19

face, and as it has been applied, Mo. Rev. Stat. § 547.035.2 (3)(a)-(c), is not available because the evidence was available for testing at trial and in post-conviction. Mr. Williams' informal request to the Defendant was ignored. Further, the highly discretionary Rule 91 state habeas corpus action, which is based upon a *prima facie* case of actual innocence where there is a *bona fide* question of guilt, cannot be effectively pursued without access to the evidence.

58. Here, the denial of access to test the above evidence and vindicate Mr. Williams' claims of actual innocence violates Mr. Williams' procedural due process rights and deprives him of his life and liberty interests to prove his innocence.

59. Further, the complete foreclosure of access to this evidence deprives Mr. Williams of any opportunity to assert available equitable cause arguments under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012) and *Trevino v. Thaler*, 133 S.Ct. 1911 (2013) – for both trial counsel and post-conviction counsel's failure to attempt to gain access of the evidence. Such claims cannot be raised without access and testing of evidence.

60. Missouri has statutorily created due process, life and liberty interests of Mr. Williams to demonstrate his innocence with new evidence in post-conviction proceedings. *See* Missouri Supreme Court Rule 29.15; Mo. Rev. Stat. §

Case: 4:15-cv-00070 Doc. #: 1 Filed: 01/12/15 Page: 20 of 24 PageID #: 20

547.035. However, The plain language of Missouri Supreme Court Rule 29.15 and Mo. Rev. Stat. § 547.035.2 (3)(a)-(c) limits Mr. Williams' ability to test the DNA evidence. This violates Mr. Williams' rights to procedural due process because the statute completely forecloses any prisoner who could have sought DNA testing his trial or in subsequent state post-conviction proceedings, but did not.

61.  Indeed, the Defendant's denial in this case, as well as the previous refusals in this case to *permit* discovery, testing, and even a hearing renders the post-conviction process for obtaining access to evidence for forensic testing wholly arbitrary and a meaningless ritual. See *Michel v. Louisiana*, 350 U.S. 91, 93 (1955); *Parker v. Illinois*, 333 U.S. 571, 574 (1948). The need for valid post-conviction proceedings was outlined in *Case v. Nebraska*, 381 U.S. 336, 340-47 (1965). Brennan, J. *concurring*. The process must provide a real avenue for review of federal constitutional claims and must not be arbitrary as Mr. Williams faced herein.

62.  Mr. Williams has both a life and liberty interest in access to the evidence for testing. The State of Missouri intends to execute Mr. Williams on January 28, 2015. Mr. Williams has been arbitrarily denied access to the evidentiary materials for scientific testing.

20

63.     The Defendant violated Mr. Williams' procedural due process rights by refusing to afford him an avenue through post-conviction proceedings by which reliable and accurate DNA testing can be conducted which can conclusively prove his actual innocence. *See Matthews v. Elderidge*, 424 U.S. 319 (1976).

## SECOND CLAIM FOR RELIEF: MEANINGFUL ACCESS TO COURTS

64.     By refusing to conduct DNA testing and running any results through the CODIS database, the Defendant has arbitrarily denied Mr. Williams of his right to meaningful access to state and federal court to establish that he is actually innocent of the crimes for which he is currently incarcerated, in violation of *Ex Parte Hall*, 312 U.S. 546 (1941), *Bell v. Milwaukee*, 746 F.2d 1205, 1262 (7th Cir. 1984), *Christopher v. Harbury*, 536 U.S. 403 (2002), the Petition Clause of the First Amendment of the United States Constitution, and the Due Process and Equal Protection Clause of the Fourteenth Amendments.

## THIRD CLAIM FOR RELIEF: ACTUAL INNOCENCE/ CRUEL AND UNUSUAL PUNISHMENT

65.     By refusing to conduct DNA testing and running any results through the CODIS database, the Defendant has arbitrarily denied Mr. Williams of the opportunity to make a showing that he is innocent of the crime for which he is currently facing a death sentence, in violation of the Cruel and Unusual

Punishment Clause of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment.

## FOURTH CLAIM FOR RELIEF: COMPULSORY PROCESS

66. By refusing to conduct DNA testing and running any results through the CODIS database, the Defendant has arbitrarily denied Mr. Williams of his right to present evidence of innocence in State or Federal court, or the Governor of Missouri in clemency proceedings, in violation of the Confrontation and Compulsory Process Clauses of the Sixth Amendment.

## FIFTH CLAIM FOR RELIEF: CLEMENCY DUE PROCESS

67. By refusing to conduct DNA testing and running any results through the CODIS database, the Defendant has arbitrarily denied Mr. Williams of his right to avail himself to the opportunity to apply for executive clemency and the function of clemency serves in preventing the execution of someone who is actually innocent in violation of the Due Process Clause of the Fourteenth Amendment.

## PRAYER FOR RELIEF

68. Mr. Williams requests the Court to preserve the status quo by issuing a stay of execution barring the state of Missouri and its agents, officials, representatives and employees or others working in concert or cooperation from

22

carrying out Mr. Williams' execution, presently scheduled for January 28, 2015, during the pendency of this lawsuit.

69.     Mr. Williams requests that this Court grant him temporary restraining order and preliminary injunction barring the Defendant and his agents, officials, representatives, employees or others working in concert or cooperation with him from destroying, testing, removing, altering, or otherwise contaminating or affecting the evidence Mr. Williams seeks to access.

70.     Equitable relief, in the form of an order requiring Defendant to release the above items for DNA testing, and the upload of all CODIS-eligible profiles into the CODIS database.

71.     Equitable relief, in the form of a comparison of all developed profiles to any profiles developed in the investigation of the Pagedale murder.

72.     Mr. Williams requests that this Court grant him reasonable attorney fees pursuant to 42 U.S.C. §1988 and the laws of the United States.

73.     Mr. Williams requests that this Court grant such further relief as it deems just and proper.

Respectfully submitted,

/s/  *Kent E. Gipson*
KENT E. GIPSON, Mo. Bar #34524
301 East 63rd Street
Kansas City, Missouri 64113

23

Case: 4:05-cv-01474-RWS Doc. #: 104-7 Filed: 08/02/17 Page: 24 of 24 PageID
Case: 4:15-cv-00070 Doc. #: 1 Filed: 01/12/15 Page: 24 of 24 PageID #: 24
#: 1330

816-363-4400 / fax 816-363-4300
kent.gipson@kentgipsonlaw.com

-and-

*/s/ Laurence E. Komp*
LAURENCE E. KOMP, Mo. Bar #84430
E.D. Mo. No. 5212907
P.O. BOX 1785
Manchester, MO 63011
636-207-7330 / fax 636-207-7351
lekomp@swbell.net

ATTORNEYS FOR PETITIONER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was emailed this day to Michael Joseph Spillane, Assistant Attorney General, at mike.spillane@ago.mo.gov, this 12th day of January 2015.

*/s/ Laurence E. Komp*
LAURENCE E. KOMP, Mo. Bar #84430