IN THE CIRCUIT COURT
OF BOONE COUNTY MISSOURI

MARCELLUS WILLIAMS,            )
                               )      <u>CAPITAL CASE</u>
                 Petitioner,   )
                               )
v.                             )      Case No. 15BA-CV01828
                               )
TROY STEELE, Superintendent,   )
Potosi Correctional Center     )
                               )
                 Respondent.   )

---

## PETITIONER'S POST-DNA TESTING BRIEF

---

COMES NOW petitioner, and submits to the court the following brief in the aftermath of the deposition of DNA expert Jennifer Fienup and the findings of petitioner's DNA expert Dr. Norah Rudin regarding the significance of the results of the court ordered DNA testing in this capital habeas action. According to respondent, because Ms. Fienup could not develop a DNA profile sufficient to satisfy the Bodes laboratory's protocol to conclusively exclude petitioner as the murderer, that the DNA testing in this case has no exculpatory value. However, this position distorts the actual findings of the Y-STR DNA test results that indicated that several alleles at eleven different loci on the murder weapon do not match the corresponding alleles from the known DNA sample of petitioner. As a result, based upon the deposition, Dr. Rudin's report, and other settled scientific

principles surrounding DNA comparisons, the testing in this case provides additional compelling evidence that Marcellus Williams is innocent and that another unknown male with a different DNA profile murdered Felicia Gayle.

Dr. Norah Rudin[1] has recently reviewed the case notes and the data files generated by Bode. In her report and opinion, "Marcellus Williams could not have contributed the detected profile" on the murder weapon. Exhibit B p.1. Dr. Rudin noted "it is clear that he could not have contributed the profile reported by Ms. Fienup" due to an allele difference at 11 of the 15 detected loci. *Id.*; *Id.* Appx. A. Dr. Rudin went further and also reviewed the data files generated by Bode.

In comparing the Allele table from a known sample with the Bode's below threshold findings from the knife, Dr. Rudin described how even the non-called peaks did not comport with Mr. Williams' reference profile. Exhibit B p. 2-3. According to Dr. Rudin, allelic drop is not valid in these circumstances because "the alleles present in his profile would have to be assumed present but not detected (dropped out) in at least 13 of the 21 detected loci. Additionally, alleles from a second contributor would have to replace his missing alleles at each of those loci." Such a scenario is statistically improbable, if not impossible. "A better explanation is that Marcellus Williams is not a contributor to the profile(s) found on the knife." *Id.* p. 3. Thus, Dr. Rudin concludes that the "most reasonable

---

[1] Dr. Rudin's CV is attached as Exhibit A.

explanation for the profile detected on the knife is that Marcellus Williams is not a contributor." *Id.* p. 3.

The following chart from the Bode Laboratory reports indicate that the above threshold alleles found at several of the loci do not match Marcellus Williams that were submitted for comparison purposes.

| Locus | Unknown Sample (First Round) | Petitioner's Sample (Second Round) |
|---|---|---|
| DYS576 | 20, --- | 16 |
| DYS389 I | 13, --- | 13 |
| DYS 448 | No results | 20 |
| DYS389 II | No results | 29 |
| DYS19 | No results | 14 |
| DYS391 | 10 | 10 |
| DYS481 | 23, --- | 26 |
| DYS549 | No results | 11 |
| DYS533 | 13, --- | 12 |
| DYS438 | No results | 11 |
| DYS437 | 15, --- | 14 |
| DYS570 | 16, --- | 19 |
| DYS635 | 23 | 23 |

| | | |
|---|---|---|
| DYS390 | 24, --- | 21 |
| DYS439 | 12, --- | 12 |
| DYS392 | 13, --- | 11 |
| DYS643 | No results | 13 |
| DYS393 | 13, --- | 14 |
| DYS458 | 17, --- | 18 |
| DYS385 a/b | 11, 14 | 15, 16 |
| DYS456 | No results | 15 |
| Y-GATA-H4 | No results | 11 |

Ms. Fienup indicated in her deposition that each of the non-matching alleles found in the unknown sample were over the threshold of RFU 75 but were not above the RFU of 300[2] that is necessary for the laboratory, under its existing protocols, to conclude with absolute certainty that petitioner could be excluded as the killer. (Depo 18-21). However, Ms. Fienup did indicate that these results do have exculpatory value. (*Id.* 53). Had only one of the eleven alleles from the knife reached the 300 RFU threshold, petitioner would have been excluded as the unknown DNA contributor on the murder weapon. (*Id.* 58-59). In this regard, it is important to note that Ms. Fienup indicated that it was a "close call" regarding

---

[2] RFU is an acronym for relative florescent units.

4

whether there was sufficient data to exclude petitioner as the contributor of the DNA on the knife. (*Id.* 59).

Together, Dr. Rudin's opinion and the data generated by Bode establish that Marcellus Williams is not the source of the male DNA found on the murder weapon. Given the manner of the killing and the prosecution's tenuous evidence of guilt, this provides more than ample evidence of actual innocence to require the Missouri Supreme Court to grant Mr. Williams a new trial. *See Hildwin v. State,* 141 So.3d 1178, 1183 (Fla. 2014) (granting Florida death row inmate new trial based upon DNA test results).

Alternatively, coupled with the other exculpatory evidence in this case as submitted in the underlying habeas corpus petition, the DNA evidence here, at the very least, casts sufficient doubt of guilt to justify the commutation of petitioner's death sentence to life imprisonment. Missouri's mandatory proportionality review statute requires the consideration of "whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence, and the defendant." § 565.035.3 R.S.Mo. (2010). In light of the evidence presented at trial coupled with the further evidence of innocence developed in the state post-conviction proceedings and the present DNA test results, the Missouri Supreme Court should, at a minimum, reopen its previously conducted proportionality review and vacate petitioner's death sentence

because the evidence of petitioner's guilt is clearly not established with sufficient certainty to justify the ultimate punishment.

In addressing the strength of the evidence in its original proportionality review of petitioner's sentence on direct appeal, the Missouri Supreme Court stated: "Williams confessed to the murder." *State v. Williams*, 97 S.W.3d 462, 475 (Mo. banc 2003). This passage from the court's previous opinion is, at best, misleading. Petitioner never confessed to the police. The alleged "confessions" were proffered by two paid informants. Those informant "confessions," from convicted felons whose stories conflicted with each other and the physical evidence, does not come anywhere close to having equal weight to a voluntary confession to the police.

