**IN THE CIRCUIT COURT OF BOONE COUNTY
STATE OF MISSOURI**

MARCELLUS WILLIAMS,              )
                                 )
      Petitioner,              )
                                 )
v.                               )              15BA-CV01828
                                 )
TROY STEELE,                     )
                                 )
      Respondent.             )

**RESPONDENT'S REPLY BRIEF**

**The DNA testing results show nothing exculpatory and the tests
have consumed the material available for testing.**

The underlying facts of the case include that a man Williams was incarcerated with, after the man was released, went to police and stated that Williams had confessed to committing the murder, and the man knew details about the murder that were not public knowledge. *State v. Williams*, 97 S.W.3d 462, 467 (Mo. 2003). The police then interviewed Williams' girlfriend. The girlfriend indicated she had seen Williams on the day of the murder, that he had scratches on his neck, that he wore a jacket over a bloody shirt despite the summer heat, and that he later threw his bloody clothes into a sewer drain. *Id.* She said that Williams admitted to committing the murder, but told her that he would kill her and her children if she went to the police. *Id.* The day after interviewing the girlfriend, the police searched the car Williams drove and found the some of the murder victim's property. *Id.* Later

they recovered a computer that had been stolen from the victim's home that Williams undisputedly sold to a third party. *Id*.

To be exculpatory, any DNA evidence would have to explain how Williams ended up with the victim's property, and why the witnesses said he confessed. Williams' theory has generally been that he must have been framed by his girlfriend and the man who said he confessed, and they must be the real killers or at least have been involved in the crime.

Williams' January 15, 2015 habeas petition to the Missouri Supreme Court emphasized the need to run DNA through the CODIS to find the "real killer." The joint testing protocol filed by the parties contemplated CODIS testing. But that never happened.

The April report shows that mitochondrial DNA testing indicated the pubic hairs tested were consistent with the victim. Y-STR testing was done on the knife handle of the kitchen knife used in the murder. The handle contained male and female DNA. But Y-STR testing reveals only male DNA, and cannot be run through the CODIS database. The DNA tester made the decision to do this type of testing based on consultation with the "client", presumably counsel for Williams (Fienup Deposition at 65). The tester then repeated the test a second time, consuming the remainder of the DNA on the knife handle.

The testing expert testified in her deposition that despite a match to Williams at four loci, she could not draw any conclusions that would either include or exclude Williams as a contributor to the DNA on the knife handle, because multiple persons' male DNA was on the kitchen knife handle (Fienup Deposition 63-64, 68). No effort appears to have been made to compare the DNA on the knife to the DNA of the victim's husband or any other person whose DNA could reasonably be expected to be on the knife, but whose DNA would not provide a plausible explanation of why Williams had the victim's property that was taken at the time of the murder.

Unsatisfied with the result from the testing expert, Williams apparently retained a new expert after the hearing, and has attached her report to his post-hearing brief. The new report appears to agree with the Williams' first expert, that there is more than one male person's DNA on the knife handle, and that four locations in the profile on the knife handle have the same repeat number as Williams' profile. Nevertheless, the new report, in the opening summary, concludes that Williams could not have contributed to the DNA on the knife handle. The conclusion of the new report states "the simplest and most reasonable explanation for the profile detected on the knife is that Williams is not a contributor." Taking the second report at face value, it does not come close to showing Williams is actually innocent. It

3

would be unsurprising that unknown DNA on a kitchen knife would not match Williams, assuming it does not.

Williams' habeas petition to the Missouri Supreme Court raised two claims. First, Williams alleged a Due Process Clause violation due to his lack of access to additional DNA testing. The United States District Court for the Eastern District of Missouri dismissed a variation of that claim as frivolous in *Williams v. McCulloch*, 4:15CV00070 (E.D. Mo. Jan. 14, 2015). Second, Williams alleged DNA testing would prove he is actually innocent.

Williams has now had the manner of DNA testing he sought, and has consumed the available DNA in the process. The results do not come close to making out a claim of either gateway or free standing actual innocence under *State ex rel. Amrine v. Roper*, 102 S.W.3d 541 (Mo. 2003).

## Conclusion

The Court should find that the DNA testing is not exculpatory and should forward the original and supplemental DNA report, and the deposition of Jennifer Fienup, to the Missouri Supreme Court. The Missouri Supreme Court should consider reinstating a date for the execution that was stayed in January 2015 for this litigation.

Respectfully submitted,

**CHRIS KOSTER**
Attorney General

/s/Michael J. Spillane
Michael Spillane
Assistant Attorney General
Missouri Bar No. 40704
P.O. Box 899
Jefferson City, MO 65102
Telephone: (573)751-1307
Facsimile: (573)751-3825
Attorneys for Respondent

## Certificate of Service

This pleading was electronically filed on December 30, 2016, and should be served by this Court's electronic filing system on counsel for petitioner, who are electronic filers.

/s/Michael J. Spillane
Assistant Attorney General

5