IN THE 21ST JUDICIAL CIRCUIT, COUNTY OF ST. LOUIS
STATE OF MISSOURI, FAMILY COURT

**FILED**

**SEP 1 2 2024**

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COU..

In re the matter of:

Prosecuting Attorney, 21st Judicial
Circuit, ex rel. Marcellus Williams

    Movant/Petitioner,

v.

State of Missouri

    Respondent.

Cause No. 24SL-CC00422

Division    13

## FINDINGS OF FACT, CONCLUSIONS OF LAW, ORDER AND JUDGMENT

The Court having called this matter for hearing on August 28, 2024, Movant Prosecuting Attorney appears through counsel, Matthew Jacober, Realtor; Marcellus Williams appears in person and with special counsel, Tricia J. Rojo Bushnell and Jonathan Pott;, State of Missouri appears through Assistant Attorneys General, Michael Spillane, Kelly Snyder, Andrew Clarke, Katherine Griesbach and Kirsten Pryde.

The Court having considered the record consisting of over 12,000 pages; heard the evidence presented by the Prosecuting Attorney, Attorneys General, and Relator; given proper weight and credibility to the evidence, admitted exhibits and heard arguments; reviewed Proposed Findings of Fact and Conclusions of Law submitted by the parties; None of the parties requested specific Findings of Fact and Conclusions of Law. All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the results reached. Rule 73.01(c). Any finding of fact herein equally applicable as a conclusion of law is adopted as such and any conclusion of law herein equally applicable as a finding of fact is adopted as such. The Court now being fully advised in the premises, hereby makes the following Findings of Facts, Conclusions of Law, Order and Judgment pursuant to § 547.031.2 R.S.Mo.

## PROCEDURAL HISTORY

Following a 14-day jury trial, the Circuit Court for St. Louis County on August 27, 2001 entered its judgment finding Marcellus Williams guilty of first-degree murder for the August 11, 1998 killing of F.G., as well as first-degree burglary, two counts of armed criminal action, and robbery and fixing punishment at death. The Missouri Supreme Court affirmed Williams' conviction, *State v. Williams,* 97 S.W.3d 462 (Mo. banc 2003), and affirmed the judgment denying postconviction relief. *Williams v. State,* 168 S.W.3d 433 (Mo. banc 2005).

Williams filed a petition for a writ of habeas corpus in federal court. The federal District Court granted relief, but the 8th Circuit Court of Appeals reversed the judgment and denied habeas relief. *Williams v. Roper,* 695 F.3d 825, 839 (8th Cir. 2012). The United States Supreme Court denied Williams' petition for a writ of certiorari. *Williams v Steele,* 571 U.S. 839 (2013).

In December of 2014, The Missouri Supreme Court issued a warrant of execution setting a January 28, 2015 execution date. Williams then filed a petition for a writ of habeas corpus in the Missouri Supreme Court alleging he was entitled to additional DNA testing to demonstrate actual innocence. That same Court vacated Williams' execution date and appointed a special master to ensure complete DNA testing and to report the results of the additional DNA testing.

The special master provided the Missouri Supreme Court with the results of additional DNA testing conducted on hair and fingernail samples from the crime scene and of the knife used in the murder. The parties fully briefed their arguments to the master. The Missouri Supreme Court, after reviewing the master's files, denied Williams' habeas petition because the additional DNA testing did not demonstrate Williams' actual innocence. The United States Supreme Court denied Williams' petition for a writ of certiorari. *Williams v. Steele,* 582 U.S. 937, 137 S.Ct. 2307, 198 L.Ed.2d 737 (2017).

In 2017, Williams filed another petition for writ of habeas corpus, again alleging DNA testing demonstrated his actual innocence by excluding him as a contributor of DNA found on the knife used in the murder. The Missouri Supreme Court denied relief. The United States Supreme Court denied Williams' petition for writ of certiorari. *Williams v. Larkin,* 583 U.S. 902, 138 S.Ct. 279, 199 L.Ed.2d 179 (2017).

In 2023, Williams filed a petition for a declaratory judgment alleging Governor Parson lacked authority to rescind an executive order issued by Governor Greitens on August 22, 2017 appointing a board of inquiry pursuant to § 552.070 RSMo and staying execution until the final clemency determination. On June 29, 2023 Governor Parsons rescinded said executive order, thereby dissolving the Board of Inquiry established therein. On June 4, 2024, the Missouri

Supreme Court issued a permanent writ of prohibition barring the Circuit Court from taking further action other than granting the governor's motion for judgment on the pleadings and denying Williams' petition for declaratory judgment. *State ex rel. Parson v. Walker,* No. SC100352, ___ S.W.3d ___ at 2-3. (Mo. banc June 4, 2024).

On June 4, 2024 The Missouri Supreme Court issued its order and warrant for execution setting a September 24, 2024 execution date for Williams.

Williams filed a motion to withdraw the Missouri Supreme Court's June 4, 2024 warrant of execution setting the September 24, 2024 execution date, claiming the warrant was premature because on January 26, 2024 the St. Louis County Prosecutor filed a motion to vacate Williams' first-degree murder conviction and death sentence pursuant to § 547.031, R.S.Mo. Supp. 2021. The Missouri Supreme Court overruled said motion. *State of Missouri v. Marcellus Williams,* No. SC83984 (Mo. banc July 12, 2024).

## LEGAL STANDARD

Does this Court have jurisdiction or authority to hear a Motion to Vacate or Set Aside Judgment pursuant to §547.031.1 R.S.Mo (2021), if the Supreme Court issues its order and warrant for execution before the motion is heard and ruled on?

The Legislature has expressly provided that a § 547.031 R.S.Mo (2021) motion collaterally attacking a judgment may be filed at any time in circuit court, and the statute likely does not impermissibly conflict with controlling Supreme Court rules pertaining to capital crimes for which a sentence of death has been imposed.

In 2021, due in part to Judge Draper's concurrence in *State v. Johnson,* 617 S.W.3d 439, 446 (Mo. banc 2021), the Legislature enacted § 547.031 R.S.Mo (2021) which provides:

1. A prosecuting or circuit attorney, in the jurisdiction in which the person was convicted of the offense, may file a motion to vacate or set aside the judgment at any time if he or she has information that the convicted person may be innocent or may have been erroneously convicted. The circuit court in which the person was convicted shall have jurisdiction and authority to consider, hear, and decide the motion.

2. Upon the filing of a motion to vacate or set aside the judgment, the court shall order a hearing and shall issue findings of fact and conclusions of law on all issues presented. The attorney general shall be given notice of hearing of such motion by the circuit clerk and shall be permitted to

appear, question witnesses, and make arguments in a hearing of such motion.