As a result, the proportionality of petitioner's death sentence should be reexamined in light of the strength of all of the evidence that has come to light. Like the case of Timothy Chaney, there is no eyewitness, confession, or physical evidence establishing Marcellus Williams' guilt. *See State v. Chaney*, 967 S.W.2d 47, 60 (Mo. banc 1998). The Missouri Supreme Court noted, in commuting Mr. Chaney's death sentence to life imprisonment, that the evidence of his guilt was sufficient to support the conviction, but is not of "the compelling nature usually found in cases where the sentence is death." (*Id.*).

6

In *State ex rel. Amrine v. Roper*, 102 S.W.3d 541 (Mo. banc 2003), a substantial majority of the members of the Missouri Supreme Court indicated that Missouri's proportionality review scheme requires the court to conduct an ongoing review of the propriety of a condemned prisoner's death sentence when new evidence of innocence emerges. *Id.* at 547 (majority opinion); *Id.* at 549-550 (concurring opinion of Wolff, J.); *Id.* at 552 (dissenting opinion of Price, J.). As in *Amrine*, the DNA testing here provides sufficient evidence of innocence to justify a new trial.

Alternatively, the aforementioned opinions in *Amrine* suggest that middle ground might be reached in habeas corpus cases where a condemned man presents significant post-conviction evidence raising grave doubts about his guilt that might not meet the higher standard for reversal of the underlying conviction under *Amrine*, but would nevertheless be sufficient to require that a prisoner's death sentence be overturned and his sentence reduced to life without parole. Even where all of the evidence is legally sufficient to establish guilt and does not provide clear and convincing evidence of innocence, the death penalty should be off the table where substantial doubts regarding guilt exist. As Judge Price's dissent in *Amrine* advocates, where evidence of possible innocence substantially undercuts confidence in the verdict, a death sentence should be set aside. 102 S.W.3d at 552 (Price, J. dissenting).

Respectfully submitted,

/s/  *Kent E. Gipson*
KENT E. GIPSON, Mo. Bar #34524
LAW OFFICE OF KENT GIPSON, LLC
121 East Gregory Boulevard
Kansas City, Missouri 64114
816-363-4400 / fax 816-363-4300
kent.gipson@kentgipsonlaw.com

/s/ *Laurence E. Komp*
LAURENCE E. KOMP, Mo. Bar #84430
E.D. Mo. No. 5212907
P.O. BOX 1785
Manchester, MO 63011
636-207-7330 / fax 636-207-7351
lekomp@swbell.net

*COUNSEL FOR PETITIONER*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of December, 2016, the foregoing was

filed via the CM/ECF system which sends notification to all counsel of record.

/s/ *Laurence E. Komp*
Counsel for Petitioner

8

IN THE CIRCUIT COURT
OF BOONE COUNTY MISSOURI

MARCELLUS WILLIAMS,                )
                                   )        CAPITAL CASE
                Petitioner,        )
                                   )
v.                                 )        Case No. 15BA-CV01828
                                   )
TROY STEELE, Superintendent,       )
Potosi Correctional Center         )
                                   )
                Respondent.        )

---

**EXHIBITS IN SUPPORT OF PETITIONER'S
POST-DNA TESTING BRIEF**

---

EXHIBIT A        CV of Norah Rudin, Ph.D.

EXHIBIT B        Forensic DNA Report of Norah Rudin, Ph.D.



**Norah Rudin, Ph.D.**
650 Castro St., Suite 120-404, Mountain View, CA 94041
Phone: (650) 605-3411    e-mail: norah@forensicdna.com

## CURRICULUM VITAE
1/1/2016

### EDUCATION

1981-1987. Ph.D., Molecular biology/Genetics, Department of Biology, Brandeis University, Waltham, Massachusetts.

1975-1979. B.A., Zoology, Pomona College, Claremont, California.

### PROFESSIONAL ACTIVITIES

1991-present. Forensic DNA Consultant.

1999-2002. Acting DNA Technical Leader (consultant), San Diego Sheriff's Office DNA Laboratory.

1999. Acting DNA Technical Leader (consultant), San Francisco Police Department Criminalistics Laboratory.

1997-1999. Acting DNA Technical Leader (consultant), Idaho State Department of Law Enforcement DNA Laboratory.

1997-2004. Developer, instructor of online courses with Knowledge Solutions; *Introduction to Forensic DNA, Fundamentals of Forensic Science, Arson and Explosives, Toolmarks and Firearms.*

1995-2001. Instructor, University of California at Berkeley Extension; *Survey of Forensic Sciences, Fundamentals of Forensic DNA, Careers in Forensic Science, Advanced Topics in Forensic Science.*

1991-1993. DNA Technical Leader, California State Department of Justice DNA Laboratory.

1987-1990. Post-doctoral fellow, Lawrence Berkeley Laboratory, Berkeley, California.

### PROFESSIONAL ORGANIZATIONS

California Association of Criminalists (CAC)

American Academy of Forensic Science (AAFS), Fellow

American Board of Criminalistics (D-ABC), Diplomate

### SOFTWARE

Principal in SCIEG, a non-profit company, housing *Lab Retriever*, a free, open-source software tool, for calculating likelihood ratios with a probability of drop-out, and training and education in probabilistic genotyping.

### AWARDS, HONORS

2016. President's Council of Advisors on Science and Technology (PCAST) panel discussion of forensic science practices, Washington D.C.



EXHIBIT

A

2014-2015. National Institute of Justice Grant 2013-DN-BX-K029 2013-DN-BX-K029. Advancing probabilistic approaches to interpreting low-template DNA profiles and mixtures: Developing theory, implementing practice. (Co-PIs Kirk Lohmueller and Keith Inman)

2013-. The Constitution Project; Committee on DNA Collection; Co-chair

2009. Service Award, California Association of Criminalists

2007. Reviewer, United Nations Office of Drug and Crime Manual

2007-2011. Commonwealth of Virginia Scientific Advisory Committee

1983-1985. National Institute of Health genetics training grant

1981-1985. Goldwyn Fellowship

## BOOKS AND CHAPTERS

Inman, K. and Rudin N. *Sequential Unmasking*: Minimizing Observer Effects in Forensic Science., Encyclopedia of Forensic Sciences 2nd Ed. Siegel, J.A., Saukko, P.J., Waltham:Academic Press, 2013.

Rudin N. and Inman, K. *An Introduction to Forensic DNA Analysis*, CRC Press Inc., Boca Raton, FL. 1997, 2001.