3. The court shall grant the motion of the prosecuting or circuit attorney to vacate or set aside the judgment where the court finds that there is clear and convincing evidence of actual innocence or constitutional error at the original trial or plea that undermines the confidence in the judgment. In considering the motion, the court shall take into consideration the evidence presented at the original trial or plea, the evidence presented at any direct appeal or post-conviction proceeding, including state or federal habeas action; and the information and evidence presented at the hearing on the motion.

4. The prosecuting attorney or circuit attorney shall have the authority and right to file and maintain an appeal of the denial or disposal of such motion. The attorney general may file a motion to intervene and, in addition to such motion, file a motion to dismiss the motion to vacate or to set aside the judgment in any appeal filed by the prosecuting or circuit attorney.

By its express terms, this statute not only authorizes the appropriate circuit court to decide the motion, but also requires said court to hold a hearing and to issue findings of fact and conclusions of law. Nothing in the statute excepts capital death sentence cases from the circuit court's authority, even those for which the defendant has exhausted all right to seek relief before both the Missouri State Supreme Court and United States Supreme Court. Thus, in order for the Circuit Court to dismiss for lack of authority in the instant case, it would have to find that a conflict exists between the statute and Supreme Court rules requiring exclusive Supreme Court jurisdiction, and that the Supreme Court rules prevail over the statute. *See, Brick v. Koeppen,* 672 S.W.3d 62, 65-66 Mo. App. 2023).

Only three cases have interpreted this statute and none addresses a circuit court's authority to hear the motion under the facts presented in the instant case. In *State v. Johnson,* 654 S.W.3d 883 (Mo. banc 2022), none of the parties raised the issue in what was an arguably more compelling case for restraining the circuit court's authority. In *Johnson,* unlike in the case at bar, the Supreme Court's warrant for execution was issued well before the § 547.031 motion was filed in the circuit court. Ultimately, the circuit court denied the last-minute motion on the grounds that it had insufficient time to conduct a meaningful hearing on the merits. However, rather than addressing the circuit court's authority to act after issuance of its warrant for execution, the Supreme Court denied the motion for stay of execution on the grounds that even if remanded for hearing, defendant could not make the required showing of likely success on the merits under the injunctive relief analysis also applicable when a stay is sought. *Id.* at 892-93. But in doing

so, a majority of the Supreme Court appears to have given at least tacit approval for a circuit court to proceed with such a motion, notwithstanding the high court's prior issuance of warrant for execution in that case. Judge Breckenridge wrote in dissent that the circuit court in her view was in error in not scheduling the § 547.031 hearing as required by statute. *Id.* at 903. Defendant Williams likely titled his Supreme Court filing as a "Motion to Withdraw Warrant of Execution" in his direct appeal case to avoid confronting the uphill "likelihood of success on the merits" argument faced when filing a motion to stay execution.

In its Motion to Dismiss the § 547.031 motion, the Attorney General submits three colorable, but far from definitive, citations of authority in support of its contention that the Supreme Court has exclusive jurisdiction over this matter. Although not directly argued, the brief implicitly makes the argument that the Supreme Court rules cited prevail over the conflicting statute, requiring the motion to be heard by the Supreme Court.

The first is **Article V, § 2** of the Missouri Constitution. However, that section simply states that the decision of the Supreme Court shall be controlling in all other courts. The second citation is Supreme Court Rule 30.03(b), which provides:

> (b) A date of execution set pursuant to Rule 30.30(a) shall be stayed upon the receipt in this Court of proof of filing of a timely appeal or petition for writ of certiorari in the Supreme Court of the United States. No other filing in this or any other Court shall operate to stay an execution date without further order of this Court or other competent authority.

However, none of the parties have requested that the Circuit Court stay the execution, as it is conceded that it lacks authority to do so. Accordingly, this rule does not expressly preclude a circuit court from hearing a § 547.031 motion.

Next, the Attorney General cites **Supreme Court Rule 91.02(b)**, which provides that, in capital convictions involving a sentence of death, any habeas corpus petition may be filed in the Supreme Court in the first instance and, if first filed in another court, shall be deemed to have been filed in the Supreme Court. Although akin to a habeas petition, a § 547.031 motion is made pursuant to specific legislative enactment to prevent a prosecutor or circuit attorney to seek relief in addition to, or apart from, the convicted defendant's right to seek post-conviction and habeas relief. Thus, the statute does not directly conflict with the mandate contained in Rule 91.02(b), requiring a capital defendant to file his or her habeas petition exclusively in the Supreme Court.

Finally, the Attorney General cites the following **two cases**, neither of which directly supports its contention of exclusive Supreme Court jurisdiction in

this matter. *State ex rel. Nixon v. Daugherty,* 186 S.W.3d 253 (Mo. banc 2008) involved a defendant's unprecedented use of a Supreme Court civil practice rule, Rule 74.06(d), to collaterally attack the judgment denying his Rule 24.035 post-conviction relief motion. In that case, the court held that Rule 74.06(d) applied solely to civil actions and that permitting such a motion would eviscerate a post-conviction relief motion's purpose of promptly and finally adjudicating claims concerning the legality of the conviction or sentence of a defendant. In particular the court stated:

> In a death penalty case, a Rule 74.06(d) motion also frustrates the purpose of Rule 91.02(b), Rule 29.08(d), and the Court's order of June 16, 1988. All of these make clear that matters affecting a sentence of death, once it is affirmed on direct appeal and except for a motion filed under Rule 24.035 or Rule 29.15, are to be filed in this Court and not another state court.

*Id.* at 254.

As an initial matter, it should be noted that the above quote expressly exempts post-conviction relief motions from having to be filed directly in the Supreme Court. Moreover, glaringly absent from the Attorney General's brief is any mention that *Daugherty*, which was decided long before enactment of § 547.031, permits **only** (emphasis added) prosecuting attorneys to file a motion to vacate/set aside a conviction if the defendant may be innocent or that constitutional error at trial undermines the confidence in the judgment. Also of significance is the provision in § 547.031 for appellate review of a circuit court's determination, meaning that the Supreme Court would have the last word in a capital death sentence case in any event.

The second case cited is *State ex rel. Amrine v. Roper,* 102 S.W.3d 541 (Mo. banc 2003), which allowed capital offenders to raise free-standing claims of actual innocence via habeas corpus. The *Amrine* court pointed to the death penalty statute § 565.035.2 R.S.Mo., as charging it with exclusive authority to review the sentence as well as any errors enumerated by way of appeal. The Attorney General argues that *Amrine* and § 565.035 provide for exclusive Supreme Court review in death penalty cases.