Inman, K. and Rudin, N. *Principles and Practice of Criminalistics: The Profession of Forensic Science*, CRC Press Inc., Boca Raton, FL, 2000.

Rudin N. and Inman, K. Editors, *Protocols in Forensic Science* series, CRC Press, incl. *Scientific Protocols for Forensic Examination of Clothing*, Jane Taupin and Chesterene Cwiklik; *Scientific Protocols for Fire Investigation*, John Lentini; *Ethics in Forensic Science: Professional Standards for the Practice of Criminalistics*, Peter Barnett.

Rudin, N. *Dictionary of Modern Biology*. Barron's Educational, Hauppauge, NY. 1997.

Inman, K., and Rudin, N. Scientific Basis of DNA Typing and Overview of Forensic DNA Typing in *Forensic Evidence*, California District Attorneys Association 1999.

Rudin, N. and Inman, K. DNA Based Identification in: *Biometrics: Personal Identification in Networked Society*, Kluwer Academic Publishers, 1999.

Inman, K. and Rudin N., *DNA Demystified, Solving Crimes in the 90's; An Introduction to Forensic DNA Typing*, Self-published, 1994.

## ACADEMIC PUBLICATIONS

Marsden, C.D. et al. An assessment of the information content of likelihood ratios derived from complex mixtures. *Forensic Science International: Genetics*. In review.

Haned, H., et al. Validation of probabilistic genotyping software for use in forensic DNA casework: definitions and illustrations. *Science and Justice*. Accepted.

Inman, K., et al. Lab Retriever: a software tool for calculating likelihood ratios incorporating a probability of drop-out for forensic DNA profiles. 2015. *BMC Bioinformatics* 16:298

Lohmueller, K.E., Rudin, N., Inman, K. Analysis of allelic drop-out using the Identifiler ® and PowerPlex® 16 forensic STR typing systems. 2014. *Forensic Science International: Genetics*. **12**, 1-11.

Lohmueller, K.E., Rudin, N., Calculating the Weight of Evidence in Low-Template Forensic DNA Casework. *J. Forensic Sci*, **58** (S1) 2013. P.S243-S249

Inman, K. and Rudin, N. The Origin of Evidence. *Forensic Science International.* 2002. **126** p. 11-16.

Brettell, T.A., Rudin, N., Saferstein, R. 2003. Forensic Science. *Anal. Chem.* **75**, p. 2877-2890.

Brettell, T.A., Inman, K., Rudin, N., Saferstein, R. 2001. Forensic Science. *Anal. Chem.* **73**, p. 2735-2744.

Brettell, T.A., Inman, K., Rudin, N., Saferstein, R. 1999. Forensic Science. *Anal. Chem.* **71** p. 235R-255R.

Rudin, N. And Inman, K. 1997. Exonerated by Science. *Jurimetrics J.* **37**, p. 319-323.

Rudin, N. 1993. Beyond RFLP. *TIE-LINE.* Vol. 17, No. 1 p. 53-54.

Myers, S.P., and N. Rudin. 1993. Evaluation of Centricon 100 Filtration Units on the *Hae*III Digestion Efficiency of DNA Extracted from Bloodstains. *TIE-LINE.* Vol. 17, No. 1 p. 55.

Dora, E.G., Rudin, N. Martell, J.R., Esposito, M.S., Ramirez, R.M. 1999. RPD3 (REC3) mutations affect mitotic recombination in *Saccharomyces cerevisiae. Current Genetics* **35**: 68-76.

Fishman-Lobell, J., Rudin, N. and J. E. Haber. 1992. Two alternative pathways of double-strand break repair that are kinetically separable and independently modulated. *Mol. Cell Biol.* **12**:3 1292-1303.

Rudin, N, E. Sugarman and J. E. Haber. 1989. Genetic and physical analysis of double-strand break repair and recombination in *Saccharomyces cerevisiae.* Genetics **122**: 519-534.

Rudin, N., and J.E. Haber. 1988. Efficient repair of *HO*-induced chromosomal breaks in *Saccharomyces cerevisiae* by recombination between flanking homologous sequences. *Mol. Cell Biol.* **8**:9 3918-3928.

Haber, J.E., R. Borts, B. Connolly, M. Lichten, N. Rudin and C. I. White. 1988. Physical monitoring of meiotic and mitotic recombination in yeast. In *Nucleic Acid Research and Molecular Biology.* Vol. 35 p. 212-262.

Rudin, N., Cis-acting regions involved in mating type interconversion in the yeast *Saccharomyces cerevisiae. Ph.D. Thesis,* Brandeis University, 1988.

## ABSTRACTS AND PRESENTATIONS

Panelist, Mixture Interpretation and Statistics Town Hall Meeting, AAFS, 2016, Las Vegas, NV.

Marsden, C., Rudin, N., Inman, K., Lohmueller, K., 2015. Defining the limits of forensic DNA profile interpretation: An assessment of the information content inherent in complex mixtures., NIST International Symposium on Forensic Science Error Management, Washington D.C.

Rudin, N., Conviction and exoneration in Cook Co., The story of a questionable Y-STR interpretation, CAC meeting Rohnert Part, 2014.

Marsden, C., Rudin, N., Inman, K., Lohmueller, K., 2015. Defining the limits of forensic DNA profile interpretation: An assessment of the information content inherent in complex mixtures., CAC, Ventura, CA.

Rudin, N., 2015. Forensic DNA Statistics: DON'T PANIC!. NACDL, Las Vegas, NV.

Rudin, N., 2015. Another questionable Y-STR profile interpretation: the story continues .... CAC, Ventura, CA.

Marsden, C., Rudin, N., Inman, K., Lohmueller, K., 2015. Defining the limits of forensic DNA profile interpretation: An assessment of the information content inherent in complex mixtures., AAFS, Orlando, FL.

Rudin, N., Conviction and exoneration in Cook Co., The story of a questionable Y-STR interpretation, CAC meeting Rohnert Part, 2014.

Rudin, N., Burley, L. Turns out, you CAN do PCR in a barn: Exceeding the limits of science – a case report, CAC meeting Rohnert Part, 2014.

Marsden, C., Rudin, N., Inman, K., Lohmueller, K. Defining the limits of forensic DNA profile interpretation: An assessment of the information content inherent in complex mixtures. CAC meeting Rohnert Part, 2014.