However, the statute does not give the Supreme Court exclusive authority to hear collateral attacks on the judgment and sentence, such as those filed under Rule 29.15 or 24.035. *See, e.g. Anderson v. State,* 190 S.W.3d 28(Mo. banc 2006)(Post-conviction relief motion filed pursuant to Rule 29.15 in death sentence case overruled by circuit court and reversed and remanded by supreme court for re-trial of penalty phase.) And, in *State ex rel. Bailey v. Fulton,* 659 S.W.3d 909 (Mo. banc 2023), the Supreme Court recently held, "As previously stated,

however, like motions filed under Rules 29.15 and 24.035, a motion to vacate or set aside a conviction under '§ 547.031 is a new civil action' representing a 'collateral attack on the conviction and sentence'" (*quoting, State v. Johnson,* supra 654 S.W.3d at 891 n.10).

Accordingly, § 547.031 does not conflict with any of the Supreme Court rules cited by the Attorney General (24.035; 29.15; 29.08(d); 30.30(b); or 91.02(b)), because it is a legislatively created additional means for a prosecutor to collaterally attack the judgment and sentence under a narrow set of circumstances.

For the foregoing reasons Attorney General's Motion to Dismiss is hereby **DENIED.**

## FINDINGS OF FACT

1. More than twenty-six years ago, on August 11, 1998, Williams murdered F.G.. *State v. Williams,* 97 S.W.3d 462, 466 (Mo. banc 2003).

2. After a 14-day trial, a jury convicted Williams of one count each of first-degree murder, first-degree burglary, and first-degree robbery, and two counts of armed criminal action. *Id.* This Court sentenced Williams to death for the first-degree murder conviction. *Id.*

3. While the Court has reviewed all of the relevant court records, the principle cases affirming Williams' convictions and sentences are as follows:

   Trial:
   *State v. Williams,* 99CR-005297 (Judge Emmett O'Brien St. Louis County Circuit Court 21st Judicial Circuit);

   Direct Appeal:
   *State v. Williams,* 97 S.W.3d 462 (Mo. banc 2023);

   Direct Appeal Petition of Certiorari:
   *Williams v. Missouri,* 539 U.S. 944 (2013);

   Post-Conviction Motion Court Proceedings:
   *Williams v. State,* 03CC-2254 (Judge Emmett O'Brien St. Louis County Circuit 21st Judicial Circuit);

   Post-Conviction Appeal:
   *Williams v. State,* 168 S.W.3d 433, 438 (Mo. banc 2005);

   2015 State Petition for Writ of Habeas Corpus:

*Williams v. Steele,* SC94720 (Mo.);

2017 State Petition for Writ of Habeas Corpus:
*Williams v. Larkin,* SC96625 (Mo.);

Declaratory Judgment Action:
*State ex rel. Parson v. Walker,* 690 S.W.3d 477 (Mo. banc 2024).

4. Following the unanimous opinion denying Williams' appeal and affirming this Court's judgment of conviction, *Williams,* at 466, 475, Williams petitioned the United Supreme Court for a writ of certiorari to review the decision of the Supreme Court of Missouri affirming the circuit court's judgment of conviction. *Williams,* 539 U.S. at 944. The petition was denied. *Id.*

5. Williams then filed a motion for post-conviction relief under Supreme Court Rule 29.15. *Williams,* 168 S.W.3d at 139. In his amended motion Williams asserted in excess of thirteen claims for post-conviction relief. *Id.* at 438-47. The motion court denied Williams' motion for post-conviction relief. *Id.* at 439. The Missouri Supreme Court, in a unanimous opinion, affirmed the circuit court's denial of Williams' post-conviction motion. *Id.* at 447.

6. Williams then filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Missouri. Resp. Ex.2.

7. After the federal District Court initially granted Williams' habeas relief, the United States Court of Appeals for the Eighth Circuit reversed the District Court's judgment and denied Williams' federal habeas relief. *Williams v. Roper,* 695 F.3d 825, 839 (8th Cir. 2012).

8. Williams petitioned the United States Supreme Court for a writ of certiorari to review the decision of the United States Court of Appeals for the Eighth Circuit denying his petition for a writ of habeas corpus. *Williams v. Steele,* 571 U.S. 839 (2013).

9. On December 17, 2014, the Missouri Supreme Court issued an execution warrant scheduling Williams to be executed on January 28, 2015.

10. On January 9, 2015, Williams filed a petition for a writ of habeas corpus in the Missouri Supreme Court. Resp. Ex. I-1. Williams alleged that further DNA testing could demonstrate that he was innocent of the murder of F.G..

11. The Missouri Supreme Court appointed a special master to "insure DNA testing of appropriate items at issue in this cause and to report to this Court the results of such testing." Res. Ex. I-14 at 2.

12. On January 31, 2017, after reviewing the special master's report, the Supreme Court of Missouri denied Williams' petition for a writ of habeas corpus. Resp. Ex. I-15 at 1.

13. On April 20, 2017, the Supreme Court of Missouri issued an execution warrant scheduling Williams to be executed on August 22, 2017. Resp. Ex. K3 at 2.

14. Williams sought review of the Supreme Court of Missouri's denial by filing a petition for a writ of certiorari with the United States Supreme Court.  On June 26, 2017, the petition was denied. *Williams v. Steele,* 582 U.S. 937 (2017).

15. On August 14, 2017, Williams filed another petition for a writ of habeas corpus in the Supreme Court of Missouri. Resp. Ex. N-1.

16. On August 15, 2017, the Supreme Court of Missouri denied Williams' petition for a writ of habeas corpus. Resp. Ex. N-5.

17. William again sought review of the Supreme Court of Missouri's denial by filing for a writ of certiorari with the United States Supreme Court. *Williams v. Larkin,* 583 U.S. 902 (2017).  On October 2, 2017, the petition was denied. *Id.*

18. On August 22, 2017, former Governor Eric Greitens issued Executive Order 17-20, which included an executive stay of Williams' execution and created a board of inquiry to investigate Williams' conviction.  It is unknown whether the Board of Inquiry reached a conclusion or issued a report or recommendation.

19. On June 29, 2023, some 5 years and 10 months after former Governor Greitens issued his executive order, Governor Michael L. Parson issued Executive Order 23-06, which dissolved the board and lifted the executive stay of Williams' execution.

20. On June 30, 2023, the Attorney General filed a renewed motion to set Williams' execution date in the Supreme Court of Missouri. Resp. Ex. P-1.