Inman, K., Rudin N., Lohmueller K., 2014. *Lab Retriever*, Probabilistic Software Workshop, Promega International Symposium for Human Identity, Phoenix, AZ.

Inman, K., Rudin N., Lohmueller K., 2014, Probabilistic Genotyping and *Lab Retriever*, CAC study group, Richmond CA, Aug 26.

Inman, K., Rudin N., Lohmueller K., 2014, Probabilistic Genotyping and *Lab Retriever*, CAC meeting, Pasadena CA, Aug 26.

Inman, K., Rudin N., Lohmueller K., 2013. Calculating Likelihood Ratios Incorporating a Probability of Drop-out using the free program *Lab Retriever*. ½ day Workshop, Promega International Symposium for Human Identity, Atlanta, GA.

Lohmueller K., Rudin N., Inman, K., 2013. Analysis Of Allelic Drop-Out Using The Identifiler ® And PowerPlex ® Forensic STR Typing Systems  II. Evaluation Of Estimated Drop-Out Probabilities. Presentation, AAFS, Washington D.C.

Inman, K., Lohmueller K., Rudin N., 2013. Analysis of allelic drop-out using the Identifiler ® and PowerPlex ® 16 forensic STR typing systems I. Estimation of drop-out probabilities, Presentation, AAFS, Washington D.C.

Inman, K., Rudin N., Lohmueller K., 2013. Calculating Likelihood Ratios Incorporating a Probability of Drop-out: Introducing *Lab Retriever*, a free and user-friendly software program. Workshop, AAFS, Washington D.C.

Rudin, N., Inman, K., Circumstantial Evidence that Supports an Inference for the Defense: Getting the most out of your DNA profile, 2013. NACDL conference, Washington D.C.

Inman, K., Rudin N., Lohmueller K., 2012. Calculating Likelihood Ratios Incorporating a Probability of Drop-out: A New Web-based Tool, CAC meeting, Bakersfield, CA.

Lohmueller K., Rudin N., Inman, K., 2011. Approaches to Measure the Strength of DNA Evidence Exhibiting Possible Stochastic Effects. CAC meeting, Sacramento, CA.

Inman, K., Rudin N., Lohmueller K. 2011. A review of detection thresholds and their application to low-template DNA samples. CAC meeting, Sacramento, CA.

Lohmueller K., Rudin N., Inman, K. 2011. Performance of statistical approaches to measure the strength of DNA evidence exhibiting possible stochastic effects. ICFIS meeting, Seattle, WA.

Lohmueller, K., Rudin, N., 2011. The application of likelihood ratios using allelic drop-out to case samples, ICFIS, Seattle, WA.

4

Lohmueller K., Rudin N., Inman, K. 2011. Performance of Statistical Approaches to Measure the Strength of DNA Evidence Exhibiting Possible Stochastic Effects, AAFS meeting, Chicago, IL.

Lohmueller K., Rudin N., Inman, K. Analysis of allelic drop-out using the Identifiler STR multiplex. Promega Human Identity Symposium, San Antonio, TX.

Rudin, N. and Inman, K., Workshop: Introduction to perception, observer effects, bias, and expectation in forensic science, AAFS, Seattle, WA.

Rudin, N., 2010, Defining the science in forensic science, part of a symposium "Just science, how scientists can reform the criminal justice system"

Lohmueller K., Rudin N., Inman, K. 2010, Tools for estimating the weight of evidence for difficult profiles. CAC meeting, Oakland, CA.

Rudin, N., and Inman, K., 2008. The Role of Forensic Science in the Innocence Movement, CAC meeting, Sacramento, CA.

Rudin, N., 2008. The Consequence of Keg Stands. CAC meeting, Sacramento, CA.

Rudin, N., 2005. Y-STRs Come of Age: A disputed interpretation. CAC meeting, Oakland, CA.

Rudin, N., 2003. It Takes a Criminalist to see the Forest for the Trees. CAC meeting, San Diego, CA.

Rudin, N. 2002. Houston, We Have a Problem. CAC meeting, Huntington Beach, CA.

Rudin, N. 2002. The Database Hit that Missed the Mark. CAC meeting, San Francisco, CA.

Rudin, N. 2002. Biological Evidence as Transfer Evidence. CAC meeting, San Francisco, CA.

Rudin, N. and Inman, K. 1999. The Origin of Evidence. CAC meeting, Oakland, CA.

Rudin, N. 1999. Case Review. CAC meeting, Oakland, CA.

Rudin, N. 1998. DNA Case Review. CAC meeting, Monterey, CA.

Rudin, N. and Inman K. 1993. Development of Mini-satellite Variant Repeat (MVR) Analysis for Forensic Samples. Promega Human Identity Symposium, Scottsdale, AZ.

Barcellos, L., and Rudin, N. 1993. The Case of the Laundered Results. CAC meeting, Berkeley, CA.

Rudin, N., and Inman, K.1993. Development of Mini-satellite Variant Repeat for Forensic Analysis. CAC meeting, Berkeley, CA.

Rudin, N., 1993. Evaluation of Methods involving PCR Amplification of Additional DNA Sequence and Length Polymorphisms for Forensic Typing. AAFS meeting, Boston, MA

Rudin, N.R., Konzak, K., Gima, L., Brewer, L., Buoncristiani, M., Horne, M., Inman, K., Ma, M., Pierson, M., Sims, G., Bashinski, J. 1992. A Systematic Study of the Effect of Various Environmental Abuses on RFLP and PCR Analysis of Forensic Samples. Promega Human Identity Symposium, Scottsdale, AZ.

Rudin, N.R., Konzak, K., Gima, L., Brewer, L., Buoncristiani, M., Horne, M., Inman, K., Ma, M., Pierson, M., Sims, G., Bashinski, J. 1992. A Systematic Study of the Effect of Various Environmental Abuses on RFLP and PCR Analysis of Forensic Samples. AAFS meeting, New Orleans, LA

Rudin, N.R., Konzak, K., Gima, L., Brewer, L., Buoncristiani, M., Horne, M., Inman, K., Ma, M., Pierson, M., Sims, G., Bashinski, J. 1991. A Systematic Study of the Effect of

Various Environmental Abuses on RFLP and PCR Analysis of Forensic Samples. CAC meeting, Ontario, CA.

Rudin, N., H.W. Moise, J.T. Brown and M.S. Esposito. 1990. The *REC3* gene of *S. cerevisiae*: molecular cloning, disruption and DNA sequencing. Yeast: (Spec Iss.)