21. On August 23, 2023, Williams filed a petition for declaratory judgment in the Cole County Circuit Court, naming Governor Parson and the Attorney General as defendants. Resp. Ex. Q-1.

22. After the Cole County Circuit Court denied Governor Parson's motion for judgment on the pleadings, Governor Parson sought a permanent writ of prohibition or, in the alternative, a permanent writ of mandamus from the Supreme Court of Missouri directing Judge S. Cotton Walker, Circuit Judge of Cole County Circuit Court, to grant the motion for judgment on the pleadings. Resp. Ex. Q-14.02.

23. After briefing and argument, the Supreme Court of Missouri made its preliminary writ of prohibition permanent on June 4, 2024, and directed Judge Walker to grant Governor Parson's motion for judgment on the pleadings. Resp. Ex. Q-14.17.

24. Clemency gives the Governor the power to extend mercy to prisoners, but it is not another round of judicial review. *See Ohio Adult Parole Authority v. Woodard,* 523 U.S. 272, 284 (1998). Missouri's Constitution gives Governor Parson the sole power to decide how he will consider clemency applications and whether he will grant them. Governor Parson can grant clemency "for whatever reason or for no reason at all." *Olim v. Wakinekona,* 461 U.S. 238, 250 (1983).

25. On January 26, 2024, Movant filed a motion under § 547.031 R.S.Mo. 2021, to vacate the first-degree murder conviction and death sentence of Marcellus Williams.

26. Four claims were raised: (1) that Williams may be actually innocent of first-degree murder; (2) that Williams' trial counsel provided ineffective assistance in failing to better impeach two witnesses for the State who testified that Williams confessed to them; (3) that Williams' trial counsel provided ineffective assistance in failing to present different mitigating evidence "contextualizing" Williams '"troubled background"; and (4) that the State committed *Baston v. Kentucky,* 476 U.S. 79 (1986) violations by allegedly exercising preemptory strikes of jurors on the basis of race.

27. It is of utmost importance to this Court, that in denying Williams' motion to withdraw the most recently issued execution warrant, the Missouri Supreme Court held that it has already considered and rejected these four claims. *State of Missouri v. Williams,* 2024 WL 3402597 at 3 n.3.

28. During the pendency of this case, the parties received a DNA report dated August 19, 2024, from Bode Technology. Resp. Ex. FF. That report

indicated that Bode Technology had developed DNA profiles from Keith Larner (the assistant prosecuting attorney now retired who prosecuted Williams' criminal case), and Edward Magee (a former investigator for the St. Louis County Prosecuting Attorney's office). The August 19, 2024 report, when reviewed in conjunction with the previous DNA reports from the handle of the knife used in the murder of F.G., indicated that the DNA material on the knife handle was consistent with Investigator Magee (matching 15 of 15 loci found by Fienup, who did the DNA testing on the knife handle), and 21 of 21 loci found by Dr. Norah Rudin in her subsequent review of Fienup's results. Resp. Ex. I-13.27 at 4 & Resp. Ex. I-13.29 at 20-23. Rudin and Fienup were Williams' retained experts. Resp. Ex. I-13.25 at 1; Resp. Ex I-13.29 at 2.

29. This new evidence is not consistent with the Movant's theory that the results found by testing the knife handle for Y-STR "touch DNA" in 2015 matched or could match an unknown person or that the results could exculpate Williams.

30. In addition, the report is consistent with trial testimony by a crime scene investigator, who indicated that the suspect wore gloves.

31. On August 21, 2024, the date on which the evidentiary hearing was originally scheduled, Movant and Williams entered into a consent judgment vacating Williams' first-degree murder conviction and death sentence in exchange for a *North Carolina v. Alford* 400 U.S. 25 (1970) plea to first-degree murder in exchange for a sentence of life without parole.

32. The Attorney General objected after participating in discussions with this Court, which included a phone conversation with a member of F.G.'s family.

33. The Missouri Supreme Court issued a preliminary writ of prohibition overturning the consent agreement and *Alford* plea and directing this Court to conduct a hearing in this matter.

34. On August 25, 2024, Movant filed a motion for leave to amend the motion to vacate or set aside in an attempt to advance two additional claims. Claim 5 alleged a claim of bad-faith evidence destruction under *Arizona v. Youngblood*, 488 U.S. 51 (1998). Claim 6 asserted a claim that the original trial judge's denial of a motion for a continuance violated Williams' right to due process.

35. Over the State's objection, this Court granted Movant leave to amend the motion to advance the *Youngblood* claim (Claim 5) of bad-faith destruction

of fingerprints and bad-faith destruction of DNA evidence on the handle of the knife that was used in the murder of F.G.. This Court denied Movant's motion for leave to amend as to the claim of a violation of due process through the denial of a continuance (Claim 6). The Missouri Supreme Court held that the trial court did not abuse its discretion in denying the continuance. *Williams v. State,* 168 S.W.3d 433, 444-45. Under the law of the case doctrine, the decision of a court is the law of the case for all points presented and decided. *State v. Graham,* 13 S.W.3d 290 (Mo. banc 2000).

### AUGUST 28, 2024 HEARING FINDINGS

36. The Prosecuting Attorney called six witnesses in support of its Motion to vacate, including expert David Thompson; Judge Joseph L. Green, Williams' lead penalty phase counsel at his original trial; Dr. Charlotte Word, an expert witness in DNA testing; Judge Christopher E. McGraugh, Williams' lead guilt phase counsel at his original criminal trial; Prosecutor Keith Larner, the prosecuting attorney at Williams' original criminal trial; and Patrick Henson, an investigator for Movant's Conviction and Incident Review Unit.

### DAVID THOMPSON

37. Thompson testified over the State's objection concerning the reliability of witnesses H.C. and L.A. Hrg. Tr. At 25-64.

38. Thompson concluded, based upon evidence-based standards, that H.C. and L.A. gave unreliable information to investigating officers. *Id.*

39. Thompson acknowledges that he did not review the trial transcript, which included the trial testimony of the officers who interviewed H.C. or L.A., or the trial testimony of H.C. or L.A. themselves. *Id.* 53-55. Had he done so he would have had the opportunity to confirm trial counsels' exemplary efforts to discredit the testimony of H.C. and L.A in the presence of the jury. Despite trial counsels' efforts the jury found the testimony of H.C. and L.A. credible.

40. Thompson's testimony does not aide in deciding the issues currently before this Court.

### The Hon. Joseph L. Green

41. Judge Green testified that roughly one month before the Williams' trial, he was co-counsel in another capital case representing Ken Baumruk, who was also tried in the 21st Judicial Circuit. *Id.* at 69. He participated in a half-day

sentencing proceeding in the Baumruk capital case during Williams' trial. *Id.* at 69-70.