Moise, H.W., Rudin, N. J.T. Brown and M.S. Esposito.1990. The *REC1* DNA strand-transfer protein of *Saccharomyces cerevisiae* is required for recombination, X-ray damage repair, mating-type switching and meiosis. In abstracts of papers presented at the 1990 meeting on yeast genetics and molecular biology, The Hague, The Netherlands.

Fishman-Lobell, J., N. Rudin and J. Haber. 1990. Increasing the distance between direct repeats slows the kinetics of double-strand break induced recombination. In abstracts of papers presented at the 1990 meeting on yeast genetics and molecular biology, The Hague, The Netherlands.

Rudin, N., H. Moise, J.T., Brown and M.S. Esposito. 1989. The *REC1, REC3 AND REC4* genes of *Saccharomyces cerevisiae*; *in vivo* and *in vitro* phenotypes of conditional hyporecombination mutants. Abstracts of FASEB conference on genetic recombination and genome rearrangements, July 9-14, 1989, p.48.

Brown, J. T., N. Rudin and M.S. Esposito. 1989. The *REC1, REC3 AND REC4* genes of *Saccharomyces cerevisiae* . AAAS annual meeting, San Francisco, CA. Abs. 428.

Esposito, M.S., N. Rudin and G.T. Thomson. 1989. Novel YAC vectors and *Saccharomyces cerevisiae* recipients for study of human DNA recombination and ordering of YAC human genomic libraries. Abstracts of papers presented at the 1989 Cold Spring Harbor meeting on genome mapping and sequencing, April 26-30, 1989, p.74.

Esposito, M.S., J.T. Brown, and N. Rudin. 1988. The *REC1* gene of *Saccharomyces. cerevisiae* is required for spontaneous mitotic gene conversion, intragenic recombination, intergenic recombination, genomic stability, and sporulation *In vivo* and *in vitro* properties of the temperature sensitive mutation *REC1-1*. Yeast 4: s308 (Spec. Iss.).

Rudin, N, E. Sugarman and J.E. Haber. 1988. *HO*-endonuclease-induced recombination in yeast. Yeast 4: s309 (Spec. Iss.).

Esposito, M.S., J.T. Brown, and N. Rudin. 1988. The *REC1* gene of *S. cerevisiae* is required for spontaneous mitotic gene conversion, intra- and intergenic recombination, genomic stability, repair of X-ray damage and sporulation. In abstracts of papers presented at the 1988 meeting on Intermediates in Genetic Recombination. Cold Spring Harbor Laboratory, Cold Spring Harbor, New York. p.194.

Rudin, N, E. Sugarman and J.E. Haber. 1988. *HO*-endonuclease-induced recombination in yeast. In abstracts of papers presented at the 1988 meeting on Intermediates in Genetic Recombination. Cold Spring Harbor Laboratory, Cold Spring Harbor, New York. p.193.

Rudin, N., E. Sugarman, and J.E. Haber. *HO*-induced recombination events in a *LACZ* duplication system. In Abstracts of papers presented at the 1987 meeting on yeast genetics and molecular biology, San Francisco California. p. 398.

Rudin, N., S. Stewart, and J.E. Haber. Cis-acting sequences in mating-type switching. In abstracts of papers presented at the 1987 meeting on Yeast genetics and molecular biology, San Francisco, California. p. 176.

Rudin, N., S. Stewart and J. E. Haber. 1986. Homologous and non-homologous sequences involved in mating type switching. Yeast 2: s330 (suppl).

6

Rudin, N. and J. E. Haber. 1985. Effect of Interchromosmal Mating-type Switching in *S. cerevisiae*. Genetics 110: s60 (suppl).

Rudin, N., B. Connolly, M. Kluznik and J. E. Haber. 1985. Effects of interchromosomal mating type switching in *S. cerevisiae*. In abstracts of papers presented at the 1985 meeting on Molecular Biology of Yeast. Cold Spring Harbor Laboratory, Cold Spring Harbor, New York. p. 122.

## OPINION AND EDITORIAL ARTICLES

Rudin, N., and Inman K., Could your lab be next: A sentinel event in the profession of forensic science, *CACNews*, 4th Quarter, 2015

Rudin, N., and Inman K., Causes of wrongful conviction (Don't believe everything you think), *CACNews*, 1st Quarter, 2014

Rudin, N., and Inman K., What science could (and should) do for justice, *CACNews*, 4th Quarter, 2013

Rudin, N., and Inman K., Can we talk?, *CACNews*, 3rd Quarter, 2013

Rudin, N., and Inman K., We're probably thinking … … About probabilistic approaches to weighting evidence, *CACNews*, 2nd Quarter, 2013

Rudin, N., and Inman K., Journey to the Red Planet: Curiosity meets Forensic Science *CACNews*, 1st Quarter, 2013

Rudin, N., and Inman K., The Proceedings of Dinner: Bridging the Generations *CACNews*, 4th Quarter, 2012

Rudin, N., and Inman K., Lake Errbegon "… where the evidence is unambiguous, the analyses robust, and all the criminalists are above average. "*CACNews*, 3rd Quarter, 2012

Rudin, N., and Inman K., A Decade of the Proceedings of Lunch – Thinking Allowed, and thinking aloud *CACNews*, 2nd Quarter, 2012

Rudin, N., and Inman K., The discomfort of thought – a discussion with John Butler *CACNews*, 1st Quarter, 2012

Rudin, N., and Inman K., To err is human and inevitable, *CACNews*, 4th Quarter, 2011

Rudin, N., and Inman K., Why politics is worse for science than the law, *CACNews*, 2nd Quarter, 2011

Rudin, N., and Inman K., That's not what we meant: Sequential Unmasking revisited, *CACNews*, 1st Quarter, 2011

Rudin, N., and Inman K., How low can you go? The experience fallacy: Quothe the raven "In my experience," never more! *CACNews*, 4th Quarter, 2010

Rudin, N., and Inman K., How low can you go? Should you just say no? *CACNews*, 3rd Quarter, 2010

Rudin, N., and Inman K., 'tis the Season: The NAS "one year later" Commemorative edition, 2nd Quarter, 2010

Rudin, N., and Inman K., Dining with a Founder: A conversation with Jay Siegel, *CACNews*, 1st Quarter, 2010

Thompson., *et al*., Commentary on: Thornton JI., Letter to the editor – a rejection of "working blind" as a cure for contextual bias. J Forensic Sci, 55(6), 2011

7

Krane, D., *et al.*, Commentary on: Budowle B., *et al*. A perspective on errors, bias, and interpretation in the forensic sciences and direction for continuing advancement. *J Forensic Sci*, 55(1), 2010.