42. Judge Green testified, which is supported in the record from the trial, his complaints about the prosecutor's purported failure to disclose information and evidence in a timely manner, including witness notes and the mental history of H.C and Williams' MDOC records that were used by the State in the penalty phase. These issues were memorialized in a Verified Motion for Continuance and a Supplemental Motion for a continuance filed and argued on the record and denied by the trial court. *Id.* at 78-79.

43. Judge Green testified that he did not recall one way or the other whether anyone touched the knife without gloves during trial. *Id.* at 82-83.

44. This Court finds that Judge Green testified earnestly, compassionately, honestly, and to the best of his recollection, but as he admitted his memory was better at the time he testified in Williams' post-conviction relief case in 2004.

45. Despite Judge Green's testimony that he believes Williams "did not get our best". *Id.* at 82, this Court disagrees. Based upon review of the trial transcript, PCR transcript, and Judge Green's affidavit, Judge Green without reservation performed his duties as trial counsel in an exemplary fashion.

46. Judge Green's testimony before this Court does not support either of the claims of ineffective assistance of counsel raised in Movant's motion to vacate, which were already rejected by the Supreme Court of Missouri. *Williams*, 168 S.W.3d at 440-42 (rejecting claim that counsel was ineffective for not better investigating and impeaching H.C. and L.A.), 443 (rejecting claim that counsel was ineffective for not presenting more or different mitigation evidence).

47. With respect to Movant's motion to amend his motion regarding the trial court's denial of the motion for continuance which this Court denied, the Missouri Supreme Court has already found that the trial court did not abuse its discretion in denying a continuance. *Id.*

**Dr. Charlotte Word**

48. Dr. Word, an expert witness in DNA testing, testified for Movant, Hrg. Tr. At 98-152. This Court finds that Dr. Word's testimony established three important facts, none of which were helpful to Movant.

Resp. Sugg. in Opp. Ex. 1
Williams v. Vandergriff
4:05-CV-1474-RWS
Page 13 of 24

13

49. First, the DNA material found on the knife handle likely belongs to Investigator Magee (and also possibly Larner), and not to some other yet identified individual alleged by Williams and Movant to actually be responsible for the murder of F.G.. *Id.* at 152.

50. Second, if DNA material from the murderer was ever present on the knife handle, any such material could have been removed by individuals subsequently touching the knife handle without gloves. *Id.* at 152-53.

51. Third, Dr. Word has no idea what the procedures for evidence handling were in the St. Louis Prosecuting Attorney's Office, or in any crime lab for any St. Louis law enforcement entity at the time of the investigation into F.G.'s murder or at the time of Williams' trial. *Id.* at 151.

52. This Court finds that Dr. Word's testimony did not bolster Movant's claim of actual innocence.

53. Movant claimed that the DNA material of the "actual" killer was on the knife handle. This theory was clearly refuted by Dr. Word's testimony. In addition, Dr. Word's testimony provides no support for the theory of bad-faith destruction of evidence. *State v. Deroy,* 623 S.W.3d 778, 791 (Mo. App. E.D. 2021).

**Judge Christopher E. McGraugh**

54. Judge Christopher E. McGraugh is a circuit judge for the City of St. Louis and was Williams' lead guilt-phase counsel along with the Hon. Joseph Green. Hrg. Tr. at 158-66.

55. Judge McGraugh testified he does not remember anyone touching the evidence "outside the evidence bag" without gloves. *Id.* at 162.

56. Judge McGraugh testified that he was not told prior to trial that an "investigator" had been handling the knife without gloves. *Id.* at 164.

57. This Court finds that Judge McGraugh testified credibly as to his recollection of events. But the Court notes that he had difficulty remembering the events of the trial in 2001, roughly twenty-three years ago. Resp. Ex. D-1 at 47-48, 50, 59, 63, 67, 71, 83. This Court also finds that his memory, that no one handled the knife without gloves, is not consistent with the record and the evidence before this Court, including the fact that he was present in the courtroom when the knife handle was held without gloves. Resp. Ex. A at 2262-64, 2314.

Resp. Sugg. in Opp. Ex. 1
Williams v. Vandergriff
4:05-CV-1474-RWS
Page 14 of 24

14

**Keith Larner**

58. Keith Larner was the lead prosecutor in the Marcellus Williams case. Hrg. Tr. at 166-67. Larner testified that the two- informant witnesses, H.C and L.A., were the "strongest" witnesses he ever had in a murder case. *Id.* at 172. Larner testified that H.C. knew things that only the killer could know. *Id.* at 239. Larner testified that H.C. knew the knife was jammed into F.G.'s neck, that the knife was twisted, and that the knife was left in F.G.'s neck when the murderer left the scene, details which were not public knowledge. *Id.*

59. Larner testified that L.A. was "amazing." *Id.* Larner testified that she led police to where Williams pawned the computer taken from the residence of the murder scene, and that the person there identified Williams as the person who pawned it. *Id.* at 240. Larner testified that L.A. also led police to items stolen in the burglary in the car Williams was driving at the time of the murder. *Id.* at 240-41.

60. Larner testified that he knew from talking to Detective Vaughn Creach that the killer wore gloves. *Id.* at 183-85.

61. Larner testified that he believed it was appropriate to handle the knife without gloves after the crime laboratory had completed their testing, after he was informed that no one wanted any more testing on the knife, and after he was informed the laboratory found there were no fingerprints and nothing to link any individual to the crime. *Id.* at 192-93.

62. Larner testified he handled the knife without gloves at least five times prior to trial. *Id.* at 180-87. He showed the knife to four witnesses (two detectives, F.G.'s husband, and the medical examiner) and affixed an exhibit sticker on the knife for use at trial. *Id.* at 180-81.

63. Larner testified credibly that he had never heard of touch DNA in 2001 and probably did not hear of it until 2015. *Id.* at 241. Larner testified that the standard procedure in the St. Louis Prosecuting Attorney's Office at the time of Williams' trial was not to wear gloves when handling fully tested evidence because there was no reason to. *Id.*

64. Larner testified that he did not open untested fingernail clippings at trial without gloves because he did not want to contaminate them. *Id.* at 246.

65. Larner recalled that he had used three peremptory challenges on African Americans because the Missouri Supreme Court opinion listed three *Baston* challenges addressed in Williams' direct appeal. *Id.* at 220. The additional

Resp. Sugg. in Opp. Ex. 1
Williams v. Vandergriff
4:05-CV-1474-RWS
Page 15 of 24

15

3 preemptory strikes of Black jurors were not challenged in Williams' direct appeal. *State v. Williams,* 97 S.W.3d 462, 471-72 (Mo. banc 2003).