Krane, D., *et al.*, Time for DNA Disclosure, *Science*, 326, 2009.

Rudin, N., and Inman K., Dining with a Founder, A conversation with Jay Siegel, *CACNews*, 1st Quarter, 2010.

Rudin, N., and Inman K., How much should the analyst know and when should she know it, *CACNews*, 4th Quarter, 2009.

Rudin, N., and Inman K., Challenging the canon, *CACNews*, 3rd Quarter, 2009

Rudin, N., and Inman K., Stakes, steaks and stakeholders, *CACNews*, 2nd Quarter, 2009

Krane, D., *et al.*, Authors' response to Ostrum B., Commentary on: sequential unmasking: a means of minimizing observer effects in forensic DNA interpretation. *J Forensic Sci* 54(6), 2009.

Krane, D., *et al.*, Authors' response to Wells, J.D., Commentary on: sequential unmasking: a means of minimizing observer effects in forensic DNA interpretation. *J Forensic Sci* 54(2), 2009.

Murphy, E., and Thompson, W.C., *et al.*, Brief of 20 Scholars of Forensic Evidence as *Amici Curiae* Supporting Respondents, *On Writ of Certiorari to the United States Court of Appeals for the Ninth Circuit, McDaniel v. Brown*, in the Supreme Court of the United States, July 24, 2009.

Krane, D., *et al.*, Sequential Unmasking, A Means of Minimizing Observer Effects in Forensic DNA Interpretation, *J. Forensic Sci*, 53(4), 2008.

Rudin, N., and Inman K., Administer this!, *CACNews*, 1st Quarter, 2009.

Rudin, N., and Inman K., Who speaks for forensic science, *CACNews*, 4th Quarter, 2008.

Rudin, N., and Inman K., The forensic disadvantage suffered by forensic scientists, *CACNews*, 3rd Quarter, 2008.

Rudin N., and Inman K., Genetic Witness: Through the Lens of a Social Scientist, *CACNews*, 2nd Quarter, 2008.

Rudin N., and Inman K., Keith and Norah's Top 10: Areas in which forensic science could improve, *CACNews*, 1st Quarter, 2008.

Rudin N., and Inman K., The Flodbit Problem: What are we Doing?, *CACNews*, 4th Quarter, 2007.

Rudin N., and Inman K., The Urban Myths and Conventional Wisdom of Transfer: DNA as Trace Evidence, *CACNews*, 3rd Quarter, 2007.

Rudin N., and Inman K., Know the Code, *CACNews*, 2nd Quarter, 2007.

Rudin N., and Inman K., A frosty debate: The chilling effect of a cold hit in a DNA database, *CACNews*, 1st Quarter, 2007.

Rudin N., and Inman K., Seeing DeForest AND the Trees, *CACNews*, 4th Quarter 2006.

Rudin N., and Inman K., The Pen is Mightier than the Pipette, *CACNews*, 2nd Quarter, 2006.

Rudin N., and Inman, K., The Shifty Paradigm, Part II: Errors and Lies and Fraud, Oh My! *CACNews* 1st Quarter 2006.

Rudin N., and Inman, K., The Shifty Paradigm, Part I: Who Gets to Define the Practice of Forensic Science? *CACNews* 4th Quarter 2005.

Rudin N., and Inman, K., A Hitchhiker's Guide to Accreditation, *CACNews* 3rd Quarter 2005.

Rudin N., and Inman, K., Fingerprints in Print, The Sequel:  The continuing saga of a latent print misidentification in the Madrid bombing case, *CACNews* 2nd Quarter 2005.

Rudin N., and Inman, K., Fingerprints in Print: The apparent misidentification of a latent print in the Madrid bombing case, *CACNews* 4th Quarter 2004.

Rudin N., and Inman, K., Myth or Aphorism: Sayings by which we live  (The Dogma of forensic science), *CACNews* 3rd Quarter 2004.

Rudin N., and Inman, K., The Culture of Bias - Part II, *CACNews* 2nd Quarter 2004.

Rudin N., and Inman, K., The Culture of Bias - Part I, *CACNews* 1st Quarter 2004.

Rudin N. and Inman, K. Which Came First, the Blood or the Print? The Rest of the Story. *CACNews* 4th Quarter 2003.

Rudin N. and Inman, K. Which Came First, the Blood or the Print? The Role of Experimentation in Forensic Casework *CACNews* 3rd Quarter, 2003.

Rudin N. and Inman, K. Experts on experts. What is the role of the scientist in assisting an attorney with an opposing expert? *CACNews* 2nd Quarter, 2003.

Rudin N. and Inman, K. Articulating Hypotheses – the null hypothesis and beyond. *CACNews* 1st Quarter, 2003.

Rudin N. and Inman, K. Biological Evidence as Trace Evidence: The Forensic Science of DNA Typing, *CACNews*, 4th Quarter, 2002.

Rudin N. and Inman, K. The Transfer of Evidence and Back Again. *CACNews*, 3rd Quarter, 2002.

Rudin N. and Inman, K. How Far Should an Analyst Go? *CACNews*, 2nd Quarter, 2002.

Rudin N. and Inman, K. Specialist vs. Generalist. *CACNews*, 1st Quarter, 2002.

Rudin N. and Inman, K. Divisible Matter. *CACNews*, 4th Quarter, 2001.

Inman, K. and Rudin N. How much should the analyst know? *CAC News*, Fall, 1997

Rudin, N., DNA Untwisted, *San Francisco Daily Journal,* April, 1995.

## TRAINING PROVIDED

1-day training on forensic statistics, likelihood ratios incorporating a probability of drop-out, Lab Retriever statistical software, AFDAA Winter workshop, Jan. 21, 2015

3-day training on forensic statistics, likelihood ratios incorporating a probability of drop-out, Lab Retriever statistical software, Cayman Islands Health Authority Forensic DNA laboratory, Mar 23-25, 2015.