66. Larner denied systematically striking potential Black jurors or asking Black jurors more isolating questions than White jurors.

67. This Court finds that Larner had a good faith basis and reasons for handling the knife without gloves, despite Dr. Word's testimony that agencies that collected evidence at or near the time of this murder knew about the importance of properly collecting evidence to preserve any biological substance. (PA's Ex.80).

**Patrick Henson**

68. This Court heard testimony from Patrick Henson, an investigator for Movant's Conviction and Incident Review Unit. Hrg. Tr. at 263-71.

69. Henson testified that he did not find Larner's notes from jury selection in the file retained by the St. Louis Prosecuting Attorney's Office during his review of the file sometime in 2024. *Id.* at 266.

70. Henson testified he had no knowledge of where or how long the file was stored, nor what the file did, or did not contain, at anytime prior to 2024. *Id.* at 268.

71. Henson reviewed the Williams file and did not find any notes from the prosecutor pertaining to voir dire. *Id.* at 265-66.

72. Henson also testified that he never reviewed the State's trial exhibits, which were in the possession of the Missouri Supreme Court, and that no attorney from Movant's office ever asked him to retrieve those exhibits. *Id.* at 270-72.

73. This Court finds that Henson testified credibly and to the best of his ability, but that his limited knowledge of relevant facts with what procedures were in place for file retention during the years in question, undercuts the probative value of his testimony as to any issue presently before this Court.

## CONCLUSIONS OF LAW

This Court makes the following conclusions of law:

74. In his first claim on behalf of Williams, Movant asserts that Williams' "may be" actually innocent of first-degree murder. Mot. at 29-36.

75. Generally, in support of his claim that Williams is innocent, Movant alleged that DNA testing excludes Williams as the person whose DNA was found on the knife used in the murder. Mot. 22-24; that members of H.C.'s family would provide testimony that H.C. is a liar and "known" informant, Mot. at 24; that L.A.'s friends would provide testimony that she is a liar and "known informant [,]" *Id.*; and that G.R., to whom the stolen laptop was sold, was prevented "from testifying about where he learned Mr. Williams obtained the laptop." *Id* at 35.

76. Prior to the enactment of § 547.031, offenders who were sentenced to death could raise a freestanding claim of innocence in the Supreme Court of Missouri. *State ex rel. Armine v. Roper,* 102 S.W.3d 541, 547 (Mo. banc 2003). Williams asserted such a claim before the Supreme Court of Missouri. *Williams v. Steele,* SC94720 (Mo. 2017), Resp. Ex. I-1 at 6. The Supreme Court of Missouri has heard the majority of the DNA evidence Movant now asks this Court to consider, with the exception of the recent DNA results that weakens Movant's claim and demonstrates that Investigator Magee is the likely source of the DNA on the knife. Further, the Supreme Court has already denied that claim. *Williams* 2024 WL 3402597 at 3 n.3. Further, the Supreme Court of Missouri has already determined that the other evidence underpinning Movant's first claim allegations of the existence of impeachment material concerning H.C. and L.A. was at least in part not admissible at Williams' trial. *Williams v. State,* 168 S.W.3d 433, 439-42 (Mo. banc 2005). The same is true about the self-serving hearsay concerning the location of the laptop. *Williams v. State,* 97 S.W.3d 462, 468-69 (Mo. banc 2003).

77. In his second claim on behalf of Williams, Movant asserted that Williams' trial counsel provided ineffective assistance of counsel by failing to investigate and impeach witnesses H.C and L.A.. Mot. at 41-43. Williams has raised these claims before. The Supreme Court of Missouri rejected Williams' claims that his counsel provided ineffective assistance regarding investigating and impeaching H.C. and L.A.. *Id.* at 440-43. After considering the entire record, the Supreme Court of Missouri denied each of these claims. *Id.*

78. In his third claim, Movant alleges on behalf of Williams that penalty-phase counsel provided ineffective assistance by not presenting a penalty-phase defense based on Williams' allegations that he experienced an abusive childhood. Mot. at 44-53.

79. At the post-conviction hearing, Judge Green testified that it was the trial team's defense strategy to present Williams in a positive light as a person who had good qualities and was a positive influence on his children, rather

than an "inhuman beast," and to combine that strategy with a residual doubt strategy. Resp. Ex. D-1 at 122-23.

80. Once again Williams presented this claim to the Supreme Court of Missouri during his Rule 29.15 post-conviction proceedings. *Williams v. State,* 168. S.W.3d 433, 443 (Mo. banc 2005). And, as with the other claims, the Supreme Court of Missouri denied Williams' claim of ineffective assistance and affirmed the motion court's decision that presenting an abusive childhood strategy would have been contrary to the chosen defense strategy and would not have changed the outcome. *Id.* The Court went on to hold that the motion court did not clearly err in denying this claim without an evidentiary hearing. *Id.*

81. In relation to claims two and three, the Missouri Supreme Court has already rejected these claims when it considered them under *Strickland v. Washington,* 466 U.S. 668 (1984). Movant cannot repackage these claims into actual innocence claims to receive relief for Williams, especially when the actual innocence standard is much harder to meet than the *Strickland* prejudice standard. *Id.* at 703.

82. In his fourth claim, Movant alleges two *Baston* challenges on behalf of Williams. Mot. at 53-63. Specifically, Movant alleges that the State exercised discriminatory peremptory strikes of two members of the venire. Venireperson 64 and Venireperson 65. Mot. at 53-62.

83. The Supreme Court of Missouri rejected Williams' *Baston* challenges to these same venirepersons on direct appeal. *State v. Williams,* 97 S.W.3d 462, 471-72. The Supreme Court of Missouri found that the State had provided race neutral reasons to support its strikes of Venireperson 64, *Id.,* and Venireperson 65. *Id.* at 472.

84. Our Missouri Constitution vests the State's judicial power in "a supreme court, a court of appeals…and circuit courts." Mo. Const. art. V, § 1. It further provides, "The supreme court shall be the highest court in the state…. Its decisions shall be controlling in all other courts." Mo. Const. art. V, § 2; *see also State ex rel. Strong v. Griffith,* 462 S.W.3d 732, 734 (Mo. 2015) (stating that it is not appropriate to raise a post-conviction claim in habeas corpus that the court has already rejected in ordinary course). This Court, therefore, cannot reverse, overrule, or otherwise decline to follow the previous decisions of the Supreme Court of Missouri that populate the long procedural history in Williams' case. *See* Mo. Const. rt. V. § 2; *see also Strong,* 462 S.W.3d at 734.