1-day training on forensic statistics, likelihood ratios incorporating a probability of drop-out, Lab Retriever statistical software, San Francisco forensic DNA laboratory, Nov. 6, 2014

1-day training on forensic statistics, likelihood ratios incorporating a probability of drop-out, Lab Retriever statistical software, SWAFS, Sept. 25, 2014

3-day training on forensic statistics, likelihood ratios incorporating a probability of drop-out, Lab Retriever statistical software, Jefferson Co. Regional Crime laboratory, Sept. 9-11, 2014

3-day training on forensic statistics, likelihood ratios incorporating a probability of drop-out, Lab Retriever statistical software, Oregon State Police forensic DNA laboratory, July 22-24, 2014

2-day training on Advanced Topics in Forensic DNA Profiling, Cook County Public Defender Office, June 26-27, 2014

1-day training on forensic statistics, likelihood ratios incorporating a probability of drop-out, Lab Retriever statistical software, MAFS, June 9, 2014

1.5-day training on forensic statistics, likelihood ratios incorporating a probability of drop-out, Lab Retriever statistical software, NEAFS, May 21-22, 2014

½ day training on forensic statistics, likelihood ratios incorporating a probability of drop-out, Lab Retriever statistical software, MAAFS, May 20, 2014

3-day training on forensic statistics, likelihood ratios incorporating a probability of drop-out, Lab Retriever statistical software, Denver PD forensic DNA laboratory, July 15-17, 2013.

## SELECTED INVITED SPEAKING ENGAGEMENTS

2014. Invited Speaker, Forensic DNA 101: Know the Code, Virginia Indigent Defender Conference, Sept. 16-17, 2014, Newport News, VA.

2010. Invited Speaker, The Science and Fiction of Forensic Science, *Pomona College Alumni Association*, Palo Alto, CA.

2009. Invited Speaker, What's an Allele Between Friends and other Y-STR topics, *DePaul University Law School Conference on Science and the Law*, Chicago, IL.

2008. Invited Speaker, Sequential Unmasking, *DePaul University Law School Conference on Science and the Law*, Chicago, IL.

2007. Invited Speaker, Debunking CSI, *University of Santa Clara Law School*, Santa Clara, CA, 2007

2007. Invited Speaker, DNA Transfer, *DNA boot camp, organized by the Minnesota Public Defender Office*, Brainerd, MN.

2007. Invited Speaker, Forensic DNA: The Science and Fiction of Forensic Science, *American Chemical Society*, Berkeley, CA.

2007. Invited Speaker, Literature Review of Transfer, *DePaul University Law School Conference on Science and the Law*, Chicago, IL.

2006. Invited Speaker. Mitochondrial DNA in GA v. Vaughn: a Case Example. *The Science of DNA Profiling*, Dayton, OH.

2006. Invited Speaker, The Science of Individualization, or is it?, *European Academy of Forensic Sciences*, Helsinki, Finland.

2006. Invited Speaker, The Threshold Effect, *DePaul University Law School Conference on Science and the Law*, Chicago, IL.

2005. Invited Speaker, How to work with a DNA expert, *California Public Defender's Association*, Monterey, CA.

2005. Faculty, DNA Cross Examination College, national trial skills conference organized by the *Public Defender Service of the District of Columbia*, Washington, D.C.

2004. Invited Speaker, European Circuit Conference, USAF, Garmish, Germany.

2002. Invited Speaker, Death Penalty Defense Seminar, *California Association for Criminal Justice/California Public Defender's Association*, Monterey, CA.

2001. Invited Speaker, Forensic DNA and the Law conference, *The Cyril H. Wecht Institute for Forensic Science and Law*, Duquesne University, Pittsburgh, PA.



**NORAH RUDIN, Ph.D.**
Forensic DNA Consulting

650 Castro St., Suite 120-404, Mountain View, CA   94041
(650) 605-3411          norah@forensicdna.com
www.forensicdna.com

State of MO v. Marcellus Williams

### Background

On or about August 1998, Felicia Gayle was found dead of multiple stab wounds. Marcellus Williams was subsequently convicted of her murder. The knife found in her neck was not tested prior to trial. DNA testing on this knife is the subject of this report.

### Summary

Marcellus Williams could not have contributed the detected profile on item Q5 / CCB1536-0303-E03, the knife.

### Items reviewed

The following items were reviewed:

- April 8, 2016 DNA report of Jennifer Sampson Fienup of Bode Cellmark Forensics
- August 12, 2016 DNA report of Jennifer Sampson Fienup of Bode Cellmark Forensics
- Supporting laboratory notes and raw electronic data

### Presumptive and preliminary testing

The item that is the subject of the report is a knife (Agency Q5, Bode CCB1536-0303-E03), purportedly the murder weapon in the instant case.

- Sample CCB1536-0303-E03b1: The handle of the knife was initially swabbed, avoiding the areas of red/brown staining. The swabs were combined and consumed for DNA testing.
- Sample CCB1536-0303-E03c1: The handle of the knife was re-swabbed, this time including about 50% of the red/brown stained area. The swabs were combined and extracted for DNA testing. The DNA extract was combined with a small amount remaining from E03b1 for DNA testing.  The combined sample retained the identifier CCB1536-0303-E03c1.

### DNA testing

*Sample CCB1536-0303-E03b1, the first swab*

Sample E03b1 was profiled using the Promega PowerPlex® Y23 kit. This kit tests for male DNA only. Ms. Fienup reports that "due to the possibility of allelic drop out, no conclusions can be made on this partial mixture profile."

Comparing the reported profile on page 4 of the report to the profile of Marcellus Williams (Appx. A), it is clear that he could not have contributed the profile reported by Ms. Fienup. At 11 of the 15 loci reported, the types from the knife handle differ from the profile of Marcellus Williams.

However, more information is present in the profile than reported by Ms. Fienup. The analytical threshold required by the Bode-Cellmark protocol leaves legitimate alleles uncalled. Using an empirically determined analytical threshold that is both run-specific and color-specific, it is possible to glean more information from the profile. Using this method, only two of the 23 possible loci were left uncalled. Reducing the analytical threshold did reveal additional minor alleles at several loci, suggesting the possibility of an additional minor contributor. Each of these loci will be discussed in detail.



EXHIBIT
B

At the 16 detected loci exhibiting only one called allele, 11 exhibit types different from the profile of Marcellus Williams. The remaining loci require additional discussion. DYS576 exhibits four peaks. The largest peak, a 20 at 135 RFU, is not found in the profile of Williams; a minor 17 peak, at 56 RFU, is also not found in the profile of Williams. Two trace peaks, a 16 at 23 RFU and a 19 at 22 RFU each appear in a "stutter" position of the two larger peaks. While they are both higher than would be expected in a high quality, high quantity profile, expected stutter percentages calculated for these type of samples don't necessarily hold for low quality, low template profiles. Thus these peaks may not be categorically classified as either artifacts or legitimate DNA peaks. The 19 allele, in any event, is not found in Williams profile, however the 16 is found in his profile.