85. Because Movant's first, second, third, and fourth claims before this Court have previously been denied by the Supreme Court of Missouri when the very same claims were raised by Williams in his § 547.031 motion, this Court must now deny them. *See State v. Williams,* 2024 WL 3402597 at 3 n.3; *see also State v. Johnson,* 654 S.W.3d 883, 891-95 (Mo. 2023).

86. Movant's fifth claim in his amended motion which this Court granted leave to file shortly before the hearing, over the States objection, alleged that the State had engaged in bad-faith destruction of evidence under *Arizona v. Youngblood,* 488 U.S. 1051 (1988).

87. Movant alleged that the bad faith destruction of evidence occurred when police destroyed fingerprint lifts determined to be without evidentiary value, and when the prosecutor and his investigator touched the handle of the murder weapon without wearing gloves.

88. The United States Supreme Court has "held that when the State suppresses or fails to disclose material exculpatory evidence, the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever such evidence is withheld." *Illinois v. Fischer,* 540 U.S. 544, 547 (2004). "[I]n *Youngblood,* by contrast, [the Court] recognized that the Due Process Clause 'requires a different result when [a court] deal[s] with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subject to tests, the results of which might have exonerated the defendant." *Id. quoting Youngblood,* 488 U.S. at 57). The Court stated that the "failure to preserve this potentially useful evidence does not violate due process *'unless a criminal defendant can show bad faith on the part of the police.'"Id.* at 547-48.

89. Our state courts have similarly applied *Youngblood,* finding that when the State fails to preserve evidence that "might have exonerated the defendant [,]" a defendant must show that the State acted in "bad faith" in order to establish a due process violation. *State v. Deroy,* 623 S.W.3d 778, 790 (Mo. App. 2021). When the State acts in good faith in accordance with its normal practice, no due process violation lies when potentially useful evidence is destroyed. *Id.* at 791. The requirement to show that bad faith has no exceptions. *See Id.* (citing cases from the Missouri Supreme Court holding that there is a bad faith requirement and holding that those cases must be followed).

90. Movant and Williams have made arguments before this Court indicating that the knife handle was central to the State's case or that, without additional unblemished testing, Williams has no avenue to prove his actual innocence. The United States Supreme Court has specifically refuted

similar arguments that have also attempted to change or remove the bad faith requirement of *Youngblood. See Illinois v. Fisher,* 540 U.S. at 547.

91. Here, neither Movant nor Williams presented any evidence from which this Court could find that the State destroyed potentially useful evidence in bad-faith, let alone clear and convincing evidence of the same.

92. The record before this Court refutes the allegation of bad-faith destruction of latent fingerprints. Indeed, the trial transcript indicates that latent fingerprints of insufficient quality for comparison were destroyed. Resp. Ex. A at 95-96, 3241. Specifically, Detective Thomas Krull testified that he received fingerprint lifts that were of insufficient quality to be used for comparison and those were destroyed after it was determined that the lifts were useless. *Id.* at 2324, 2340-41. No evidence was presented that this was done in bad faith. Because Movant has failed to met his burden of proof, this Court finds the claim of bad-faith destruction of fingerprint evidence to be without merit.

93. In addition, Movant did not carry his burden to demonstrate bad-faith destruction of whatever genetic material, if any, was present on the handle of the murder weapon prior to the knife handle being touched by Larner, Investigator Magee, and any other individuals.

94. Larner testified that he believed it was appropriate to handle the knife without gloves after the crime laboratory had completed their testing, he was informed that no one wanted any more testing on the knife, and the laboratory found there were no fingerprints and nothing on the knife to link any individual to the crime. *Id.* at 192-93. Larner stated that this belief was bolstered by the information provided by Detective Creach indicating that the killer had worn gloves, which, in turn was supported by the testimony of H.C. *Id.* at 192-93.

95. Larner testified that he carried the knife around without gloves during Williams' trial and handed it to a witness who was not wearing gloves and "[n]o one said anything." *Id.* at 247.

96. This Court finds that Larner testified credibly concerning the touching of the knife and that his testimony, as well as the other evidence in the state court record, refutes a claim that he, or any other State-actor, acted in bad faith by touching the knife handle without gloves and Movant's theory has no probative value.

97. Because Movant failed to prove his claim by clear and convincing evidence, this Court finds Movant's fifth claim to be without legal merit.

*See Fisher,* 540 U.S. at 547-48; *see also Youngblood,* 488 U.S. at 57-58; *Deroy,* 623 S.W.3d at 790. Movant's fifth claim is denied.

98. The State argues that Movant is judicially estopped from proceeding on Movant's first claim, which alleges Williams may be actually innocent of first-degree murder. This Court rejects this argument as the State has failed to show that Movant's position is clearly inconsistent with his earlier position. In addition, Movant's attempt to enter an *Alford* plea did not create an unfair advantage or impose an unfair detriment on the State if not estopped. *Vacca v. Mo. Dep't of Labor & Ind. Rels.,* 575 S.W.3d 233, 236-37 (Mo. 2019).

99. "To make a free-standing claim of actual innocence, [Movant] must make a clear and convincing showing of [Williams'] innocence. *State ex rel. Dorsey v. Vandergriff,* 685 S.W.3d 18, 25 (Mo. 2024). Clear and convincing evidence "instantly tilts the scales in the affirmative when weighed against the evidence in opposition, and the fact finder's mind is left with an abiding conviction that the evidence is true." *Id.* (*quoting Armine,* 102 S.W.3d at 548). In *Dorsey,* the Supreme Court of Missouri found that new expert opinions that Dorsey could not deliberate did not meet this test in light of the facts of the crime. *Id.* at 25-26.

100. The Supreme Court of Missouri has emphasized that the first step in actual innocence analysis is considering whether the "new" evidence is new in the sense that it was "not available at trial." *State ex rel. Barton v. Stange,* 597 S.W.3d. 661 n.4 (Mo. 2020); *accord Dorsey,* 685 S.W.3d at 24-25 (Both gateway and freestanding claims of actual innocence require "new evidence to support the claim that was not available at trial…."). Other appellate courts have expressed a similar requirement. *State ex rel. Nixon v. Sheffield,* 272 S.w.3d 277, 284-85 (Mo. App. 2008) (stating evidence is only "new" if not available at trial and could not have been discovered through the exercise of due diligence.) Additionally, when considering whether excluded evidence supports innocence only, evidence "tenably claimed to have been wrongfully excluded" may be considered in a claim of innocence. *Schlup v. Delo,* 513 U.S. 298, 328 (1995).