The next locus to consider is DYS391. The large 10 allele at 579 RFU is found in the profile of Williams, however, the much smaller 11 at 35 RFU is not found in his profile. Like the trace level peaks discussed above, it is not possible to tell whether this peak is artifactual or authentic as it falls in a "plus stutter" position to the 10.

Moving through the profile, two peaks are observed at the DYS438, however only one of them is called, even at the lower empirical threshold. The called peak, a 10 at 26 RFU is not found in the profile of Williams.

Next, the DYS570 locus exhibits two peaks, a 16 at 139 RFU and a 17 at 69 RFU. The 17 peak is in a "plus stutter" position to the 16 peak; although it is quite high to derive from a stutter artifact, that explanation can't be ruled out in this type of profile. It should also be noted that two alleles are sometime found at this locus, and a 16,17 is listed in the US Y-STR database. Thus these two alleles don't necessarily indicate two male contributors. Nevertheless, neither of these alleles are found in the profile of Williams, either singly or together.

DYS385 is a duplicated locus at which two alleles are generally observed. In this instance, the locus exhibits three peaks, a larger 11 at 132 RFU, a smaller 14 at 77 RFU, and a yet smaller 15 at 49 RFU. Neither the 11 or the 14 is found in the profile of Williams. The 15 allele is present in his profile, but the evidence profile lacks the second allele of the pair in his reference profile, a 16.

Several additional trace peaks can be visually observed, but are not called even at the lower empirical threshold. Although these alleles cannot legitimately be called, it is worth, in an abundance of caution, to examine them. It can be seen that: an uncalled peak at DYS438 in the 12 position is not found in the profile of Williams.; an uncalled peak at DYS437 in the 16 position is not found in the profile of Williams; an uncalled peak at DYS643 in the 10 position is not found in the profile of Williams; An uncalled peak at DYS456 in the 16 position is not found in the profile of Williams. Thus, if these are legitimate DNA alleles, four more alleles in this profile must come from a male source other than Williams.

*Sample CCB1536-0303-E03c1, combination of the first swab and the second swab*

Again, Ms. Fienup reports that "due to the possibility of allelic drop out, no conclusions can be made on this partial mixture profile." And again, the profile reported on page 2 of her report does not comport with the reference profile of Marcellus Williams. Of the four loci reported (a subset of the first profile), three of them exhibit a different allele than that of Williams.

A weaker profile was obtained from this second combined sample. Using an empirically determined threshold, 7 of the 10 loci exhibiting only one allele differ from the profile of Marcellus Williams. These loci all comport with the first sample.

Two loci require additional discussion. At locus DYS570, the result was different between the two samples. In sample E03b1, a 16 allele and a 17 allele were detected; in sample E03c1 a 16 allele and an 18 allele were detected. It is not possible, in either case, to determine whether these two alleles derive from two males or whether DYS570 is presenting as a duplicated locus. Both the 16,17 and 16,18 combinations are present in the US Y-STR database. Regardless, none of these alleles, either singly or in combination are present in the profile of Williams.

At DYS439, a different single allele was detected in the second sample. In E03b1, a 12 was observed, an allele found in the profile of Williams; in E03c1, a 14, not found in the profile of Williams was observed.

## Discussion

Unlike the loci that comprise an autosomal profile, all of the loci in a Y-STR profile are located on the Y-chromosome, and therefore physically linked. Thus allelic drop-out does not occur in the same way as it does for an autosomal profile where all of the loci are located on different chromosomes. For Mr. Williams to be considered a possible contributor to the profile detected in sample E03b1, the alleles present in his profile would have to be assumed present but not detected (dropped out) in at least 13 of the 21 detected loci. Additionally, alleles from a second contributor would have to replace his missing alleles at each of those loci. A better explanation is that Marcellus Williams is not a contributor to the profile(s) found on the knife.

Ambiguity was introduced with the second swabbing, E03c1. A factor confounding resolution of this ambiguity is that remaining DNA extract from E03b1 was combined with E03c1, such that it is not possible to know what profile would have been produced by E03c1 on its own. Regardless, the two non-concordant alleles detected in E03c1 would also require drop-out of alleles from Mr. Williams' profile and replacement with alleles from another male profile.

## Conclusion

Based on the data from the detected profiles, the simplest and most reasonable explanation for the profile detected on the knife is that Marcellus Williams is not a contributor.

Respectfully submitted

Norah Rudin, Ph.D.
December 28, 2016

PowerPlex Y23

Marcellus Williams

Appendix A

| Sample | DYS576 | DYS389I | DYS448 | DYS389II | DYS19 | DYS391 | DYS481 | DYS549 | DYS533 | DYS438 | DYS437 | DYS570 | DYS635 | DYS390 | DYS439 | DYS392 | DYS643 | DYS393 | DYS458 | DYS385 | DYS456 | YGATAH4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| R05a1.1 Marcellus Williams | 16 | 13 | 20 | 29 | 14 | 10 | 26 | 11 | 12 | 11 | 14 | 19 | 23 | 21 | 12 | 11 | 13 | 14 | 18 | 15,16 | 15 | 11 |
| E03b1.1 knife handle 20_25_30_30 | 17<20 (16,19) | 13 | 20 | 31 | 14 | 10>11 | 23 | 13 | 13 | 10,N | 15,N | 16>17 | 23 | 24 | 12 | 13 | N | 13 | 17 | 11 (14,15) | N | 12 |
| Bode calls | 20 | 13 | NR | NR | NR | 10 | 23 | NR | 13 | NR | 15 | 16 | 23 | 24 | 12 | 13 | NR | 13 | 17 | 11,14 | NR | NR |
| E03c1.1 3b+3c (reswab) | 20 | 13 | 20 | NR | NR | 10 | N | 13 | N | NR | NR | 16,18 | NR | 24 | 14 | NR | N | 13 | 17 | N | N | 12 |
| Bode calls | NR | NR | NR | NR | NR | 10 | NR | NR | NR | NR | NR | NR | NR | 24 | NR | NR | NR | 13 | 17 | NR | NR | NR |