101. A claim that cannot meet the gateway standard of showing by a preponderance of the evidence that no reasonable juror would convict in light of new evidence, necessarily cannot meet the higher freestanding innocence standard of proof by clear and convincing evidence. *Barton,* 597 S.W.3d 661, 665 (Mo. 2020) ("Because the evidence is insufficient to make a gateway claim of actual innocence by a preponderance of the evidence, it necessarily is also insufficient to support a freestanding claim of actual innocence, which requires clear and convincing evidence of actual

innocence."); *State ex rel. McKim v. Cassady*, 457 S.W.3d 831, 843 (Mo. App. 2015).

102. Here, Movant's evidence regarding Williams' freestanding innocence claim fails.

103. As herein above described, the freestanding innocence claim pled in Movant's original motion unraveled during the pendency of this case, when the parties received a DNA report, dated August 19, 2024, from Bode Technology. Resp. Ex. FF.

104. In light of this report, Movant cannot demonstrate that the genetic material on the knife handle can form a basis for "a clear and convincing showing" of Williams' innocence. *Dorsey*, 685 S.W.3d at 25. Movant failed to present "clear and convincing evidence of actual innocence…that undermines the confidence in the judgment [,] and his claim must be denied. § 547.031.3 R.S.Mo.

105. Movant's remaining evidence amounts to nothing more than re-packaged arguments about evidence that was available at trial and involved in Williams' unsuccessful direct appeal and post-conviction challenges. That repackaged material cannot form the basis for relief under § 547.031.3 or the *Armine* standard. *See Johnson*, 554 S.W.3d at 895 (denying a stay for claims that were "largely just re-packaged versions of claims [the convicted individual] ha[d] brought (and seen rejected) many times before"); *see also Barton*, 597 S.W.3d at 664 n.4 (describing the required threshold showing that the proffered evidence is new).

106. As stated above, in support of his claim of innocence on behalf of Williams, Movant alleged that members of H.C.'s family would provide testimony that H.C. is a liar and "known informant." Mot. at 24. Movant alleges that L.A.'s friends would provide testimony that she is a liar and "known informant." *Id.* Movant further alleged that G.R., to whom the stolen laptop was pawned, was prevented by objection "from testifying about where he learned Mr. Williams obtained the laptop." *Id.* at 35. Movant asserted that Williams "had not himself secured the laptop, but rather had gotten it from his 'girl'[L.A.]." *Id.* Movant alleges that this information makes a clear and convincing showing of actual innocence. It does not.

107. None of this evidence is "new" as it was available at trial. And, in relation to the evidence found to be inadmissible by the Missouri Supreme Court, Movant cannot now claim that the purported evidence was wrongfully excluded under Missouri law because the Missouri Supreme Court, the

highest authority on Missouri law, has held that the evidence was properly excluded. Mo. Const. art. V, § 2; *Schlup,* 513 U.S. at 328.

108. Movant alleged in his motion that Williams' trial counsel provided ineffective assistance in not presenting the evidence he inconsistently alleged was new. *See* Mot. at 29-36, 36-43. But setting that aside, the record demonstrates that the evidence allegedly impeaching H.C. and L.A. was available at the time of trial. *See Williams v. State,* 168 S.w.3d at 440-42. And Movant's assertions that L.A.'s purported unreliability, "was similarly not presented to the jury [,]" Mot. at 34, is summarily refuted by the Supreme Court of Missouri. *See Williams v. State,* 168 S.W.3d at 441. In denying Williams' ineffective-assistance-of-counsel, the Supreme Court of Missouri stated: "As the motion court correctly found, this testimony would have been cumulative to the evidence at trial because the record contained evidence of [L.A.]'s drug addiction, prostitution, and that she might receive reward money for testifying at trial. Counsel will not be found ineffective for deciding not to introduce cumulative evidence." *Id.*

109. As for G.R.'s laptop testimony, the Supreme Court of Missouri found the circuit court properly excluded the evidence as self-serving hearsay. *State v. Williams,* 97 S.W.3d at 468. Movant has not explained why this Court should now consider evidence that remains inadmissible in considering whether Williams has made a showing of innocence, and this Court may not second-guess the Supreme Court of Missouri's ruling on the issue of admissibility. *See* Mo. Const. art. V, § 2; *see also Strong,* 462 S.W.3d at 734.

110. Further, contrary to Movant's argument that the jury did not hear this evidence, the Missouri Supreme Court, in discussing the rule of completeness objection from Williams, found that, "Williams was not precluded from showing that [L.A.] once had possession of the laptop. He introduced evidence from two witnesses who said they saw [L.A.] with the laptop during the summer of 1998." *State v. Williams,* 97 S.W.3d at 468-69. The substance of the evidence concerning G.R. was before the jury in Williams' trial and they nevertheless found him guilty. *Id.* Thus Movant cannot now use that same evidence to mount a freestanding innocence challenge. *Barton,* 597 S.W.3d at 664 n. 4; *Sheffield,* 272 S.W.3d at 284-85.

111. Movant's remaining evidence in support of Williams' claim of freestanding innocence amounts to nothing more than old evidence, self-serving hearsay, and evidence the jury could never hear. The evidence presented fails under the standard enumerated in § 547.031.3 or in *Amrine.* Movant has failed to demonstrate any basis for this Court to find Williams actually innocent of first-degree murder.

112. As the Supreme Court of the United States recognized nearly fifty years ago, the trial occupies a special role in our constitutional tradition:

> A defendant has been accused of a serious crime and this is the time and place set for him to be tried by a jury of his peers and found either guilty or not guilty by that jury. To the greatest extent possible all issues which bear on this charge should be determined in this proceeding: the accused is in the court-room, the jury is in the box, the judge is on the bench, and the witnesses, having been subpoenaed and duly sworn, await their turn to testify. Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens.

*Wainwright v. Sykes,* 433 U.S. 72, 90 (1977).

113. Every claim of error Williams has asserted on direct appeal, post-conviction review, and habeas review has been rejected by Missouri's courts.

114. There is no basis for a court to find that Williams is innocent, and no court has made such a finding. Williams is guilty of first-degree murder, and has been sentenced to death.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that:

Movant's motion to vacate or set aside Williams' conviction and sentence is hereby **DENIED.**

SO ORDERED:

_____
Honorable Bruce F. Hilton
Circuit Judge, Division 13
September 12, 2024

Cc: Attorneys of record e-filed pursuant to Rule 103